Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan. Agreement shall be deemed obligatory.

**24. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property as permitted under applicable law. If the fee charged does not exceed the fee set by applicable law, the fee is conclusively presumed to be reasonable.

**25. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**26. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by applicable law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider ☐ Planned Unit Development Rider

☐ Other [Specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____

_____

HECM First Deed Of Trust

_Yolanda Maria Santos_ (SEAL)

Yolanda Maria Santos

_Yolanda Maria Santos_ (SEAL)

Yolanda Maria Santos, Trustee

4-20-09

Date

4-20-09

Date

_____ [Space Below This Line For Acknowledgment] _____

State of CALIFORNIA
County of Contra Costa

On 4/20/09 before me, Matthew D. Valera Notary Public, personally appeared
Yolanda Maria Santos , who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and
that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

MATTHEW D. VALERA
COMM. #1784701
NOTARY PUBLIC - CALIFORNIA
ALAMEDA COUNTY
My Comm. Expires January 3, 2012

HECM First Deed Of Trust

## EXHIBIT A

Exhibit A to the Mortgage made on **April 20, 2009**, by **Yolanda Maria Santos, Trustee of the Yolanda Marie Santos Living Trust, Dated MArch 25, 2009** ("Borrower") to **Urban Financial Group** ("Lender"). The Property is located in the county of **CONTRA COSTA**, state of

### Description of Property

Real property in the City of Pleasant Hill, County of Contra Costa, State of California, described as follows:
LOT 142, MAP OF TRACT NO. 2285, FILED AUGUST 3, 1956, MAP BOOK 60, PAGE 10, CONTRA
COSTA COUNTY RECORDS.

END OF DOCUMENT

HECM First Deed Of Trust



CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
**DOC- 2009-0091137-00**

Acct 6- First American Title
Monday, APR 27, 2009 08:00:00
MOD   $3.00:REC    $7.00:FTC    $2.00
RED    $1.00:
Ttl Pd    $13.00      Nbr-0000107868
                        mom/R2/1-3

**RECORDING REQUESTED BY**
First American Title Company

**AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENT TO:**
Yolanda M. Santos
930 Santa Cruz DR.
Pleasant Hill, CA 94523

_____ Space Above This Line for Recorder's Use Only _____

A.P.N.: 127-012-019-7                                             File No.: 4906-3259043 (MS)

# GRANT DEED

The Undersigned Grantor(s) declare(s): DOCUMENTARY TRANSFER TAX $; CITY TRANSFER TAX $;
SURVEY MONUMENT FEE $
This conveyance transfers Grantor's interest into or out of his/her revocable trust and is EXEMPT from the
imposition of the Documentary Transfer Tax pursuant to § 11930 of the Revenue and Taxation Code.

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
**Yolanda M. Santos, Surviving Joint Tenant**

hereby GRANT(s) to **Yolanda M. Santos, Trustee of the Yolanda Marie Santos Living Trust**

the following described property in the City of **Pleasant Hill**, County of **Contra Costa**, State of **California**:

**See Exhibit A attached hereto for legal description.**

Dated:    __04/20/2009__

_Yolanda M. Santos, Trustee_

Yolanda M. Santos, Trustee

Mail Tax Statements To: **SAME AS ABOVE**

STATE OF _California_ )ss
COUNTY OF _Contra Costa_ )

On _4/20/09_ , before me, _Matthew D. Valera_ , Notary
Public, personally appeared _Yolanda M. Santos_
_____, who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature _[signature]_

My Commission Expires: _1/3/12_

*This area for official notarial seal*

MATTHEW D. VALERA
COMM. #1784701
NOTARY PUBLIC - CALIFORNIA
ALAMEDA COUNTY
My Comm. Expires January 3, 2012

Notary Name: _Matthew D. Valera_     Notary Phone: _510-409-1334_
Notary Registration Number: _1784701_     County of Principal Place of Business: _Alameda_

Page 2

A.P.N.: 127-012-019-7

File No.: 4906-3259043 (MS)

## EXHIBIT A

LOT 142, MAP OF TRACT NO. 2285, FILED AUGUST 3, 1956, MAP BOOK 60, PAGE 10, CONTRA COSTA COUNTY RECORDS.

END OF DOCUMENT

State of CALIFORNIA

# ADJUSTABLE-RATE NOTE
## (Home Equity Conversion)

April 20, 2009

FHA Case No. 042-8420709-952
Loan No. UFG07651tul

930 SANTA CRUZ DRIVE, PLEASANT HILL, CALIFORNIA 94523 (Property Address)

## 1. DEFINITIONS
"Borrower" means each person signing at the end of this Note. "Lender" means **Urban Financial Group** and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated **April 20, 2009** ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not due earlier, are due and payable on **August 9, 2073**. Interest will be charged on unpaid principal at the rate of **Three AND Four Hundred Fifty One Thousandth** percent (3.451%) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
### (A) Time
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment-in-full, as provided in Paragraph 7 of this Note.

### (B) Place
Payment shall be made at **Urban Financial Group, 9175 South Yale Ave, Suite 300, Tulsa, OK 74137** or any such other place as Lender may designate in writing by notice to Borrower.

### (C) Limitation of Liability
Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

## 5. INTEREST RATE CHANGES
### (A) Change Date
The interest rate may change on **July 1, 2009** and on the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.

### (B) The Index
Beginning with the first Change Date, the interest rate will be based on an Index. The "Index"

HECM First Note

means the average of interbank offered rates for one-month U.S. dollar-denominated deposits in London market ("LIBOR"), as published in The Wall Street Journal, rounded to three digits to the right of the decimal point. The "Current Index" means the most recent Index figure available 30 days before the Change Date, and if the day that is 30 days before the Change Date is not a Sunday or Monday and not the first business day of the week, the Current Index will be the Index as published the first business day of that week. If the day that is 30 days before the Change Date is a Sunday or Monday and not the first business day of the week, the Current Index will be the Index as published the first business day of the immediately prior week. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

### (C) Calculation of Interest Rate Changes
Before each Change Date, Lender will calculate a new interest rate by adding a margin of **Three AND Zero Hundredth** percentage points (**3.000%**) to the current Index. Subject to the limit stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

### (D) Limit on Interest Rate Changes
The interest rate will never increase above **Thirteen AND Four Hundred Fifty One Thousandth percent (13.451%)**

### (E) Notice of Changes
Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

### (F) Effective Date of Changes
A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

## 6. BORROWER'S RIGHT TO PREPAY
A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal

balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

## 7. IMMEDIATE PAYMENT-IN-FULL

### (A) Death or Sale
Lender may require immediate payment-in-full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

### (B) Other Grounds
Lender may require immediate payment-in-full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

### (C) Payment of Costs and Expenses
If Lender has required immediate payment-in-full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorney's fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

### (D) Trusts
Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

## 8. WAIVERS
Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different

HECM First Note

address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

## 11. RELATIONSHIP TO SECOND NOTE

### (A) Second Note

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255 (i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

### (B) Relationship of Secretary Payments to this Note

Payments made by the Secretary shall not be included in the debt due under this Note unless:

(i) This Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt.

### (C) Effect on Borrower

Where there is no assignment or reimbursement as described in (B)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under this Note until the Secretary has required payment-in-full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or

(ii) Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraphs 2 or 5 of this Note or any Allonge to this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Yolanda Maria Santos_ (SEAL)    4-20-09
Date

Yolanda Maria Santos

_Yolanda M. Santos Trustee_ (SEAL)    4-20-09
Date

Yolanda Maria Santos, Trustee



State of CALIFORNIA

# ADJUSTABLE-RATE SECOND NOTE
## (Home Equity Conversion)

April 20, 2009

FHA Case No. 042-8420709-952
Loan No. UFG07651tul

930 SANTA CRUZ DRIVE, PLEASANT HILL, CALIFORNIA 94523 (Property Address)

## 1. DEFINITIONS
"Borrower" means each person signing at the end of this Note. "Secretary" or "Lender" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated April 20, 2009 ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not due earlier, are due and payable on August 9, 2073. Interest will be charged on unpaid principal at the rate of Three AND Four Hundred Fifty One Thousandth percent (3.451%) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument" or the "Second Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note. Borrower also executed a First Security Instrument and First Note when the Second Security Instrument and this Note were executed.

## 4. MANNER OF PAYMENT
### (A) Time
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment-in-full, as provided in Paragraph 7 of this Note.

### (B) Place
Payment shall be made at the Office of the Housing -- FHA Comptroller, Director of Mortgage Insurance Accounting and Servicing, 451 7th Street, SW, Washington, DC 20410, or any such other place as Lender may designate in writing by notice to Borrower.

### (C) Limitation of Liability
Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property").

## 5. INTEREST RATE CHANGES
### (A) Change Date
The interest rate may change on July 1, 2009 and on the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.

### (B) The Index
Beginning with the first Change Date, the interest rate will be based on an Index. The "Index" means the average of interbank offered rates for one-month U.S. dollar-denominated deposits in

HECM Second Note




or create a new line of credit.

## 7. IMMEDIATE PAYMENT-IN-FULL

### (A) Death or Sale

Lender may require immediate payment-in-full of all outstanding principal and accrued interest if:

> (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

> (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

### (B) Other Grounds

Lender may require immediate payment-in-full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

> (i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

> (ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

> (iii) An obligation of the Borrower under the Security Instrument is not performed.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment-in-full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorney's fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

### (D) Trusts

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

## 8. WAIVERS

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to the property address above or at a different address if Borrower has given the Secretary a notice of Borrower's different address.

Any notice that must be given to the Secretary under this Note will be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary.

HECM Second Note



## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

## 11. RELATIONSHIP TO FIRST NOTE

### (A) Second Note

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant this Note to the Secretary.

### (B) Relationship of Secretary Payments to First Note

Payments made by the Secretary shall be included in the debt due under this Note unless:

(i) The First Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt under the First Note.

### (C) Notice of Interest Rate Adjustments

Borrower agrees that as long as the holder of the First Note continues to make Loan Advances, any notice of interest rate adjustment given to Borrower under Paragraph 5(E) of the First Note shall also be considered to be notice to Borrower under Paragraph 5(E) of this Note, so that the same interest rate shall apply for the First Note and this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Yolanda Maria Santos_ (SEAL)        4-20-09
Yolanda Maria Santos                        Date

_Yolanda Maria Santos_ _Trustee_ (SEAL)   4-20-09
Yolanda Maria Santos, Trustee             Date

 



First American Title Company
561 First Street West
Sonoma, CA 95476
(707)938-1800
Fax - (866)440-2065

## LOAN ESCROW INSTRUCTIONS
(Institutional Lender)

To: **First American Title Company**
   **Mary Sousa, Escrow Officer**

Date: **April 20, 2009**
File No.: **4906-3259043 (MS)**

Re: **930 Santa Cruz Drive, Pleasant Hill, CA 94523**

**Funds and/or Documents:** Borrower will cause First American Title Company ("Escrow Holder") to be handed funds and/or documents required to close the above referenced escrow pursuant to Lender's Instructions. Borrower's signature on loan documents shall constitute Borrower's approval of the terms and conditions contained therein.

Showing title vested in: **Yolanda Marie Santos, Trustee of the Yolanda Marie Santos Living Trust**

**Warranty Regarding Encumbrances:** The undersigned warrant and guarantee that there are no outstanding liens or Deeds of Trust or Mortgages affecting the property, other than those shown on the preliminary report described herein. Initials_____

**Proceeds:** Borrower directs that the proceeds check be:

[ ] Held for pick up at this office
[ ] Mailed to the property address
[ ] Sent via certified mail
[ ] Sent via wire transfer
   (if checked, **Attach wiring instructions of _receiving bank_**)
   **Note:** Receiving Banks may impose a charge for the receipt of any wire transfers.

[ ] Sent via next day mail
[ ] Other:_____

**Escrow General Provisions:** The parties acknowledge receipt of the Escrow General Provisions which are incorporated herein by reference.

**Fire Insurance:** The undersigned acknowledges lender's requirement of fire insurance coverage. Insurance Agent and Company Name: _____ Phone Number: _____. Policy/Endorsement is to be supplied prior to close of escrow. Escrow holder is authorized and instructed to pay any premium due necessary to satisfy lender's requirements.

**BORROWER:**

Yolanda Marie Santos, Trustee of the
Yolanda Marie Santos Living Trust

*Yolanda M Santos, trustee*

Yolanda Marie Santos, Trustee

*Y m MARIA*

Page 1 of 2

**First American Title Company**

**Please indicate your forwarding address and phone number:**

_____

_____

_____

Home Phone:_____

Cell Phone:_____

Work Phone:_____

**First American Title Company**
**Certification of Trust**
(Pursuant to California Probate Code □18100.5)

I/We, _____, trustee(s) confirm the following facts:

1. The _Yolanda Maria Santos_ _____ (Name of Trust)

   Is currently in existence and was executed on _March 25, 2009_ .

2. The settlor(s) of the trust are: _Yolanda Marie Santos._

3. The currently acting trustee(s) of the trust is (are): _Yolanda Maria Santos_
   _____ .

4. The power of the trustee(s) includes:
   (a) The powers to sell, convey and exchange [ ✓ ] Yes [ ] No (check one)
   (b) The power to borrow money and encumber the trust property with a deed of trust or mortgage
   [ ✓ ] Yes [ ] No (check one).

5. The trust is [ ✓ ] REVOCABLE [ ] IRREVOCABLE (check one) and the following party(ies), if any, is
   (are) identified as having the power to revoke the trust:
   _Yolanda Maria Santos_ .

6. The trust [ ] DOES [ ✓ ] DOES NOT (check one) have multiple trustees. If the trust has multiple
   trustees, the signatures of:
   *(mark one of the following.)*
   [ ] ALL
   [ ] ANY _____ (specify number) of the Trustees are required to exercise the powers of the
   Trust.

7. The Trust identification number is: _265 74-770 1_ ____ (Social Security No/Employer ID).

8. Title to trust assets is to be taken in the following manner:
   _Trustee_ .

The undersigned trustee(s) declare(s) that the trust has not been revoked, modified or amended in any manner
which would cause the representations contained herein to be incorrect. This Certification is executed by all of
the currently acting trustees of the Trust pursuant to Section 18100.5 of the Probate Code.

**(ALL SIGNATURES MUST BE ACKNOWLEDGED)**

_Yolanda Marie Santo_

_____     _____

**April 20, 2009** .  Certification of Trust - continued  File No.: **4906-3259043 (MS)**

STATE OF _Celifornia_ )SS
COUNTY OF _Contra Cost_ )

On _4/20/09_ , before me, _Matthew O. Valera_ , Notary
Public, personally appeared _Yolanda Maria Santos_
, who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature

My Commission Expires: _1/3/12_

Notary Name: _Matthew O. Valera_
Notary Registration Number: _1784701_

MATTHEW D. VALERA
COMM. #1784701
NOTARY PUBLIC - CALIFORNIA
ALAMEDA COUNTY
My Comm. Expires January 3, 2012

*This area for official notarial seal*

Notary Phone: _510-409-1334_
County of Principal Place of Business: _Alameda_

U.S._California_Trust Certification_Rev.(7/12/04)  Page 2 of 2 Pages

## EXHIBIT A

LOT 142, MAP OF TRACT NO. 2285, FILED AUGUST 3, 1956, MAP BOOK 60, PAGE 10, CONTRA COSTA COUNTY RECORDS.

Order Number: 4906-3259043
Page Number: 1



# First American Title Company

### 561 First Street West
### Sonoma, CA 95476

Escrow Officer:      Mary Sousa  (MS)
Phone:               (707)938-1800
Fax No.:             (866)440-2065
E-Mail:              msousa@firstam.com
Borrower:            Santos
Property:            930 Santa Cruz Drive
                     Pleasant Hill, CA 94523

READ AND APPROVED
TO FORM AND CONTENT
BY _____
BY _____
BY _____
BY _____

## PRELIMINARY REPORT

In response to the above referenced application for a policy of title insurance, this company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit A attached. *The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.* Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit A. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

*First American Title*

## LEGAL DESCRIPTION

Real property in the City of  Pleasant Hill, County of Contra Costa, State of California, described as follows:

LOT 142, MAP OF TRACT NO. 2285, FILED AUGUST 3, 1956, MAP BOOK 60, PAGE 10, CONTRA COSTA COUNTY RECORDS.

APN: 127-012-019-7

APPROVED
TO FORM AND CONTENT
BY
BY
BY
BY

***NOTICE***

Section 12413.1 of the California Insurance Code, effective January 1, 1990, requires that any title insurance company, underwritten title company, or controlled escrow company handling funds in an escrow or sub-escrow capacity, wait a specified number of days after depositing funds, before recording any documents in connection with the transaction or disbursing funds. This statute allows for funds deposited by wire transfer to be disbursed the same day as deposit. In the case of cashier's checks or certified checks, funds may be disbursed the next day after deposit. In order to avoid unnecessary delays of three to seven days, or more, please use wire transfer, cashier's checks, or certified checks whenever possible.

If you have any questions about the effect of this new law, please contact your local First American Office for more details.

*First American Title*



# First American Title Company

561 First Street West • Sonoma, CA 95476

## Borrower's Estimated Settlement Statement

**Property:** 930 Santa Cruz Drive, Pleasant Hill, CA 94523

**File No:** 4906-3259043
**Officer:** Mary Sousa/MS
**New Loan No:**
**Settlement Date:**
**Disbursement Date:**
**Print Date:** 4/20/2009, 10:13 AM

**Buyer:** Yolanda Marie Santos Living Trust
**Address:** 930 Santa Cruz Drive, Pleasant Hill, CA 94523
**Seller:**
**Address:**

| Charge Description | Borrower Charge | Borrower Credit |
|---|---|---|
| **New Loan(s):** | | |
| Lender: Urban Financial Group, Inc. | | |
| New Loan to File - Urban Financial Group, Inc. | | 285,656.01 |
| Mortgage Insurance Application Premium - Urban Financial Group, Inc. | 7,220.00 | |
| Document Preparation Fee - Urban Financial Group, Inc. | 125.00 | |
| Mrtg. Broker: Twin Capital Mortgage | | |
| Yield Spread Premium - Twin Capital Mortgage        POC $2,285.25 | | |
| Loan Origination Fee - Twin Capital Mortgage | 4,000.00 | |
| Counseling Cert - Twin Capital Mortgage        POC $75.00 | | |
| Credit Report - Twin Capital Mortgage | 8.25 | |
| | | |
| **Title/Escrow Charges to:** | | |
| One Rate-1108/Title Eagle & 1101/Escrow - First American Title Company | 1,055.00 | |
| Overnight Mail Service - First American Title Company | 45.00 | |
| Record Deed - First American Title Company | 25.00 | |
| Record Trust Deed - 2 - First American Title Company | 60.00 | |
| Record Trust Deed - 1 - First American Title Company | 60.00 | |
| | | |
| **Disbursements Paid:** | | |
| Fire Insurance Premium to Liberty Mutual | 765.00 | |
| Loan/Signing Fee to Expert Signing Service, Inc. | 275.00 | |
| Other Taxes Due to Contra Costa County Tax Collector | 1,700.00 | |
| Tax Installment: Amount to Contra Costa County Tax Collector | 1,600.95 | |
| Attorney Letter to Irwin Law Firm | 125.00 | |
| | | |
| Cash ( From) (X To) Borrower | 268,591.81 | |
| | | |
| **Totals** | 285,656.01 | 285,656.01 |

C.  Note:  This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside this closing; they are shown here for informational purposes and are not included in the totals.

D.  **Name of Borrower: Yolanda Marie Santos Living Trust**
930 Santa Cruz Drive, Pleasant Hill, CA 94523

E.  **Name of Seller:**

F.  **Name of Lender: Urban Financial Group, Inc.**
9175 South Yale Avenue, Suite 300
Tulsa, OK 74137-4043

G.  **Property Location: 930 Santa Cruz Drive, Pleasant Hill, CA 94523**

H.  **Settlement Agent: First American Title Company**
Address: 561 First Street West, Sonoma, CA 95476

I.
**Settlement Date:**

**Place of Settlement Address: 561 First Street West, Sonoma, CA 95476**

Print Date: 04/20/2009, 10:14 AM

Disbursement Date:

| J.  Summary of Borrower's Transaction | | K.  Summary of Seller's Transaction | |
|---|---|---|---|
| **100.  Gross Amount Due From Borrower** | | **400.  Gross Amount Due To Seller** | |
| 101.  Contract Sales Price | | 401.  Contract Sales Price | |
| 102.  Personal Property | | 402.  Personal Property | |
| 103.  Settlement charges to borrower (line 1400) | 13,763.25 | 403.  Total Deposits | |
| 104.  Supplemental Summary | 3,300.95 | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106.  City/town taxes | | 406.  City/town taxes | |
| 107.  County taxes | | 407.  County taxes | |
| 108.  Assessments | | 408.  Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| **120.  Gross Amount Due From Borrower** | 17,064.20 | **420.  Gross Amount Due To Seller** | |
| **200.  Amounts Paid By Or In Behalf of Borrower** | | **500.  Reductions In Amount Due to Seller** | |
| 201.  Deposit or earnest money | | 501.  Excess deposit (see instructions) | |
| 202.  Principal amount of new loan(s) | 285,656.01 | 502.  Settlement charges (line 1400) | |
| 203.  Existing loan(s) taken subject | | 503.  Existing loan(s) taken subject | |
| 204. | | 504.  Payoff of first mortgage loan | |
| 205. | | 505.  Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210.  City/town taxes | | 510.  City/town taxes | |
| 211.  County taxes | | 511.  County taxes | |
| 212.  Assessments | | 512.  Assessments | |
| 213. | | 513 | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220.  Total Paid By/For Borrower** | 285,656.01 | **520.  Total Reduction Amount Due Seller** | |
| **300.  Cash At Settlement From/To Borrower** | | **600.  Cash At Settlement To/From Seller** | |
| 301.  Gross amount due from Borrower (line 120) | 17,064.20 | 601.  Gross amount due to Seller (line 420) | |
| 302.  Less amounts paid by/for Borrower (line 220) | 285,656.01 | 602.  Less reductions in amounts due to Seller (line 520) | |
| 303.  Cash ( From) (X To) Borrower | 268,591.81 | 603. | |

File No. 4906-3259043

| L. Settlement Charges | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| 700. Total Sales/Broker's Commission based on price | | | |
| Division of Commission (line 700) as follows | | | |
| 701. | | | |
| 702. | | | |
| 703. Commission paid at Settlement | | | |
| 704. | | | |
| 800. Items Payable in Connection with Loan | | | |
| 801. Loan Origination Fee | | | |
| 802. Loan Discount | | | |
| 803. Appraisal Fee | | | |
| 804. Credit Report - Twin Capital Mortgage | | 8.25 | |
| 805. Lender's Inspection Fee | | | |
| 806. Mortgage Insurance Application Premium | | | |
| 807. Assumption Fee | | | |
| 808. Document Preparation Fee - Urban Financial Group, Inc. | | 125.00 | |
| 809. Yield Spread Premium - Twin Capital Mortgage | POC $2,285.25 | | |
| 810. Loan Origination Fee - Twin Capital Mortgage | | 4,000.00 | |
| 811. Counseling Cert - Twin Capital Mortgage | POC $75.00 | | |
| 812. | | | |
| 813. | | | |
| 814. | | | |
| Supplemental Summary | | | |
| 900. Items Required by Lender to be Paid in Advance | | | |
| 901. Interest | | | |
| 902. Mortgage Insurance Application Premium - Urban Financial Group, Inc. | | 7,220.00 | |
| 903. Hazard Insurance Premium for to Liberty Mutual | | 765.00 | |
| 904. | | | |
| 905. | | | |
| Supplemental Summary | | | |
| 1000. Reserves Deposited with Lender | | | |
| 1001. Hazard Insurance | | | |
| 1002. Mortgage Insurance | | | |
| 1003. City Property Taxes | | | |
| 1004. County Property Taxes | | | |
| 1005. Annual assessments | | | |
| 1006. | | | |
| 1007. | | | |
| 1008. Aggregate Accounting Adjustment | | | |
| 1100. Title Charges | | | |
| 1101. Settlement or closing fee | | | |
| 1102. Abstract or title search | | | |
| 1103. Title examination | | | |
| 1104. Title Insurance Binder | | | |
| 1105. Document Fee | | | |
| 1106. Notary Fee | | | |
| 1107. Attorney Fee | | | |
| (includes above item numbers: ) | | | |
| 1108. Title Insurance – See supplemental page for breakdown of individual fees and payees | | 1,055.00 | |
| (includes above item numbers: ) | | | |
| 1109. Lender's coverage $361,000.00 | | | |
| 1110. Owner's coverage $0.00 | | | |
| 1111. Overnight Mail Service - First American Title Company | | 45.00 | |
| 1112. | | | |
| 1113. | | | |
| 1114. | | | |
| 1115. | | | |
| 1116. | | | |
| 1117. | | | |

| 1200. Government Recording and Transfer Charges | | |
|---|---|---|
| 1201. Recording fees: Deed $25.00 Mortgage $120.0u ...ease $0.00 | 145.00 | |
| 1202. City/county tax/stamps: | | |
| 1203. State tax/stamps: | | |
| 1204. | | |
| 1205. | | |
| 1206. | | |
| 1300. Additional Settlement Charges | | |
| 1301. Survey to | | |
| 1302. Pest Inspection to | | |
| 1303. Loan/Signing Fee to Expert Signing Service, Inc. | 275.00 | |
| 1304. Attorney Letter to Irwin Law Firm | 125.00 | |
| 1305. | | |
| 1306 | | |
| 1307 | | |
| 1308 | | |
| 1309 | | |
| 1310. | | |
| 1311. | | |
| 1312. | | |
| 1313. | | |
| 1314. | | |
| Supplemental Summary | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | 13,763.25 | |

' See Supplemental Page for details.

| Supplemental Page<br>HUD-1 Settlement Statement | File No.<br>4906-3259043 |
| --- | --- |
| **First American Title Company**<br>**Final Statement** | Loan No. |
| | Settlement Date: |

Borrower Name & Address: Yolanda Marie Santos Living Trust
930 Santa Cruz Drive, Pleasant Hill, CA 94523

Seller Name & Address:

| Section L. Settlement Charges continued | | Paid From<br>Borrower's<br>Funds at<br>Settlement | Paid From<br>Seller's<br>Funds at<br>Settlement |
| --- | --- | --- | --- |
| 1108. Supplemental Summary | 1,055.00 | | |
| a) One Rate-1108/Title Eagle & 1101/Escrow - First American Title Company | | 1,055.00 | |
| 1201. Supplemental Summary | 145.00 | | |
| a) Record Deed - First American Title Company | | 25.00 | |
| b) Record Trust Deed - 2 - First American Title Company | | 60.00 | |
| c) Record Trust Deed - 1 - First American Title Company | | 60.00 | |

| Section J. Summary of Borrower's Transaction continue | | | Borrower Charges | Borrower Credits |
| --- | --- | --- | --- | --- |
| 100. Gross Amount Due From Borrower | | | | |
| 104. Supplemental Summary | | 3,300.95 | | |
| a) Other Taxes Due to Contra Costa County Tax Collector | | | 1,700.00 | |
| b) Tax Instalment Amount to Contra Costa County Tax Collector | | | 1,600.95 | |
| 200. Amounts Paid By Or In Behalf of Borrower | | | | |
| The following Section is restated from the Settlement Statement Page 1 | | | | |
| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement To/From Seller | | |
| 301. Gross amount due from Borrower (line 120) | 17,064.20 | 601. Gross Amount due to Seller (line 420) | | |
| 302. Less amounts paid by/for Borrower (line 220) | 285,656.01 | 601. Less reductions in amounts due to Seller (line 520) | | |
| 303. Cash ( From) (X To) Borrower | 268,591.81 | 603. | | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and distributions made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

BUYER(S):

Yolanda Marie Santos, Trustee of the
Yolanda Marie Santos Living Trust

_____
Yolanda Marie Santos, Trustee

3259043

Recording Requested by
**FIRST AMERICAN TITLE COMPANY**

**When Recorded Mail To:**

Reverse Mortgage Solutions, Inc.
2727 Spring Creek Dr.
Spring, Tx. 77373

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
**DOC- 2009-0147869-00**
Acct 6-First American Title
Wednesday, JUN 24, 2009 08:00:00
MOD    $3.00:REC      $7.00:FTC      $2.00
DAF    $2.70:REF      $0.30:RED      $1.00
Ttl Pd    $15.00          Nbr-0000173673
                                dar/R2/1-3
This Space For Recorder's Use Only

File No.:

_____ASSIGNMENT_____

. **Title of Document**

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(Govt. Code 27361.6)
(Additional recording fee applies)



Recording Requested By/Return To:                          Note Amount: $541,500.00
Reverse Mortgage Solutions, Inc.
2727 Spring Creek Drive
Spring, TX 77373

## Assignment of Mortgage/Deed of Trust

FOR VALUE RECEIVED, the undersigned holder of a Mortgage/Deed of Trust (herein "Assignor") whose address is 9175 South Yale Ave, Suite 300, Tulsa, OK 74137, does hereby grant, sell, assign, transfer and convey, unto Reverse Mortgage Solutions, Inc. and existing under the laws of (herein "Assignee"), whose address is 2727 Spring Creek Drive, Spring, TX 77373, a certain Mortgage/Deed of Trust dated April 20, 2009 made and executed by Yolanda Maria Santos, Trustee of the Yolanda Marie Santos Living Trust, Dated MArch 25, 2009, to and in favor of Urban Financial Group, upon the following described property situated in CONTRA COSTA County, State of CALIFORNIA:

Real property in the City of Pleasant Hill, County of Contra Costa, State of California, described
as follows:
LOT 142, MAP OF TRACT NO. 2285, FILED AUGUST 3, 1956, MAP BOOK 60, PAGE 10, CONTRA
COSTA COUNTY RECORDS.

Commonly Known As: 930 SANTA CRUZ DRIVE, PLEASANT HILL, CALIFORNIA 94523

such Mortgage/Deed of Trust having been given to secure payment of $541,500.00, (Maximum Principal Amount)

which Mortgage is of record in Book, Volume, or Liber No. _____, at page _____
(or as No. 09 - 91138 .    ) of the County            Records of Contra Costa
County, State of CA          , together with the note(s) and obligations therein described and the money due and to
become due thereon with interest, and all rights accrued or to accrue under such Mortgage/Deed of Trust.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and
conditions of the above-described Mortgage/Deed of Trust.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage/Deed of Trust on

April  20 , 2009

                                                          Urban Financial Group
                                                               (Assignor)
                                          By: _____
                                               (Signature)
                                               _____
                                               (Print Name & Title)

STATE OF **OKLAHOMA**
COUNTY OF **TULSA**

On _____ before me _____ a Notary Public in and for said County/City and State, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

My Commission Expires: _____

ANDREA WADE
Notary Public in and for the
State of Oklahoma
Commission #04006771
My Commission expires 7/27/2012

**END OF DOCUMENT**

AssignmentOfSecurityInstrument



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-8000

ASSISTANT SECRETARY FOR HOUSING-
FEDERAL HOUSING COMMISSIONER

April 5, 2011

## MORTGAGEE LETTER 2011-16

### TO: ALL APPROVED MORTGAGEES
### ALL HUD-APPROVED HOUSING COUNSELING AGENCIES

### ATTENTION: SINGLE FAMILY SERVICING MANAGERS

### SUBJECT: Home Equity Conversion Mortgage —Rescission of Mortgagee Letter 2008-38— Borrower's recourse for repayment of HECM debt

On December 5, 2008, the U.S. Department of Housing and Urban Development (HUD) issued Mortgagee Letter (ML) 2008-38 to provide clarification to mortgagees regarding the requirements for repayment and termination of a Home Equity Conversion Mortgage loan.

HUD's intent in issuing ML 2008-38 was to supplement and explain provisions contained in the regulations at 24 CFR §206.125 and HUD Handbook 4235.1 (Home Equity Conversion Mortgages). Since there has been some uncertainty regarding the guidance in that ML, **HUD is rescinding ML 2008-38, effective** as of the date of this ML.

New guidance on topics related to the regulations at 24 CFR Part 206 and Handbook 4235.1 will be issued in the future. In the interim, mortgagees should refer to the regulations at 24 CFR Part 206 and the provisions in Handbook 4235.1 for guidance.

Any questions regarding this Mortgagee Letter may be directed to HUD's National Servicing Center at 1-888-297-8685 or hsg-lossmit@hud.gov. Persons with hearing or speech impairments may access this number via TDD/TTY by calling 1-877-TDD-2HUD (1-877-833-2483).

Sincerely,

/s/
Robert C. Ryan
Acting Assistant Secretary for Housing-
Federal Housing Commissioner

Recording requested by:
SERVICELINK, A DIVISION OF CHICAGO
TITLE INSURANCE COMPANY

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

APN #: 127-012-019
Property Address: '
930 SANTA CRUZ DRIVE
PLEASANT HILL, CALIFORNIA 94523

DFF20120191200036

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2012-0038384-00
Check Number
Tuesday, FEB 21, 2012 08:48:00
MOD     $3.00:REC     $13.00:FTC     $2.00
DAF     $2.70:REF     $0.30:RED     $1.00
ERD     $1.00:             :
Ttl Pd     $23.00     Rcpt # 0081182667
                              I.r.-/風風/.r.-.2

Space above this line for Recorder's use only

Trustee Sale No.: 20120191200036          Title Order No.: 1097100

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS
IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your
account in good standing by paying all of your past due payments plus permitted costs and expenses
within the time permitted by law for reinstatement of your account, which is normally five business
days prior to the date set for the sale of your property. No sale date may be set until approximately 90
days from the date this Notice of Default may be recorded (which date of recordation appears on this
notice).

This amount is $320,750.96 as of 02/16/2012 and will increase until your account becomes current.
While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes)
required by your note and deed of trust or mortgage. If you fail to make future payments on the loan,
pay taxes on the property, provide insurance on the property, or pay other obligations as required in
the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order
to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a
condition of reinstatement that you provide reliable written evidence that you paid all senior liens,
property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire
amount you must pay. You may not have to pay the entire unpaid portion of your account, even though
full payment was demanded, but you must pay all amounts in default at the time payment is made.
However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the
notice of sale is posted (which may not be earlier than three months after this notice of default is
recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of
the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both
(1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the

FCUS_NoticeOfDefault.rpt - Record - (10/17/2011) --Ver-33          Page 1 of 3

 

**IMPORTANT NOTICE**
**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

Trustee Sale No. : 20120191200036          Title Order No.: 1097100

obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**REVERSE MORTGAGE SOLUTIONS, INC**
**c/o NDEX WEST, LLC**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**
**(866) 795-1852**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: NDEX WEST, LLC is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 04/20/2009, executed by YOLANDA MARIA SANTOS, TRUSTEE OF THE YOLANDA MARIE SANTOS LIVING TRUST, DATED MARCH 25, 2009, as Trustor, to secure obligations in favor of URBAN FINANCIAL GROUP, as Beneficiary Recorded on 04/27/2009 as Instrument No. 2009-0091138-00 of official records in the Office of the Recorder of CONTRA COSTA County, California, as more fully described on said Deed of Trust. Including a Note(s)/ Unconditional Guaranty which had a principal amount of $541,500.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

THE FAILURE TO PAY THE ENTIRE UNPAID PRINCIPAL BALANCE PLUS ACCRUED INTEREST THEREON WHICH BECAME IMMEDIATELY DUE AND PAYABLE WHEN BORROWER DIED AND THE PROPERTY CEASED TO BE THE PRINCIPAL RESIDENCE OF ANY SURVIVING BORROWER.

NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

**IMPORTANT NOTICE**
**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

Trustee Sale No. : 20120191200036          Title Order No.: 1097100

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**DATED: 02/16/2012**

**NDEX WEST, LLC as Agent for Beneficiary**

By: _____

**Clayton Goff**

END OF DOCUMENT
Page 3 of 3

FCUS_NoticeOfDefault.rpt - Record - (10/17/2011) - Ver-33

Recording requested by:
SERVICELINK, A DIVISION OF CHICAGO
TITLE INSURANCE COMPANY

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

APN #: 127-012-019
Property Address:
930 SANTA CRUZ DRIVE
PLEASANT HILL, CALIFORNIA 94523

*SUB201201912

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2012-0071979-00
Check Number
Thursday, MAR 29, 2012 08:34:00
MOD      $2.00:REC    $12.00:FTC    $1.00
DRF      $2.70:REF    $0.30:RED    $1.00
ERD      $1.00:
Ttl Pd    $20.00    Rcpt # 0001221899

Space above this line for Recorder's use only

Trustee Sale No. : 20120191200036 Title Order No.: 1097100

## SUBSTITUTION OF TRUSTEE

WHEREAS, YOLANDA MARIA SANTOS, TRUSTEE OF THE YOLANDA MARIE SANTOS LIVING TRUST, DATED MARCH 25, 2009 was the original Trustor, ALAN E. SOUTH, ATTORNEY AT LAW, SOUTH & ASSOCIATES was the original Trustee, and URBAN FINANCIAL GROUP was the original Beneficiary Recorded on 04/27/2009 as Instrument No. 2009-0091138-00 of official records in the Office of the Recorder of Contra Costa County, California, as more fully described on said Deed of Trust.; and WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said prior Trustee.

NOW, THEREFORE, the undersigned hereby substitutes, NDEx West, L.L.C., WHOSE ADDRESS IS: 15000 Surveyor Boulevard, Suite 500, Addison, Texas 75001-9013, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

DATED:

March 2, 2012

State of Texas
County of Harris

REVERSE MORTGAGE SOLUTIONS, INC.

Debbie Sims. Vice President

On March 2, 2012 before me, Melinda Marie Penny , Notary Public, personally appeared Debbie Sims. Vice President who is known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**SEE DECLARATION
ATTACHED**

WITNESS my hand and official seal.

Signature _____ (Seal)
Melinda Marie Penny

My commission expires: 9-30-2014

MELINDA MARIE PENNY
Notary Public, State of Texas
My Commission Expires
September 30, 2014

FCUS_SubstituteOfTrustee_M.rpt - 08/12/2010 - Ver 15



NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
Telephone:   (866) 795-1852
Telecopier:   (972) 661-7800

## DECLARATION OF MAILING
### Cal. Civ. Code § 2934a; Cal. Code of Civ. Pro. § 2015.5

**TRUSTEE'S SALE NUMBER:**     20120191200036

I, Ric Juarez, the undersigned, a United States Citizen declare that:

I am an employee, over the age of eighteen years, of

NDEx West, L.L.C.,

whose business address is:

15000 Surveyor Boulevard, Suite 500, Addison, Texas 75001-9013

A copy of the attached Substitution of Trustee has been mailed in the manner provided in California Civil Code § 2924b to the trustee then of record and to all persons to whom a copy of the notice of default is required to be mailed in compliance with all requirements of California Civil Code § 2934a.

I certify under PENALTY OF PERJURY under the Laws of the State of California that the foregoing is true and correct.

NDEx West, L.L.C.,

Ric Juarez
(Declarant)

DATED

MAR 2 7 2012

### End of Document

SBC20120191200036



## Law Office of Daniel J. Hanecak

9444 Harbour Point Drive #66 • Elk Grove, Ca 95758 • phone (717) 341-6318 • djhanecak@gmail.com

ATTN: Foreclosure Department
NDEx West, LLC
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
Telecopier: (972) 661-7800

ATTN: Foreclosure Department
Reverse Mortgage Solutions, Inc.
2727 Spring Creek Drive
Spring, Texas 77373
Fax: 1-866-790-3451

May 25, 2012

### NOTICE AND DEMAND FOR:

### CANCELLATION OF NOTICE OF TRUSTEE'S SALE AND NOTICE OF DEFAULT

Name: Yolanda Marie Santos Living Trust

Loan No: UFG076511ul

Trustee Sale No: 2012019200036

APN: 127-012-019-7

**You are hereby Noticed and demanded to cancel the current "Notice of Trustee's Sale,"** as erroneously and allegedly filed against the above named Loan No. and APN.

You are participating in a legally insufficient and **VOID** process. The California Supreme Court has ruled that *strict compliance* with the statutes concerning this type of process must be adhered to by the parties invoking such statutes. The Court has also ruled that any Trustee's Sale which does not comport to such *strict compliance* is **VOID.**

**You are hereby NOTICED** that the Notice of Default and Notice of Trustee's Sale, as filed in the Official Records of Contra Costa County, California, are not accepted by the Trustor. **The Notice of Default, Document # 2012-0038384-00,** and the **Notice of Trustee Sale,** both contain false and misleading information. The amounts due, alleged in the Instruments, are incorrect and false. The stated beneficiary has not accounted for the amounts accurately.



Further, pursuant to California Civil Code §2924f(b)(1), the Notice of Trustee's Sale **MUST** be served at least 20 days before the sale. The Notice of Trustee's Sale must also be mailed by registered or certified mail at least 20 days before the sale. **California Civil Code §2924f(b)(1)(i)-(iii) were not strictly complied with** as the 20 day requirement was not met by the recorded documents.

You are hereby **required and demanded** to file, in the Recorders' Office in which the Trustee's Sale was filed, a **CANCELLATION OF NOTICE OF TRUSTEE'S SALE**, as it relates to the subject Loan No. and Trustee's Sale referenced above **IMMEDIATELY**. You are finally demanded to deliver to the Law Office named herein, a fully executed copy of the same document evidencing the Cancellation of the Trustee's Sale within 24 hours of the Cancellation.

**NOTICE: If you fail to comply with this Notice and Demand, you could face serious civil and possible criminal charges.**

Regards.

Daniel J. Hanecak, Esq.



# Law Office of Daniel J. Hanecak

9444 Harbour Point Drive #66 • Elk Grove, Ca 95758 • phone (717) 341-6318 • djhanecak@gmail.com

ATTN: Foreclosure Department
NDEx West, LLC
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
Telecopier: (972) 661-7800

ATTN: Foreclosure Department
Reverse Mortgage Solutions, Inc.
2727 Spring Creek Drive
Spring, Texas 77373
Fax: 1-866-790-3451

June 6, 2012

## NOTICE AND DEMAND FOR:

## CANCELLATION OF NOTICE OF TRUSTEE'S SALE AND NOTICE OF DEFAULT

| | |
|---|---|
| Name: | Yolanda Marie Santos Living Trust |
| Loan No: | UFG07651tul |
| Trustee Sale No: | 2012019200036 |
| APN: | 127-012-019-7 |

**You are hereby Noticed and demanded to cancel the current "Notice of Trustee's Sale,"** as erroneously and allegedly filed against the above named Loan No. and APN.

You are participating in a legally insufficient and **VOID** process. The California Supreme Court has ruled that *strict compliance* with the statutes concerning this type of process must be adhered to by the parties invoking such statutes. The Court has also ruled that any Trustee's Sale which does not comport to such *strict compliance* is **VOID**.

Per the pending litigation of *Chandler v. Wells Fargo, et al.* Northern District of California Case No. 11-cv-03831 and the HECM statutes, 12 U.S.C. § 1715z-20(a), and HECM regulations, 24 C.F.R. § 206.1 *et seq*; Reverse Mortgage Solutions, Inc. has violated the 95% rule. As the Chandler matter is based upon the same premise, and the Notice of Default was filed by NDEX WEST, LLC, you were already on Notice that this



process is **VOID.** Further, as the trustor of this Deed of Trust is Yolanda Maria Santos, Trustee of the Yolanda Maria Santos Trust, the Borrower has NOT died.

You are hereby **required and demanded** to file, in the Recorders' Office in which the Trustee's Sale was filed, a **CANCELLATION OF NOTICE OF TRUSTEE'S SALE,** as it relates to the subject Loan No. and Trustee's Sale referenced above **IMMEDIATELY.** You are finally demanded to deliver to the Law Office named herein, a fully executed copy of the same document evidencing the Cancellation of the Trustee's Sale within 24 hours of the Cancellation. You are further demanded to notify the Law Office by telephone at (717) 341-6318 that these documents have been **REVOKED, CANCELLED** and taken off the record and the sale date has been permanently removed pending resolution of this matter.

**NOTICE: If you fail to comply with this Notice and Demand, you could face serious civil and possible criminal charges. This is the second Notice that will be received by you and ignoring this notice may constitute a willful and reckless disregard for the information presented.**

Regards,

Daniel J. Hanecak, Esq.

1  Daniel J. Hanecak, Esq. [CSB 275161]
   Law Office of Daniel J. Hanecak
2  9444 Harbour Point Drive #66
   Elk Grove, Ca 95758
3  Phone: (717) 341-6318
   Email: djhanecak@gmail.com
4
5
   Attorneys for Plaintiff
6  ISABEL SANTOS, INDIVIDUALLY AND
   AS TRUSTEE AND BENEFICIARY OF THE
7  YOLANDA MARIA SANTOS TRUST

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF CONTRA COSTA

10

11  ISABEL SANTOS, INDIVIDUALLY AND     ) Case No.: C12-01367
    AS TRUSTEE AND BENEFICIARY OF THE   )
12  YOLANDA MARIA SANTOS TRUST,         ) [PROPOSED] ORDER ON PLAINTIFF'S EX
                                        ) PARTE APPLICATION FOR A TEMPORARY
13      Plaintiffs,                     ) RESTRAINING ORDER AND OSC RE:
                                        ) PRELIMINARY INJUNCTION
14                                      )
        v.                              ) Date:   June 8, 2012
15                                      ) Time:   1:30 p.m.
                                        ) Dept:   60
16  REVERSE MORTGAGE SOLUTIONS, INC.;   ) Judge:  TBD
    NDEX WEST, LLC; and DOES 1 through 20, )
17                                      )
        Defendants                      ) Complaint Filed;  June 8, 2012
18                                      ) Trial Date:       Not yet set
                                        )
19                                      )
                                        )
20  _____   )

21                                  ORDER

22      To Defendants and all of their officers, agents, servants, employees, trustees and attorneys, and

23  those persons in active concern or participation with any of them:

24          YOU ARE HEREBY ORDERED PURSUANT TO COURT ORDER AND CIVIL CODE

25  §2924, ET SEQ. TO POSTPONE ANY TRUSTEE'S SALE UNTIL FURTHER ORDERS OF

26  THE COURT not to exceed 365 days, prohibiting the Trustee's Sale of real property located at 930

27  Santa Cruz Drive, Pleasant Hill, California 94523.

28          IN THE ALTERNATIVE, A TEMPORARY RESTRAINING ORDER


[PROPOSED] ORDER FOR EX PARTE APPLICATION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION- 1

1    THE COURT FINDS before it can hold a hearing on the Order to Show Cause by a timely

2    motion, great and irreparable harm would result to Plaintiff by the Trustee's Sale of her residence.

3    THE COURT FINDS Defendants were informed of the date, time and place of the Application

4    for Temporary Restraining Order and for Issuance of Order to Show Cause Re: Preliminary Injunction

5    would be heard.

6    Any opposition papers to the Order to Show Cause shall be filed with this Court and served on

7    Plaintiff's attorney by mail and e-mail by _6/19/12_.

8    Any reply brief shall be filed with this Court and served on Defendants' attorneys by mail and

9    fax/e-mail by _6/21/12_.

10   THE COURT ORDERS UNTIL THE HEARING ON THE ORDER TO SHOW CAUSE as set

11   forth above or as may be continued by order of this Court, Defendants, and all of their officers, agents,

12   servants, employees, trustees and attorneys, and those persons in active concern or participation or

13   privity with any of them are enjoined and prohibited from selling the real property located 930 Santa

14   Cruz Drive, Pleasant Hill, California, 94523.

15   IT IS FURTHER ORDERED that:

16   a.    Plaintiff shall serve this order to show cause on defendants in the following manner:

17         _Personal service by June 11, 2012_.

18   b.    Proof of service must be delivered to the court hearing the OSC by: _6/21/12_

19   c.    The temporary restraining order will expire on: _6/26/12_

20   By close of business on the day after this order, a copy of this order shall be served on

21   Defendants.

22   Further orders: _Hearing date: 6/26/12_

23   _Time: 9:00 am_

24   _Dept 19_

25

26   Dated: this the ___ day of June, 2012

27                                                    _____

28                                                    Hon. Judge of the Superior Court

1  **Daniel J. Hanecak, Esq. [CSB 275161]**
   **Law Office of Daniel J. Hanecak**
2  9444 Harbour Point Drive #66
   Elk Grove, Ca 95758
3  Phone: (717) 341-6318
   Email: djhanecak@gmail.com
4

5  Attorneys for Plaintiff
6  ISABEL SANTOS, INDIVIDUALLY AND
   AS TRUSTEE AND BENEFICIARY OF THE
7  YOLANDA MARIA SANTOS TRUST

8                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                              **COUNTY OF CONTRA COSTA**

10

11 | ISABEL SANTOS, INDIVIDUALLY AND    )  Case No.: C 12 - 01362
    AS TRUSTEE AND BENEFICIARY OF THE )
12 | YOLANDA MARIA SANTOS TRUST,       )  **NOTICE OF EX PARTE APPLICATION AND**
                                       )  **EX PARTE APPLICATION FOR A**
13 |                                   )  **TEMPORARY RESTRAINING ORDER AND**
              Plaintiff,              )  **OSC RE: PRELIMINARY INJUNCTION**
14 |                                   )
              v.                      )  Date:    June 8, 2012
15 |                                   )  Time:    1:30 p.m.
                                       )  Dept:    60
16 | REVERSE MORTGAGE SOLUTIONS, INC.; )  Judge:   TBD
    NDEX WEST, LLC; and DOES 1 through 20, )
17 |                                   )
              Defendants              )  Complaint Filed;  June 8, 2012
18 |                                   )  Trial Date:       Not yet set
                                       )
19 |_____)

20        **PLEASE TAKE NOTICE** that on June 8, 2012, in Dept. 60 of the above-captioned court, at

21   1:30 p.m., Plaintiff ISABEL SANTOS, INDIVIDUALLY AND AS TRUSTEE AND BENEFICIARY

22   OF THE YOLANDA MARIA SANTOS TRUST ("Plaintiff") through her counsel, hereby applies ex

23   parte for a temporary restraining order and order to show cause regarding a preliminary injunction and

24   why one should not be issued. This application is made pursuant to California Rules of Court, Rule

25   3.1300(b) and Civ. Code Proc. § 1005(b). Specifically, Plaintiff will be applying ex parte for:

26        1.    A temporary restraining order ("TRO") restraining and enjoining Defendants and all of

27   their officers, agents, servants, employees, assignees, trustees, and attorneys and those persons in active

28

     DECLARATION OF DANIEL J. HANECAK IN SUPPORT OF EX PARTE APPLICATION FOR TRO AND OSC - 1

1    concern or participation or privity with any of them, from conducting a Trustee's Sale of the real

2    property located at 930 Santa Cruz Drive, Pleasant Hill, California 94523.

3        2.    The issuance of an order to show cause why a preliminary injunction should not be

4    granted restraining and enjoining Defendants and all of their officers, agents, servants, employees,

5    assignees, trustees, and attorneys, and those persons in active concern or participation or privity with

6    any of them, from conducting a Trustee's Sale of the real property located at 930 Santa Cruz Drive,

7    Pleasant Hill, California 94523 during the pendency of the above entitled action.

8        Good cause exists for the foregoing Orders as set forth in the accompanying Memorandum of

9    Points and Authorities and supporting declarations filed herewith to restrain the Trustee's Sale of

10   Plaintiff's home. The sale of Plaintiff's home is scheduled for June 11, 2012. There is not enough time

11   to bring a noticed motion under Civ. Code Proc. § 1005(b). As addressed in the supporting

12   Declarations of Isabel Santos and Daniel J. Hanecak, Defendants have failed to follow the contract

13   agreement and federally mandated law in multiple ways. First, the Borrower listed on the Deed of

14   Trust is the Yolanda Maria Santos Trust. Plaintiff is the beneficiary and trustee of the Santos Trust.

15   The beneficiary and trustee of the Santos Trust have not died and thus, accelerated payment is

16   incorrect. Second, per the closing and required disclosure documents, the trust never received notice of

17   the HECM-loan. Third, Plaintiff has never received notice, nor been given the opportunity to re-

18   purchase the Property at 95% of the appraised value, as required under federally mandated HECM law.

19   Finally, Plaintiff has been consistently misled by RMS that she must either short sale the property or

20   move out and has no other rights.

21       Plaintiffs are not aware of any representation of Defendants at this time.

22       This Ex Parte Application is based on this (1) Application; (2) the Memorandum of Points and

23   Authorities In Support; (3) the Declaration of Plaintiff Isabel Santos; (4) the Declaration of Daniel J.

24   Hanecak and (5) all documentary evidence or oral arguments that shall be filed or heard by this Court.

25   ///

26   ///

27   ///

28   ///

1 | DATED:    June 7, 2012          LAW OFFICE DANIEL J. HANECAK

2

3

Daniel J. Hanecak, Esq.

4                                      Attorneys for Plaintiff

5                                      ISABEL SANTOS, INDIVIDUALLY AND AS
                                     BENFICIARY AND TRUSTEE OF THE

6                                      YOLANDA MARIA SANTOS TRUST

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF DANIEL J. HANECAK IN SUPPORT OF EX PARTE APPLICATION FOR TRO AND OSC - 3

*(handwritten left margin, rotated: "No Additional Moving Papers - Same memorandum used as TRO")*

1  Daniel J. Hanecak, Esq. [CSB 275161]
   Law Office of Daniel J. Hanecak
2  9444 Harbour Point Drive #66
   Elk Grove, Ca 95758
3  Phone: (717) 341-6318
   Email: djhanecak@gmail.com
4

5

   Attorneys for Plaintiff
6  ISABEL SANTOS, INDIVIDUALLY AND
   AS TRUSTEE AND BENEFICIARY OF THE
7  YOLANDA MARIA SANTOS TRUST

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     COUNTY OF CONTRA COSTA

10

11  ISABEL SANTOS, INDIVIDUALLY AND        )  Case No.: C12 - 01362
    AS TRUSTEE AND BENEFICIARY OF THE      )
12  YOLANDA MARIA SANTOS TRUST,            )  MEMORANDUM OF POINTS AND
                                           )  AUTHORITIES IN SUPPORT OF
13                                         )  PLAINTIFF'S EX PARTE APPLICATION
              Plaintiff,                   )  FOR A TEMPORARY RESTRAINING
14                                         )  ORDER AND OSC RE: PRELIMINARY
                                           )  INJUNCTION; MEMORANDUM OF
15         v.                              )  POINTS AND AUTHORITIES IN
                                           )  SUPPORT
16  REVERSE MORTGAGE SOLUTIONS, INC.;      )
    NDEX WEST, LLC; and DOES 1 through 20, )  Date:  June 8, 2012        June 26, 2012
17                                         )  Time:  1:30 p.m.               9:00 am
              Defendants                   )  Dept:  60                        9
18                                         )  Judge: TBD
                                           )
19                                         )
                                           )  Complaint Filed;  June 8, 2012
20 _____     )  Trial Date:       Not yet set

21          COMES NOW, ISABEL SANTOS, INDIVIDUALLY AND AS TRUSTEE AND

22  BENEFICIARY OF THE YOLANDA MARIA SANTOS TRUST ("Plaintiff") with this Memorandum

23  of Points and Authorities In Support of Plaintiff's Ex Parte Application for a Temporary Restraining

24  Order and for Issuance of an Order to Show Cause Regarding a Preliminary Injunction against

25  Defendants REVERSE MORTGAGE SOLUTIONS, INC.; NDEX WEST, LLC, and DOES 1-20.

26

27

28

        MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION - 1

I.    **INTRODUCTION**

This case concerns the failure of Defendant Reverse Mortgage Solutions, Inc. ("RMS") and NDEX WEST, LLC ("NDEX") (collectively, "Defendants") to abide by both the terms of the contractual agreement and key terms of the federally insured reverse mortgages that RMS has sold, bought and/or serviced, and one of the Government Sponsored Entities has owned, for many years.[1] These mortgages are called "Home Equity Conversion Mortgages" ("HECM") and generally referred to as "reverse mortgages."

Contrary to the terms of the agreement, RMS has initiated foreclosure proceedings to sell the home on June 11, 2012. The Notice of Default contains false, fraudulent and incorrect statements and is void on its face. The alleged trustee in the foreclosure proceedings is Defendant NDEX. NDEX was put on notice that serious defects in the sale proceedings have occurred because the borrower has not died and Plaintiff was never given notice of the 95% Rule as mandated by Federal law. Plaintiffs now seek the Court's intervention to enjoin the sale to require Defendants to follow the contractual agreement as well as Federal law.

II.    **STATEMENT OF FACTS**

On April 13, 2009, shortly after her husband passed away, Yolanda Maria Santos ("Ms. Santos") as a surviving joint tenant recorded a Grant Deed in the Official Records of Contra Costa County conveying the subject property from Yolanda M. Santos, Surviving Joint Tenant to Yolanda M. Santos, Trustee of the Yolanda Maria Santos Living Trust. (See Declaration of Isabel Santos ("Santos Decl."), ¶ 6.) A true and correct copy is attached as **Exhibit A.**

Shortly after, on April 20, 2009, the Yolanda Maria Santos Trust signed a reverse mortgage deed of trust and note with Urban Financial Group. The Trustor on the Deed of Trust is listed as "Yolanda Maria Santos, Trustee of the Yolanda Maria Santos Trust." (Santos Decl., ¶ 7.) A true and correct copy of the Deed of Trust is attached as **Exhibit B.** The note that accompanies the deed states under Section 1, "Borrower" is defined as "each person signing at the end of the Note." The signatures at the bottom of both the Note and Deed are Yolanda Maria Santos as an individual and Yolanda Maria

---

[1] This loan is likely owned by Ginnie Mae because it is an FHA loan. However, in numerous attempts at contacting FHA, Plaintiff was told that RMS is the only one who can give that information.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION - 2

1  Santos, Trustee of the Yolanda Maria Santos Trust. (Santos Decl., ¶ 8.)  A true and correct copy of the

2  Notes are attached as **Exhibit C**.

3       During the year of 2010, Plaintiff moved into the Property as her primary residence.  Shortly

4  thereafter, on February 7, 2011, Ms. Santos passed away. (Santos Decl., ¶ 3, 14.)  At the time of her

5  death, the HECM balance was approximately $362,000. The current value of the home, as estimated

6  by the real estate website Zillow, is $288,600.

7       On March 7, 2011, Plaintiff began a string of phone calls to RMS.  On this date, Plaintiff called

8  to let them know her mother had passed away.  The RMS representative stated "oh yes, we know." At

9  the time of the call, Plaintiff had not received any communication from RMS to date. (Santos Decl., ¶

10  15.)

11       On April 25, 2011, Plaintiff called RMS to let them know that she planned to stay in the

12  Property and needed information about how to make re-payment arrangements.  Plaintiff was told to

13  call back and speak to "Ms. Johnson," who had the file.  On May 16, 2011, Plaintiff called RMS and

14  asked to speak with Ms. Charlotte Johnson, ext. 1677.  Plaintiff was transferred to her voicemail, left a

15  message and never received a return call. (Santos Decl., ¶ 16, 17.)

16       On June 6, 2011, Plaintiff attempted to contact Ms. Johnson again.  Plaintiff was able to reach

17  her this time and conveyed that she was trying to make re-payment arrangements.  Ms. Johnson told

18  Plaintiff that she had time to get over the death, but that her only options were either to let the Property

19  be foreclosed or a short sale and to have someone other than Plaintiff buy the Property—re-payment

20  was not an option.  Ms. Johnson conveyed that her request for a re-payment plan was refused.  Finally,

21  Ms. Johnson directed Plaintiff to contact HUD.  Plaintiff subsequently contacted HUD and spoke with

22  a representative who said, "why are you calling us? We have nothing to do with this." Plaintiff

23  immediately called back Ms. Johnson, got her voicemail and left a message. (Santos Decl., ¶ 18.)

24       On June 16, 2011, Plaintiff again told Ms. Johnson that she was ready to make re-payment.  At

25  this point, Ms. Johnson told Plaintiff to get a buyer for the Property because they did not want payment

26  arrangements, they wanted payment in full.  Plaintiff conveyed to Ms. Johnson that she had worked for

27  Bank of America for 30 years and was aware as to how loans are serviced and insured.  Plaintiff told

28  Ms. Johnson she was aware that even a short sale would not be a true loss to RMS because of HUD's

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION - 3

1  insurance on the Property. Plaintiff was again rebuffed at each re-payment attempt and told that she
2  could sell to another party or that they would just foreclose. (Santos Decl., ¶ 19.)

3      On July 18, 2011, Plaintiff called RMS, spoke with Ms. Johnson, and told her that she was
4  attempting to obtain financing to purchase the Property. Ms. Johnson responded that an extension
5  would need to be requested from HUD to wait for a purchase agreement. (Santos Decl., ¶ 20.)

6      On August 15, 2011, Plaintiff called to see if the extension had been requested and/or approved.
7  Ms. Johnson told Plaintiff that she "should hurry, because I don't know if it will be approved."
8  Plaintiff again re-iterated that she knew this would not be a true loss to RMS and that she wanted to
9  simply begin the re-payment process. Plaintiff offered to pay the full amount that was due on the note,
10  even though she knew it was significantly above what the market value of the Property was. (Santos
11  Decl., ¶ 21.)

12      On October 17, 2011, Plaintiff called Ms. Johnson to notify RMS that their cooperation was
13  necessary and she was willing to put a re-payment plan into place. Plaintiff again offered to pay the
14  full amount that was due on the note, even though she knew it was significantly above what the market
15  value of the Property was. (Santos Decl., ¶ 22.)

16      On November 14, 2011 and December 12, 2011, Plaintiff contacted Ms. Johnson, left a message
17  and was not given a return call. (Santos Decl., ¶ 23, 24.)

18      On January 9, 2012, Plaintiff again called RMS and spoke with customer service. Plaintiff
19  explained her situation and that she was willing to begin re-payment. The representative told her,
20  "well, we are going to foreclose." (Santos Decl., ¶ 25.)

21      On February 21, 2012, NDEX recorded a Notice of Default that stated the amount owing was
22  $320,750.96. Nothing in the notice informs Plaintiff or the estate that it can sell the property for 95%
23  of its appraised value. The Notice of Default stated, "THE FAILURE TO PAY THE ENTIRE
24  UNPAID PRINCIPAL BALANCE PLUS ACCRUED INTEREST THEREON WHICH BECAME
25  IMMEDIATELY DUE AND PAYABLE WHEN BORROWER DIED AND THE PROPERTY
26  CEASED TO BE THE PRINCIPAL RESIDENCE OF ANY SURVIVING BORROWER." A true
27  and correct copy of the Notice of Default is attached as **Exhibit E.**

28

1       On February 27, 2012, Plaintiff received 13 Notices of Default in the mail, all certified. The

2   next day, on February 28, 2012, Plaintiff contacted NDEX, per the Notice of Default, to try to speak to

3   the attorney serving as trustee. NDEX refused to talk to Plaintiff unless she could prove she was the

4   heir. Plaintiff faxed the last will and testament, the death certificate and the trust paperwork showing

5   that she was the trustee and beneficiary of the Santos Trust. Plaintiff was told to call back in two days

6   to see if her paperwork was received. The next day, on February 29, 2012, Plaintiff called RMS and

7   was sent to Ms. Johnson's voicemail. Plaintiff's message and call were not returned. (Santos Decl., ¶

8   27-30.)

9       On March 2, 2012, Plaintiff called NDEX again. The NDEX representative stated that they had

10  no information to give her other than there was no sale date yet scheduled. On March 5, 2012, Plaintiff

11  again called RMS and spoke with Ms. Johnson. Ms. Johnson told her that time had run out and she

12  needed to move out. RMS was moving forward with the foreclosure. Plaintiff re-iterated that she was

13  ready and willing to enter a re-payment plan. Ms. Johnson was not receptive and again repeated to

14  Plaintiff that she needs to move out. On March 29, 2012, NDEX recorded a Substitution of Trustee

15  that allegedly substituted them as trustee. (Santos Decl., ¶ 31-33.)

16      On April 2, 2012, Plaintiff called RMS and asked to speak to a short sale department or the

17  legal department. Plaintiff was told that neither existed. On April 23, 2012, Plaintiff called and again

18  spoke with customer service and explained her situation. Customer service told Plaintiff to "call HUD

19  again." Plaintiff explained that she had already contacted HUD at their suggestion and was told they

20  were not involved. The customer service representative flatly told Plaintiff that her only option was to

21  move out. (Santos Decl., ¶ 34, 35.)

22      On May 14, 2012, Plaintiff met with Elliot Abrams, Esq. to contact RMS on her behalf.

23  Plaintiff and Mr. Abrams attempted to speak with the legal department, but were unable. (Santos Decl.,

24  ¶ 36.) On May 17, 2012, Plaintiff had a conference call with Mr. Abrams and RMS representative

25  Andrea Victorian, ext. 7856, where she told Mr. Abrams RMS would consider a short sale to someone

26  other than Plaintiff, but nothing else. (Santos Decl., ¶ 37.) On May 22, 2012, a Notice of Trustee's

27  Sale was posted on Plaintiff's door. (Santos Decl., ¶ 38.) On May 25, 2012, Plaintiff sent a letter to

28  both RMS and NDEX notifying them that serious defects in the notice procedures and chain of title

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION - 5

1  existed in the foreclosure process. (Santos Decl., ¶ 39; Also see, Declaration of Daniel J. Hanecak

2  ("Hanecak Decl."), ¶ 10.) A true and correct copy of the letter sent to RMS and NDEX is attached as

3  **Exhibit F.**

4    On June 5, 2012, Plaintiff and Mr. Hanecak made multiple phone calls to HUD to find out

5  whether the Santos Trust loan was owned by Ginnie Mae. In the course of the run-around by HUD,

6  Plaintiff and counsel finally were able to speak with supervisor Rafael, ext. 7026. During this call

7  Rafael told Plaintiff that he is not able to pull anything up on her loan. All HUD can pull up was that

8  the originator was Twin Capital; that RMS is the current owner and servicer and that the reverse

9  mortgage is insured by HUD. Plaintiff told Rafael that she was directed to contact HUD by RMS.

10 Rafael told Plaintiff that "whoever told you to call HUD was blowing you off because they know we

11 don't know anything." (Santos Decl., ¶ 40.)

12    On June 6, 2012, Plaintiff sent a second notice to RMS and NDEX notifying them that they

13 were in potential violation of HECM Regulations and that the Notice of Default and Notice of Trustee's

14 Sale are void and should be cancelled immediately. (Hanecak Decl., ¶ 11.) A true and correct copy of

15 this second notice to Defendants is attached as **Exhibit G.**

16 **III.   ARGUMENT**

17    **A. A Temporary Restraining Order May Be Issued When There Is Not Time to Bring A
        Noticed Motion and Irreparable Damage Will Be Caused**

18

19    There is insufficient time upon which to bring a noticed motion and therefore a Temporary

20 Restraining Order is necessary to prevent the Trustee's Sale of Plaintiff's Property. (Hanecak Decl., ¶

21 5-8.)

22    An ex parte application may be made per California Rule of Court 3.1202(c) on competent

23 testimony of irreparable harm. Good cause exists for an order on the Ex Parte Application submitted

24 herewith because Plaintiff's home is deemed unique and Plaintiff stands to lose it by way of an illegal

25 and fraudulent Trustee's Sale as set forth below and in the Declaration of Isabel Santos.

26    **B. The Standard for Injunctive Relief**

27    California Civil Code of Procedure §§525-533 together with California Rules of Court 3.1150-

28 3.1152, provides the Court with discretion to issue a preliminary injunction where "sufficient grounds

exist." (Civ. Proc. Code §527(a).) The purpose of the preliminary injunction is to preserve the status

1  quo ante as it existed prior to litigation until the action can be determined on its merits. (*Sierra Forest*
2  *Legacy v. Rey* (9th Cir. 2009) 577 F. 3d 1015, 1023.)

3       For a plaintiff to qualify for a preliminary injunction, the Court uses its discretion in balancing
4  two interrelated factors: (1) whether plaintiff will suffer greater injury if denied the injunction
5  (*Shoemaker v. County of Los Angeles* (1995) 37 Cal. App. 4th 618, 633); and, (2) plaintiff's likelihood
6  of success at trial (*Robbins v. Sup. Ct. (County of Sacramento)* (1985) 38 Cal.3d. 199, 205.) The
7  Court's determination is guided by a "mix" of successful-merit and interim-harm factors; if plaintiff's
8  showing is greater on one, the less may be shown on the other for success. (*Butt v. State of Calif.* (1992)
9  4 Cal.4th 668, 678.)

10       Accordingly, an injunction may be granted when it appears by the complaint or affidavits that
11  the commission or continuance of some act during the litigation would produce great or irreparable
12  injury to a party in the action. (Civ. Proc. Code 526(2); *Smith v. Smith,* (1942) 49 Cal.App.2d 716,
13  718-719.) "The term 'irreparable injury' means that the species of damages, whether great or small,
14  that ought not to be submitted to on the one hand or inflicted on the other." (*Wind v. Herbert,* (1960)
15  186 Cal.App.2d 276, 285.) This definition warrants the use of the injunctive power of the court against
16  a wrong which a trial judge deems is insufferable because it constitutes an overbearing assumption by
17  one person of superiority and domination over the rights and property of others. (*Fretz v. Burke* (1967)
18  247 Cal. App. 2d 741, 746.)

19       An injunction may also be granted when pecuniary compensation would not afford adequate
20  relief (Civ. Code Proc. §526(4)) or where it would be extremely difficult to ascertain the amount of
21  compensation which would afford adequate relief. (Civ. Code Proc. §526(5); *Union Oil Co. v.*
22  *Domengeaux* (1939) 30 Cal. App. 2d 266, 270-271.) In this respect, the Court is reminded of Cal. Civ.
23  Code §3387, which presumes a person's property is so unique that monetary damages cannot
24  adequately compensate for its loss.

25       **C. Plaintiff Has A Likelihood of Success On the Merits Because the Santos Trust was A**
26          **Borrower on the Note and Deed and Was Never Given Proper Notice; also Plaintiff**
        **was Never Given the Opportunity to Re-Purchase the Property for 95% of the**
27          **Appraisal Value and these Willful Acts Void A Foreclosure Sale**

28