**IN WITNESS WHEREOF**, the Grantor has executed this Declaration of Trust on the date written below.

_(signature)_

Signature of Yolanda Maria Santos, as Grantor

Date: _March 2 5 2009_

_(signature)_

Signature of Yolanda Maria Santos, as Trustee
of The Yolanda Maria Santos Living Trust

Date: _3 - 2 5 - . 09_

8

**Annex A**

## Trust Property

All of the Grantor's interest in the following property is transferred into the Trust:

The real property located at:

- 930 Santa Cruz Drive
  Pleasant Hill, California 94523
  Type of Property: Home

## ACKNOWLEDGMENT

State of California

County of CONTRA COSTA

On MARCH 25, 2009, before me, HEATHER A. HARPER, NOTARY PUBLIC, personally appeared Yolanda Maria Santos, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

HEATHER A. HARPER
COMM. #1796753
NOTARY PUBLIC · CALIFORNIA
CONTRA COSTA COUNTY
My Comm. Expires April 25, 2012

10

# THE
## LAST WILL AND TESTAMENT
### OF

## Yolanda Maria Santos

I, Yolanda Maria Santos, a resident of the State of California; and being of sound mind and disposing mind and memory, do hereby make, publish and declare this to be my Last Will and Testament, thereby, revoking and making null and void any and all other Last Wills and Testaments and/or Codicils to Last Wills and Testaments heretofore made by me. All references herein to this Will shall be construed as referring to this Last Will and Testament only.

### FAMILY CLAUSE

I am unmarried. The names of my children are listed below. If I do not leave any property to any of my children, my failure to do so is intentional.

Isabel Caridad Santos

### DEBT CLAUSE

I direct that the executor named pursuant to this Last Will and Testament review (as soon after my death as practical) all of my just debts and obligations, including funeral expenses and the expenses incident to my last illness; excepting those long term debts secured by real or personal property which may be assumed by the Heir of such property, unless such assumption is prohibited by law or upon agreement by the Heir. The executor shall pay these just debts only after the creditor provides sufficient evidence to support their claim.

My executor shall pay out of my gross Estate, as if they were my debts, and without proration or appointment, all estate and inheritance taxes, by whatever name called (including any interest due thereon), becoming payable because of my death in respect to all property comprising my gross Estate for death tax purposes, whether or not such property passes under this Last Will and Testament.

Page 1 of my Last Will and Testament _____
(Signature)

I further direct that if any heir or heirs named in this Last Will and
Testament should be indebted to me at the time of my death, and evidence of
such indebtedness is provided or made available to the Executor of my Estate,
then that share of my Estate which I give, devise, and bequeath to any and each
such heir shall be reduced in value by an amount equal to the proven
indebtedness of such heir or heirs, unless I have specifically provided in this Last
Will and Testament for the forbearance of such debt; otherwise, the value of the
unforgiven indebtedness shall be either added to the share given to the
remaining heir, if there be only one remaining heir named in the Distribution
Clause, or equally divided between or among the remaining heirs, if there be
more than one remaining heir named in the Distribution Clause(s).

## SPECIAL DIRECTIVES CLAUSE

Notwithstanding any other provision of this Last Will and
Testament, including those express directives in the Debt Clause above the
Distribution Clause below, I further direct the following:

Take all appropriate steps to extend life. 2 doctors must be consulted
prior to stopping any life extension steps.

## DISTRIBUTION CLAUSE

I give, devise and bequeath all of the rest, remainder and residue of my
Estate, whether real or personal property of whatsoever kind or character and
wherever situated, to the Trustee(s) of The Yolanda Maria Santos Living Trust,
dated __3 · 2 5_____ , 20⊄_ , as then written or thereafter amended, to be
added to the principal of that Trust and to be held, administered and distributed
under the Declaration of Trust and any amendments made to it, except the
following property, if any, which shall be given as follows:

None applicable.

Page 2 of my Last Will and Testament ⟶ _Yolanda M. Santos_
(Signature)

## EXECUTOR APPOINTMENT CLAUSE

(A)     I nominate, constitute and appoint my daughter, Isabel Caridad Santos, to be the Executor of my Estate.

(B)     If, for any reason, my first nominee Executor should fail to qualify or be unable or unwilling to accept or continue as the Executor of my Estate, I nominate, constitute and appoint my niece, Olga Aracely Prado, to be the Executor of my Estate.

(C)     If, for any reason, my first nominee Executor and my first alternate Executor should both fail to qualify or be unable or unwilling to accept or continue as the Executor of my Estate, I nominate, constitute and appoint my daughter's partner, John Kostelec, to be the Executor of my Estate.

## EXECUTOR POWER OF APPOINTMENT CLAUSE

(A)     All directives in this Will that use by reference the word Executor mean and include any person named herein as my Executor (or personal representative, as may be defined under state law) and any person who may be acting in either capacity, at any time. Such person shall have broad and reasonable discretion under the directives of this my Last Will and Testament with respect to any property, real or personal, left by or held by me, or acquired by my Executor on behalf of my Estate.

(B)     I wish my Executor to have broad and reasonable discretion in the administration of my Estate, to have all of the powers permitted to be exercised by an Executor under state law, and to be able to do everything he or she deems advisable for the best interest of my Estate and the Heirs thereof, all without the necessity of court approval or supervision. I direct that my Executor perform all acts, take all such proceedings, and exercise all such rights and privileges, although not specifically mentioned in this Will, with relation to any such property, as if the absolute owner thereof; and in connection therewith, to make, execute and deliver any instruments, and to enter into any covenants or agreements binding my Estate or any portion thereof.

(C)     No such person named in, or appointed in connection with this Will in a fiduciary capacity shall be required to file any bond or other security for the faithful performance of his or her duties as such fiduciary in any jurisdiction; and if, despite this directive, a bond should be required, I request that it be accepted without sureties and in a nominal amount.

Page 3 of my Last Will and Testament.

(Signature)

## NON-LIABILITY OF FIDUCIARIES

Any fiduciary, including my Executor and any Trustee, who in good faith endeavor to carry out the provisions of this Last Will and Testament, shall not be liable to me, my Estate, or my heirs, for any damages or claims arising because of their actions or inactions based on this Last Will and Testament. My Estate shall indemnify and hold them harmless.

## SAVINGS CLAUSE

If a court of competent jurisdiction shall at any time invalidate or find unenforceable any provision of this Will, such invalidation shall not be construed as invalidating the whole of this Will. All of the remaining provisions shall be undisturbed as to their legal force and effect. If a court finds that an invalidated or unenforceable provision would become valid if it is limited, then such provision shall be deemed to be written, deemed, construed and enforced as so limited.

Page 4 of my Last Will and Testament

(Signature)

**IN WITNESS WHEREOF,** I hereunto set my name to this my Last Will and Testament on the date indicated below.

_(Signature of Yolanda Maria Santos)_

Date: _3-25-07_

Page 5 of my Last Will and Testament

_(Signature)_

## STATEMENT OF INTERMENT, CREMATION and WISHES

I, Yolanda Maria Santos, the undersigned, having previously executed a Last Will and Testament on the date hereof, hereby state that, in addition to the directives and bequest set forth in said Last Will and Testament, it is my desire that my remains be treated in the manner described below.

My further wishes are as follows: I am to be placed with my husband, Ramon G. Santos, in a niche, not in the ground. The niche is in Oakmond Memorial Park in Lafayette, California.

Dated: 3 25 09

(Signature of Yolanda Maria Santos)

## The Yolanda Maria Santos Living Trust
## Certificate of Trust

The undersigned, the sole Trustee of The Yolanda Maria Santos Living Trust, hereby certifies the following:

A.    **Name and Existence**. The name of the trust is The Yolanda Maria Santos Living Trust (the "Trust"). The Declaration of Trust creating said Trust was executed on __3·2 ς___, 20_○ς_

B.    **Grantors**. The Grantor of the Trust is the following person (the "Grantor"):

Name of Grantor        Social Security Number:

Yolanda Maria Santos

C.    **Trustees**. The current Trustee of the Trust is the following person:

Yolanda Maria Santos

D.    **Powers of Trustee**. The Trustee individually has the powers deemed necessary and appropriate to administer the Trust, including all powers granted under California law, subject to the fiduciary duties to the grantor and beneficiaries. The powers of the Trustee include, but are not limited to, the powers to:

1.    Hold, maintain, manage and administer assets of the Trust;

2.    Sell, trade, deal, encumber, mortgage, pledge, option, lease, lend or improve the assets of the Trust;

3.    Collect, hold, purchase, invest and reinvest the profits and principal of the Trust;

4.    Borrow money and purchase insurance;

5.    Employ and pay reasonable fees to counsel, accountants, financial advisors and any other professional deemed necessary for the proper administration of the Trust;

6.    Enter into contracts and otherwise sign and execute any instrument on behalf of the Trust;

7. Establish bank, brokerage and other financial and non-financial accounts for and on behalf of the Trust, and to sign any and all documents on the Trust's behalf in relation thereto, including any resolutions, certification or certificate required for such account;

8. Distribute or divide the assets of the Trust in accordance with the Declaration of Trust;

9. To pay or disburse such sums from the assets of the Trust as may be required, necessary or desirable to maintain the comfort and welfare of the grantor in the event the grantor is unable to actively and competently exercise judgment over financial matters by reason of a medical illness or mental impairment.

10. Upon the death of the Grantor, to pay any debts and expenses of the Grantor.

E. **Revocation**. The Trust is revocable, and the Grantor has the power to revoke the Trust at any time.

F. The Trust has not been revoked, modified or amended in any manner which would cause the representations contained in this certificate of trust to be incorrect.

**IN WITNESS WHEREOF**, the Trustee has executed this Certificate of Trust on the date below:

Date: $\underline{3 \cdot 25}$ , 20 $\underline{09}$

Signature of Yolanda Maria Santos, as Trustee

2

**RECORDING REQUESTED BY**
First American Title Company

**AND WHEN RECORDED MAIL DOCUMENT**
**AND TAX STATEMENT TO:**
Yolanda M. Santos
930 Santa Cruz DR.
Pleasant Hill, CA 94523

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2009-0091137-00

Acct 6- First American Title
Monday, APR 27, 2009 08:00:00
MOD      $3.00:REC     $7.00:FTC     $2.00
RED      $1.00:
Ttl Pd   $13.00          Nbr-0000107868
                              mom/R2/1-3

_____ Space Above This Line for Recorder's Use Only _____

A.P.N.: 127-012-019-7                                    File No.: 4906-3259043 (MS)

## GRANT DEED

The Undersigned Grantor(s) declare(s):  DOCUMENTARY TRANSFER TAX $; CITY TRANSFER TAX $;
SURVEY MONUMENT FEE $
This conveyance transfers Grantor's interest into or out of his/her revocable trust and is EXEMPT from the
imposition of the Documentary Transfer Tax pursuant to § 11930 of the Revenue and Taxation Code.

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
**Yolanda M. Santos, Surviving Joint Tenant**

hereby GRANT(s) to **Yolanda M. Santos, Trustee of the Yolanda Marie Santos Living Trust**

the following described property in the City of **Pleasant Hill**, County of **Contra Costa**, State of **California**:

**See Exhibit A attached hereto for legal description.**

Dated: __04/20/2009__

_Yolanda M Santos_
_Trustee_
Yolanda M. Santos, Trustee

Mail Tax Statements To: **SAME AS ABOVE**

STATE OF _Cali fornia_ )SS
COUNTY OF _Contra Costa_ )

On _4/20/09_, before me, _Matthew D. Valera_, Notary
Public, personally appeared _Yolanda M. Santos_
___, who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s)(is)/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature

My Commission Expires: _1/3/12_

*This area for official notarial seal*

MATTHEW D. VALERA
COMM. #1784701
NOTARY PUBLIC · CALIFORNIA
ALAMEDA COUNTY
My Comm. Expires January 3, 2012

Notary Name: _Matthew D. Valera_    Notary Phone: _510-409-1334_
Notary Registration Number: _1784701_    County of Principal Place of Business: _Alameda_

Page 2

A.P.N.: 127-012-019-7                                            File No.: 4906-3259043 (MS)

## EXHIBIT A

**LOT 142, MAP OF TRACT NO. 2285, FILED AUGUST 3, 1956, MAP BOOK 60, PAGE 10, CONTRA COSTA
COUNTY RECORDS.**

END OF DOCUMENT

FIRST AMERICAN TITLE COMPANY

Recording Requested By:
Urban Financial Group
9175 South Yale Ave, Suite 300
Tulsa, OK 74137

After Recording Return To:
Urban Financial Group
9175 South Yale Ave, Suite 300
Tulsa, OK 74137



CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2009-0091138-00
Acct 6- First American Title
Monday, APR 27, 2009 08:00:00
MOD   $11.00:REC    $15.00:FTC    $10.00
DAF    $2.70:REF     $0.30:RED    $1.00
Ttl Pd   $40.00           Nbr-0000107869
                              mom/R2/1-11

3259043
Jato

_____ |Space Above This Line For Recording Data| _____

State of CALIFORNIA                          FHA Case No. 042-8420709-952
                                             Loan No. UFG07651tui

## ADJUSTABLE RATE
## HOME EQUITY CONVERSION DEED OF TRUST

### THIS DEED OF TRUST SECURES A REVERSE MORTGAGE LOAN

THIS SECURITY INSTRUMENT SECURES A LOAN THAT
PROVIDES FOR NEGATIVE AMORTIZATION AND
COMPOUNDING OF INTEREST. INTEREST THAT IS
UNPAID WILL BE ADDED TO PRINCIPAL AND INTEREST
WILL BE CHARGED THEREON.

THIS DEED OF TRUST ("Security Instrument") is made on April 20, 2009. The trustor is Yolanda
Maria Santos, Trustee of the Yolanda Marie Santos Living Trust, Dated MArch 25, 2009 , whose
address is 930 SANTA CRUZ DRIVE, PLEASANT HILL, CALIFORNIA 94523 ("Borrower").
The trustee is Alan E. South, Attorney at Law, South & Associates, PC4600 Madison Avenue Suite
801, Kansas City, MO 64112 ("Trustee"). The beneficiary is Urban Financial Group, which is
organized and existing under the laws of Oklahoma, and whose address is 9175 South Yale Ave,
Suite 300, Tulsa, OK 74137 ("Lender"). Borrower has agreed to repay to Lender amounts which
Lender is obligated to advance, including future advances, under the terms of a Home Equity
Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The
agreement to repay is evidenced by Borrower's Adjustable-Rate Note dated the same date as this
Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest at a rate subject to adjustment (interest), and all renewals,

extensions and modifications of the Note, up to a maximum principal amount of **Five Hundred Forty One Thousand, Five Hundred Dollars and Zero Cents (U.S. $541,500.00)**; (b) the payment of all other sums, with interest, advanced under paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in **CONTRA COSTA** County, CALIFORNIA:

**See legal description as Exhibit A attached hereto and made a part hereof for all intents and purposes**

which has the address of
**930 SANTA CRUZ DRIVE, PLEASANT HILL, CALIFORNIA 94523,** ("Property Address")

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied

first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in

connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment-in-full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

(b) **Due and Payable with Secretary Approval.** Lender may require immediate payment-in-full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii) For a period of longer than 12 consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

(c) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph 9 (a)(ii) and (b) occur.

(d) **Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a)(ii) and (b). Lender shall not have the right to commence foreclosure until Borrower has had 30 days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed-in-lieu of foreclosure.

(e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower,

shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within eight (8) months from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment-in-full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to eight (8) months from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment-in-full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment-in-full. Foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment-in-full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

(a) **Modification.**

Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

HECM First Deed Of Trust

**(b) Tax Deferral Programs.**

Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

**(c) Prior Liens.**

Borrower shall promptly discharge any lien which has priority over this Security Instrument .unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to Second Security Instrument.**

**(a) Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

**(b) Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

**(c) Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment-in-full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

**(d) No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not a assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure. If Lender requires immediate payment-in-full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all costs and expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, Trustees' fees and expenses, reasonable**

attorneys' fees and costs of title evidence to the extent permitted by applicable law.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Upon foreclosure by power of sale, Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees as permitted by applicable law; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

21. Lien Priority. The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

22. Adjustable-Rate Feature. Under the Note, the initial stated interest rate of 3.451% which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the average of interbank offered rates for one-month U.S. dollar denominated deposits in the London Market ("LIBOR"), as published in The Wall Street Journal ("Index") plus a margin. If the Index is no longer available, Lender will be required to use any index prescribed by the Department of Housing and Urban Development. Lender will give Borrower notice of new index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on July 1, 2009 and on the first day of each succeeding month. "Change Date" means each date in which the interest rate could change.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

The Calculated Interest Rate will never increase above 13.451%

The Calculated Interest Rate will be adjusted if necessary to comply with the rate limitation(s) described above and will be in effect until the next Change Date. At any change date, if the Calculated Interest

Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan. Agreement shall be deemed obligatory.

**24. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property as permitted under applicable law. If the fee charged does not exceed the fee set by applicable law, the fee is conclusively presumed to be reasonable.

**25. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**26. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by applicable law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider                    ☐ Planned Unit Development Rider

☐ Other [Specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____

_____

_Yolanda Maria Santos_ (SEAL)

Yolanda Maria Santos

_Yolanda Maria Santos_ _Trustee_ (SEAL)

Yolanda Maria Santos, Trustee

4-20-09

Date

4-20-09

Date

_____ [Space Below This Line For Acknowledgment] _____

State of CALIFORNIA
County of Contra Costa

On 4/20/09 before me, Matthew D. Valera Notary Public, personally appeared
Yolanda Maria Santos , who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and
that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

MATTHEW D. VALERA
COMM. #1784701
NOTARY PUBLIC - CALIFORNIA
ALAMEDA COUNTY
My Comm. Expires January 3, 2012

HECM First Deed Of Trust

## EXHIBIT A

Exhibit A to the Mortgage made on April 20, 2009, by Yolanda Marie Santos, Trustee of the Yolanda Marie Santos Living Trust, Dated MArch 25, 2009 ("Borrower") to Urban Financial Group ("Lender"). The Property is located in the county of CONTRA COSTA, state of

### Description of Property

Real property in the City of Pleasant Hill, County of Contra Costa, State of California, described as follows:
LOT 142, MAP OF TRACT NO. 2285, FILED AUGUST 3, 1956, MAP BOOK 60, PAGE 10, CONTRA
COSTA COUNTY RECORDS.

END OF DOCUMENT

State of **CALIFORNIA**

# ADJUSTABLE-RATE NOTE
## (Home Equity Conversion)

**April 20, 2009**                                   FHA Case No. **042-8420709-952**
                                                      Loan No. **UFG07651tul**

**930 SANTA CRUZ DRIVE, PLEASANT HILL, CALIFORNIA 94523** (Property Address)

### 1. DEFINITIONS
"Borrower" means each person signing at the end of this Note. "Lender" means **Urban Financial Group** and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

### 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated **April 20, 2009** ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not due earlier, are due and payable on **August  9, 2073**. Interest will be charged on unpaid principal at the rate of **Three AND Four Hundred Fifty One Thousandth** percent **(3.451%)** per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

### 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT
#### (A) Time
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment-in-full, as provided in Paragraph 7 of this Note.

#### (B) Place
Payment shall be made at **Urban Financial Group, 9175 South Yale Ave, Suite 300, Tulsa, OK 74137** or any such other place as Lender may designate in writing by notice to Borrower.

#### (C) Limitation of Liability
Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

### 5. INTEREST RATE CHANGES
#### (A) Change Date
The interest rate may change on **July  1, 2009** and on the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.

#### (B) The Index
Beginning with the first Change Date, the interest rate will be based on an Index. The "Index"

HECM First Note



means the average of interbank offered rates for one-month U.S. dollar-denominated deposits in London market ("LIBOR"), as published in The Wall Street Journal, rounded to three digits to the right of the decimal point. The "Current Index" means the most recent Index figure available 30 days before the Change Date, and if the day that is 30 days before the Change Date is not a Sunday or Monday and not the first business day of the week, the Current Index will be the Index as published the first business day of that week. If the day that is 30 days before the Change Date is a Sunday or Monday and not the first business day of the week, the Current Index will be the Index as published the first business day of the immediately prior week. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

### (C) Calculation of Interest Rate Changes

Before each Change Date, Lender will calculate a new interest rate by adding a margin of **Three AND Zero Hundredth** percentage points (**3.000%**) to the current Index. Subject to the limit stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

### (D) Limit on Interest Rate Changes

The interest rate will never increase above **Thirteen AND Four Hundred Fifty One Thousandth percent (13.451%)**

### (E) Notice of Changes

Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

### (F) Effective Date of Changes

A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

## 6. BORROWER'S RIGHT TO PREPAY

A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal

balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

## 7. IMMEDIATE PAYMENT-IN-FULL

### (A) Death or Sale

Lender may require immediate payment-in-full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

### (B) Other Grounds

Lender may require immediate payment-in-full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment-in-full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorney's fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

### (D) Trusts

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

## 8. WAIVERS

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different

address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

## 11. RELATIONSHIP TO SECOND NOTE

### (A) Second Note

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255 (i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

### (B) Relationship of Secretary Payments to this Note

Payments made by the Secretary shall not be included in the debt due under this Note unless:

(i) This Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt.

### (C) Effect on Borrower

Where there is no assignment or reimbursement as described in (B)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under this Note until the Secretary has required payment-in-full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or

(ii) Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraphs 2 or 5 of this Note or any Allonge to this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (SEAL)    4-20-09
Yolanda Maria Santos                        Date

_____ (SEAL)    4-20-09
Yolanda Maria Santos, Trustee               Date

HECM First Note

State of CALIFORNIA

# ADJUSTABLE-RATE SECOND NOTE
## (Home Equity Conversion)

April 20, 2009                          FHA Case No. 042-8420709-952
                                        Loan No.  UFG07651tul

930 SANTA CRUZ DRIVE, PLEASANT HILL, CALIFORNIA 94523 (Property Address)

### 1. DEFINITIONS
"Borrower" means each person signing at the end of this Note. "Secretary" or "Lender" means the
Secretary of Housing and Urban Development or his or her authorized representatives.

### 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a
Home Equity Conversion Loan Agreement dated April 20, 2009 ("Loan Agreement"), Borrower
promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made
under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not due
earlier, are due and payable on August 9, 2073. Interest will be charged on unpaid principal at the rate
of Three AND Four Hundred Fifty One Thousandth percent (3.451%) per year until the full amount
of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note.
Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

### 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is
dated the same date as this Note and called the "Security Instrument" or the "Second Security
Instrument." The Security Instrument protects the Lender from losses which might result if Borrower
defaults under this Note. Borrower also executed a First Security Instrument and First Note when the
Second Security Instrument and this Note were executed.

### 4. MANNER OF PAYMENT
(A) Time
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a
notice by Lender requiring immediate payment-in-full, as provided in Paragraph 7 of this Note.

(B) Place
Payment shall be made at the Office of the Housing -- FHA Comptroller, Director of Mortgage
Insurance Accounting and Servicing, 451 7th Street, SW, Washington, DC 20410, or any such
other place as Lender may designate in writing by notice to Borrower.

(C) Limitation of Liability
Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt
only through sale of the Property covered by the Security Instrument ("Property").

### 5. INTEREST RATE CHANGES
(A) Change Date
The interest rate may change on July 1, 2009 and on the first day of each succeeding month.
"Change Date" means each date on which the interest rate could change.

(B) The Index
Beginning with the first Change Date, the interest rate will be based on an Index. The "Index"
means the average of interbank offered rates for one-month U.S. dollar-denominated deposits in

London market ("LIBOR"), as published in The Wall Street Journal, rounded to three digits to the right of the decimal point. The "Current Index" means the most recent Index figure available 30 days before the Change Date, and if the day that is 30 days before the Change Date is not a Sunday or Monday and not the first business day of the week, the Current Index will be the Index as published the first business day of that week. If the day that is 30 days before the Change Date is a Sunday or Monday and not the first business day of the week, the Current Index will be the Index as published the first business day of the immediately prior week. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

### (C) Calculation of Interest Rate Changes
Before each Change Date, Lender will calculate a new interest rate by adding a margin of **Three AND Zero Hundredth** percentage points **(3.000%)** to the current Index. Subject to the limit stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

### (D) Limit on Interest Rate Changes
The interest rate will never increase above **Thirteen AND Four Hundred Fifty One Thousandth percent (13.451%)**

### (E) Notice of Changes
Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

### (F) Effective Date of Changes
A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

## 6. BORROWER'S RIGHT TO PREPAY
A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of this Note and then to reduce the principal balance of the First Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit

or create a new line of credit.

## 7. IMMEDIATE PAYMENT-IN-FULL

### (A) Death or Sale
Lender may require immediate payment-in-full of all outstanding principal and accrued interest if:

    (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

    (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

### (B) Other Grounds
Lender may require immediate payment-in-full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

    (i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

    (ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

    (iii) An obligation of the Borrower under the Security Instrument is not performed.

### (C) Payment of Costs and Expenses
If Lender has required immediate payment-in-full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorney's fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

### (D) Trusts
Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

## 8. WAIVERS
Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given the Secretary a notice of Borrower's different address.

Any notice that must be given to the Secretary under this Note will be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

## 11. RELATIONSHIP TO FIRST NOTE

### (A) Second Note

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant this Note to the Secretary.

### (B) Relationship of Secretary Payments to First Note

Payments made by the Secretary shall be included in the debt due under this Note unless:

(i) The First Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt under the First Note.

### (C) Notice of Interest Rate Adjustments

Borrower agrees that as long as the holder of the First Note continues to make Loan Advances, any notice of interest rate adjustment given to Borrower under Paragraph 5(E) of the First Note shall also be considered to be notice to Borrower under Paragraph 5(E) of this Note, so that the same interest rate shall apply for the First Note and this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Yolanda Maria Santos_ (SEAL)

Yolanda Maria Santos

_Yolanda Maria Santos, Trustee_ (SEAL)

Yolanda Maria Santos, Trustee

4-20-09

Date

4-20-09

Date

HECM Second Note



First American Title Company
561 First Street West
Sonoma, CA 95476
(707)938-1800
Fax – (866)440-2065

## LOAN ESCROW INSTRUCTIONS
### (Institutional Lender)

To: **First American Title Company**
**Mary Sousa, Escrow Officer**

Date: **April 20, 2009**
File No.: **4906-3259043 (MS)**

Re: **930 Santa Cruz Drive, Pleasant Hill, CA 94523**

**Funds and/or Documents:** Borrower will cause First American Title Company ("Escrow Holder") to be handed funds and/or documents required to close the above referenced escrow pursuant to Lender's Instructions. Borrower's signature on loan documents shall constitute Borrower's approval of the terms and conditions contained therein.

Showing title vested in: **Yolanda Marie Santos, Trustee of the Yolanda Marie Santos Living Trust**

**Warranty Regarding Encumbrances:** The undersigned warrant and guarantee that there are no outstanding liens or Deeds of Trust or Mortgages affecting the property, other than those shown on the preliminary report described herein. Initials_____

Proceeds: Borrower directs that the proceeds check be:

[ ] Held for pick up at this office     [ ] Sent via next day mail
[ ] Mailed to the property address    [ ] Other:_____
[ ] Sent via certified mail
[ ] Sent via wire transfer
  (If checked, *Attach wiring instructions of receiving bank)*
  **Note:** Receiving Banks may impose a charge for the receipt of any wire transfers.

**Escrow General Provisions:** The parties acknowledge receipt of the Escrow General Provisions which are incorporated herein by reference.

**Fire Insurance:** The undersigned acknowledges lender's requirement of fire insurance coverage. Insurance Agent and Company Name: _____ Phone Number: _____. Policy/Endorsement is to be supplied prior to close of escrow. Escrow holder is authorized and instructed to pay any premium due necessary to satisfy lender's requirements.

**BORROWER:**

Yolanda Marie Santos, Trustee of the
Yolanda Marie Santos Living Trust

*Yolanda M Santo trustee*

Yolanda Marie Santos, Trustee
*Y M MARIA*

Page 1 of 2

**First American Title Company**

File No.:4906-3259043 (MS )

**Please indicate your forwarding address and phone number:**

_____

_____

_____

Home Phone:_____

Cell Phone:_____

Work Phone:_____

Page 2 of 2

**First American Title Company**
**Certification of Trust**
(Pursuant to California Probate Code □18100.5)

I/We, _____, trustee(s) confirm the following facts:

1. The *Yolanda Maria Santos* _____ (Name of Trust)
   Is currently in existence and was executed on *March 25, 2009*.

2. The settlor(s) of the trust are: *Yolanda Marie Santos*

3. The currently acting trustee(s) of the trust is (are): *Yolanda Maria Santos*
   _____

4. The power of the trustee(s) includes:
   (a) The powers to sell, convey and exchange [ ✓ ] Yes [ ] No (check one)
   (b) The power to borrow money and encumber the trust property with a deed of trust or mortgage
   [ ✓ ] Yes [ ] No (check one).

5. The trust is [ ✓ ] REVOCABLE [ ] IRREVOCABLE (check one) and the following party(ies), if any, is
   (are) identified as having the power to revoke the trust:
   *Yolanda Maria Santos* _____.

6. The trust [ ] DOES [ ✓ ] DOES NOT (check one) have multiple trustees. If the trust has multiple
   trustees, the signatures of:
   *(mark one of the following:)*
   [ ] ALL
   [ ] ANY _____ (specify number) of the Trustees are required to exercise the powers of the
   Trust.

7. The Trust identification number is: *265 74-770 1* _____ (Social Security No/Employer ID).

8. Title to trust assets is to be taken in the following manner:
   *Trustee* _____.

The undersigned trustee(s) declare(s) that the trust has not been revoked, modified or amended in any manner
which would cause the representations contained herein to be incorrect. This Certification is executed by all of
the currently acting trustees of the Trust pursuant to Section 18100.5 of the Probate Code.

**(ALL SIGNATURES MUST BE ACKNOWLEDGED)**

*Yolanda Marie Santos*

_____     _____

U.S._California _Trust Certification_Rev.(7/12/04)                    Page 1 of 2 Pages

**April 20, 2009**   Certification of Trust - continued   File No.: **4906-3259043 (MS)**

STATE OF _California_ )SS
COUNTY OF _Contra Costa_ )

On _4/20/09_ , before me, _Matthew O. Valera_ , Notary
Public, personally appeared _Yolanda Maria Santos_
_____, who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature

_____

My Commission Expires: _1/3/12_

Notary Name: _Matthew O. Valera_
Notary Registration Number: _1784701_

```
MATTHEW D. VALERA
COMM. #1784701
NOTARY PUBLIC - CALIFORNIA
ALAMEDA COUNTY
My Comm. Expires January 3, 2012
```

*This area for official notarial seal*

Notary Phone: _510-409-1234_
County of Principal Place of Business: _Alameda_

U.S._California _Trust Certification_Rev.(7/12/04)   Page 2 of 2 Pages

# EXHIBIT A

LOT 142, MAP OF TRACT NO. 2285, FILED AUGUST 3, 1956, MAP BOOK 60, PAGE 10, CONTRA COSTA COUNTY RECORDS.

Order Number: 4906-3259043
Page Number: 1



# First American Title Company

**561 First Street West**
**Sonoma, CA 95476**

| | | |
|---|---|---|
| Escrow Officer: | Mary Sousa (MS) | READ AND APPROVED |
| Phone: | (707)938-1800 | TO FORM AND CONTENT |
| Fax No.: | (866)440-2065 | BY |
| E-Mail: | msousa@firstam.com | BY |
| Borrower: | Santos | |
| Property: | 930 Santa Cruz Drive | BY |
| | Pleasant Hill, CA 94523 | BY |

## PRELIMINARY REPORT

In response to the above referenced application for a policy of title insurance, this company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit A attached. *The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.* Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit A. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

*First American Title*

Order Number: 4906-3259043
Page Number: 5

## LEGAL DESCRIPTION

Real property in the City of Pleasant Hill, County of Contra Costa, State of California, described as follows:

LOT 142, MAP OF TRACT NO. 2285, FILED AUGUST 3, 1956, MAP BOOK 60, PAGE 10, CONTRA COSTA COUNTY RECORDS.

APN: 127-012-019-7

APPROVED
TO FORM AND CONTENT
BY_____
BY_____
BY_____
BY_____

### NOTICE

Section 12413.1 of the California Insurance Code, effective January 1, 1990, requires that any title insurance company, underwritten title company, or controlled escrow company handling funds in an escrow or sub-escrow capacity, wait a specified number of days after depositing funds, before recording any documents in connection with the transaction or disbursing funds. This statute allows for funds deposited by wire transfer to be disbursed the same day as deposit. In the case of cashier's checks or certified checks, funds may be disbursed the next day after deposit. In order to avoid unnecessary delays of three to seven days, or more, please use wire transfer, cashier's checks, or certified checks whenever possible.

If you have any questions about the effect of this new law, please contact your local First American Office for more details.

*First American Title*



## First American Title Company

561 First Street West • Sonoma, CA 95476

### Borrower's Estimated Settlement Statement

**Property:** 930 Santa Cruz Drive, Pleasant Hill, CA 94523

**File No:** 4906-3259043
**Officer:** Mary Sousa/MS
**New Loan No:**
**Settlement Date:**
**Disbursement Date:**
**Print Date:** 4/20/2009, 10:13 AM

**Buyer:** Yolanda Marie Santos Living Trust
**Address:** 930 Santa Cruz Drive, Pleasant Hill, CA 94523
**Seller:**
**Address:**

| Charge Description | Borrower Charge | Borrower Credit |
|---|---|---|
| **New Loan(s):** | | |
| Lender: Urban Financial Group, Inc. | | |
| New Loan to File - Urban Financial Group, Inc. | | 285,656.01 |
| Mortgage Insurance Application Premium - Urban Financial Group, Inc. | 7,220.00 | |
| Document Preparation Fee - Urban Financial Group, Inc. | 125.00 | |
| Mrtg. Broker: Twin Capital Mortgage | | |
| Yield Spread Premium - Twin Capital Mortgage          POC $2,285.25 | | |
| Loan Origination Fee - Twin Capital Mortgage | 4,000.00 | |
| Counseling Cert - Twin Capital Mortgage          POC $75.00 | | |
| Credit Report - Twin Capital Mortgage | 8.25 | |
| | | |
| **Title/Escrow Charges to:** | | |
| One Rate-1108/Title Eagle & 1101/Escrow - First American Title Company | 1,055.00 | |
| Overnight Mail Service - First American Title Company | 45.00 | |
| Record Deed - First American Title Company | 25.00 | |
| Record Trust Deed - 2 - First American Title Company | 60.00 | |
| Record Trust Deed - 1 - First American Title Company | 60.00 | |
| | | |
| **Disbursements Paid:** | | |
| Fire Insurance Premium to Liberty Mutual | 765.00 | |
| Loan/Signing Fee to Expert Signing Service, Inc. | 275.00 | |
| Other Taxes Due to Contra Costa County Tax Collector | 1,700.00 | |
| Tax Installment:  Amount to Contra Costa County Tax Collector | 1,600.95 | |
| Attorney Letter to Irwin Law Firm | 125.00 | |
| | | |
| Cash ( From) (X To) Borrower | 268,591.81 | |
| **Totals** | 285,656.01 | 285,656.01 |

C.   Note:   This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside this closing; they are shown here for informational purposes and are not included in the totals.

| D. | Name of Borrower: Yolanda Marie Santos Living Trust |
| | 930 Santa Cruz Drive, Pleasant Hill, CA 94523 |

| E. | Name of Seller: |

| F. | Name of Lender: Urban Financial Group, Inc. |
| | 9175 South Yale Avenue, Suite 300 |
| | Tulsa, OK 74137-4043 |

| G. | Property Location: 930 Santa Cruz Drive, Pleasant Hill, CA 94523 |

| H.   Settlement Agent: First American Title Company | I. |
| Address: 561 First Street West, Sonoma, CA 95476 | Settlement Date: |

| Place of Settlement Address: 561 First Street West, Sonoma, CA 95476 | Print Date: 04/20/2009, 10:14 AM |
| | Disbursement Date: |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower | | 400. Gross Amount Due To Seller | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 13,763.25 | 403. Total Deposits | |
| 104. Supplemental Summary | 3,300.95 | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112 | | 412. | |
| 113. | | 413. | |
| 114 | | 414. | |
| 115. | | 416. | |
| 120. Gross Amount Due From Borrower | 17,064.20 | 420. Gross Amount Due To Seller | |
| 200. Amounts Paid By Or In Behalf Of Borrower | | 500. Reductions In Amount Due to Seller | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 285,856.01 | 502. Settlement charges (line 1400) | |
| 203. Existing loan(s) taken subject | | 503. Existing loan(s) taken subject | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206 | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513 | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 285,656.01 | 520. Total Reduction Amount Due Seller | |
| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement To/From Seller | |
| 301. Gross amount due from Borrower (line 120) | 17,064.20 | 601. Gross amount due to Seller (line 420) | |
| 302. Less amounts paid by/for Borrower (line 220) | 285,656.01 | 602. Less reductions in amounts due to Seller (line 520) | |
| 303. Cash ( From) (X To) Borrower | 268,591.81 | 603. | |

File No. 4906-3259043

| L. Settlement Charges | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| 700. Total Sales/Broker's Commission based on price | | | |
| Division of Commission (line 700) as follows | | | |
| 701. | | | |
| 702. | | | |
| 703. Commission paid at Settlement | | | |
| 704. | | | |
| 800. Items Payable in Connection with Loan | | | |
| 801. Loan Origination Fee | | | |
| 802. Loan Discount | | | |
| 803. Appraisal Fee | | | |
| 804. Credit Report - Twin Capital Mortgage | | 8.25 | |
| 805. Lender's Inspection Fee | | | |
| 806. Mortgage Insurance Application Premium | | | |
| 807. Assumption Fee | | | |
| 808. Document Preparation Fee - Urban Financial Group, Inc. | | 126.00 | |
| 809. Yield Spread Premium - Twin Capital Mortgage | POC $2,285.25 | | |
| 810. Loan Origination Fee - Twin Capital Mortgage | | 4,000.00 | |
| 811. Counseling Cert - Twin Capital Mortgage | POC $75.00 | | |
| 812. | | | |
| 813. | | | |
| 814. | | | |
| Supplemental Summary | | | |
| 900. Items Required by Lender to be Paid in Advance | | | |
| 901. Interest | | | |
| 902. Mortgage Insurance Application Premium - Urban Financial Group, Inc. | | 7,220.00 | |
| 903. Hazard Insurance Premium for to Liberty Mutual | | 765.00 | |
| 904. | | | |
| 905. | | | |
| Supplemental Summary | | | |
| 1000. Reserves Deposited with Lender | | | |
| 1001. Hazard Insurance | | | |
| 1002. Mortgage Insurance | | | |
| 1003. City Property Taxes | | | |
| 1004. County Property Taxes | | | |
| 1005. Annual assessments | | | |
| 1006. | | | |
| 1007. | | | |
| 1008. Aggregate Accounting Adjustment | | | |
| 1100. Title Charges | | | |
| 1101. Settlement or closing fee | | | |
| 1102. Abstract or title search | | | |
| 1103. Title examination | | | |
| 1104. Title Insurance Binder | | | |
| 1105. Document Fee | | | |
| 1106. Notary Fee | | | |
| 1107. Attorney Fee | | | |
| (includes above item numbers: ) | | | |
| 1108. Title Insurance - See supplemental page for breakdown of individual fees and payees | | 1,055.00 | |
| (includes above item numbers: ) | | | |
| 1109. Lender's coverage $361,000.00 | | | |
| 1110. Owner's coverage $0.00 | | | |
| 1111. Overnight Mail Service - First American Title Company | | 45.00 | |
| 1112. | | | |
| 1113. | | | |
| 1114. | | | |
| 1115. | | | |
| 1116. | | | |
| 1117. | | | |

| 1200. Government Recording and Transfer Charges | | |
|---|---|---|
| 1201. Recording fees: Deed $25.00 Mortgage $120.00 Release $0.00 | 145.00 | |
| 1202. City/county tax/stamps: | | |
| 1203. State tax/stamps. | | |
| 1204. | | |
| 1205. | | |
| 1206 | | |
| 1300. Additional Settlement Charges | | |
| 1301. Survey to | | |
| 1302. Pest Inspection to | | |
| 1303. Loan/Signing Fee to Expert Signing Service, Inc. | 275.00 | |
| 1304. Attorney Letter to Irwin Law Firm | 125.00 | |
| 1305. | | |
| 1306 | | |
| 1307 | | |
| 1308 | | |
| 1309 | | |
| 1310. | | |
| 1311. | | |
| 1312. | | |
| 1313. | | |
| 1314. | | |
| Supplemental Summary | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | 13,763.25 | |

* See Supplemental Page for details.

| Supplemental Page<br>HUD-1 Settlement Statement | File No.<br>4906-3259043 |
|---|---|
| **First American Title Company**<br>Final Statement | Loan No. |
| | Settlement Date: |

Borrower Name & Address: Yolanda Marie Santos Living Trust
930 Santa Cruz Drive, Pleasant Hill, CA 94523

Seller Name & Address:

| Section L. Settlement Charges continued | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| 1108. Supplemental Summary | 1,055.00 | | |
| a) One Rate-1108/Title Eagle & 1101/E scrow - First American Title Company | | 1,055.00 | |
| 1201. Supplemental Summary | 145.00 | | |
| a) Record Deed - First American Title Company | | 25.00 | |
| b) Record Trust Deed - 2 - First American Title Company | | 60.00 | |
| c) Record Trust Deed - 1 - First American Title Company | | 60.00 | |

| Section J. Summary of Borrower's Transaction continue | | | | Borrower Charges | Borrower Credits |
|---|---|---|---|---|---|
| 100. Gross Amount Due From Borrower | | | | | |
| 104. Supplemental Summary | | 3,300.95 | | | |
| a) Other Taxes Due to Contra Costa County Tax Collector | | | | 1,700.00 | |
| b) Tax Installment Amount to Contra Costa County Tax Collector | | | | 1,600.95 | |
| 200. Amounts Paid By Or in Behalf of Borrower | | | | | |
| The following Section is restated from the Settlement Statement Page 1 | | | | | |
| 300. Cash At Settlement From/To Borrower | | | 600. Cash At Settlement To/From Seller | | |
| 301. Gross amount due from Borrower (line 120) | 17,064.20 | | 601. Gross Amount due to Seller (line 420) | | |
| 302. Less amounts paid by/for Borrower (line 220) | 285,656.01 | | 601. Less reductions in amounts due to Seller (line 620) | | |
| 303. Cash ( From) (X To) Borrower | 268,591.81 | | 603. | | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and distributions made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

BUYER(S):

Yolanda Marie Santos, Trustee of the
Yolanda Marie Santos Living Trust

_____

Yolanda Marie Santos, Trustee



**EAGLE POLICY**

Form No. 1495.08.02
ALTA Expanded Coverage Residential Loan Policy (01/01/08)
Third Generation EAGLE Loan Policy
1100078C010802

Policy Page 1
Policy Number: 3259043



*Expanded Coverage*
*Residential Loan Policy*

ISSUED BY

### First American Title Insurance Company
#### ONE-TO-FOUR FAMILY RESIDENCE.

Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 17 of the Conditions.

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation (the "Company") insures as of Date of Policy and, to the extent stated in Covered Risks 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 and 28, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

**COVERED RISKS**

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
      (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
      (ii) failure of any person or Entity to have authorized a transfer or conveyance;
      (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
      (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
      (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
      (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
      (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.
5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection
   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without knowledge.
9. The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title. This Covered Risk includes but is not limited to insurance against loss from any of the following requiring the lien of the Insured Mortgage
   (a) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
   (b) failure of any person or Entity to have authorized a transfer or conveyance;
   (c) the Insured Mortgage not being properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
   (d) failure to perform those acts necessary to create a document by electronic means authorized by law;
   (e) a document executed under a falsified, expired, or otherwise invalid power of attorney;

(f) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
(g) a defective judicial or administrative proceeding.
10. The lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance.
11. The lack of priority of the lien of the Insured Mortgage upon the Title
   (a) as security for each and every advance of proceeds of the loan secured by the Insured Mortgage over any statutory lien for services, labor, or material arising from construction of an improvement or work related to the Land when the improvement or work is either
      (i) contracted for or commenced on or before Date of Policy; or
      (ii) contracted for, commenced, or continued after Date of Policy if the construction is financed, in whole or in part, by proceeds of the loan secured by the Insured Mortgage that the Insured has advanced or is obligated on Date of Policy to advance;
   (b) over the lien of any assessments for street improvements under construction or completed at Date of Policy;
   (c) over any defect in or lien or encumbrance on the Title attaching or created before, on or after Date of Policy; as to each and every advance of proceeds of the loan secured by the Insured Mortgage, which at Date of Policy the Insured has made or is legally obligated to make; and
   (d) over any environmental protection lien that comes into existence before, on or after Date of Policy pursuant to any federal statute in effect at Date of Policy as to each and every advance of proceeds of the loan secured by the Insured Mortgage, which at Date of Policy the Insured has made or is legally obligated to make.
12. The invalidity or unenforceability of any assignment of the Insured Mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title in the Insured Mortgage in the named Insured assignee free and clear of all liens.
13. The failure of the Land
   (a) to have the street address shown in Schedule A, and the failure of the map, if any, attached to this policy to show the correct location and dimensions of the Land according to the Public Record;
   (b) to be improved with a one-to-four family residential structure or, if stated in the description of the Land, a residential condominium unit;
   (c) to be zoned to permit a one-to-four family residential structure or, if stated in the description of the Land, a residential condominium unit.
   (d) to be a lawfully created one-to-four family residential parcel according to state statutes and local ordinances governing subdivision of land.

### First American Title Insurance Company

BY ~~[signature]~~ PRESIDENT

ATTEST ~~[signature]~~ SECRETARY



Form No. 1495.08
ALTA Expanded Coverage Residential Loan Policy (01/01/08)
Third Generation EAGLE Loan Policy

Policy Page 2
Policy Number: 3259043

14. The forced removal, modification or replacement of any existing one-to-four family residential structure or residential condominium unit located on the Land resulting from the violation of any of the following requirements of any applicable zoning ordinance: Area or dimensions of the Land as a building site; floor space area of the structure; height of the structure; or distance of the structure from the boundary lines of the Land.

15. The assessment or taxation of the Land by governmental authority as part of a larger parcel.

16. The failure of the existing one-to-four family residential structure or residential condominium unit or a portion or a future modification or replacement to have been constructed with a valid building permit from the appropriate local government issuing office or agency.

17. The inability to use the existing one-to-four family residential structure or residential condominium unit or a portion of it or a future modification or replacement to it for one-to-four family residential purposes because that use violates a restriction shown in Schedule B.

18. Damage to improvements, lawns, shrubbery or trees constructed or planted on the Land before, on or after Date of Policy resulting from the future exercise of any right to use the surface of the Land for the extraction or development of minerals, water or any other substance.

19. The encroachment onto the Land of an improvement constructed after Date of Policy.

20. Encroachment of improvements constructed on the Land after Date of Policy onto adjoining property or over any easement or building setback line on the Land.

21. Forgery after Date of Policy of
   (a) any instrument purporting to subordinate, assign, release or reconvey the Insured Mortgage; and
   (b) any instrument purporting to convey or encumber the Title.

22. The invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances made or changes in the rate of interest charged subsequent to any modification of the terms of the Insured Mortgage made after Date of Policy which are secured by the terms of the Insured Mortgage as modified.

23. Damage to improvements, lawns, shrubbery or trees constructed or planted on the Land before, on or after Date of Policy occasioned by the exercise of the right to use or maintain any easement referred to in Schedule B.

24. Interference with the use for one-to-four family residential purposes of the improvements constructed on the Land before, on or after Date of Policy occasioned by the exercise of the right to use or maintain any easement referred to in Schedule B.

25. Supplemental real estate taxes, including those caused by construction or a change of ownership or use, that occurred before Date of Policy, not previously assessed against the Land for any period before Date of Policy.

26. The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title based upon a violation of the usury laws of the state where the Land is located if no other Mortgage is shown as an exception in Schedule B.

27. The invalidity, unenforceability, lack of priority, or avoidance of the lien of the Insured Mortgage upon the Title
   (a) resulting from the avoidance in whole or in part, or from a court order providing an alternative remedy, of any transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction creating the lien of the Insured Mortgage because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
   (b) because the Insured Mortgage constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
      (i) to be timely, or
      (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

28. Any defect in or lien or encumbrance on the Title or other matter insured against by this policy that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the Insured Mortgage in the Public Records.

Unless stated to the contrary in Schedule B, the Company incorporates the following American Land Title Association endorsements into this policy by this reference as if these endorsements had been attached to this policy
   (a) ALTA Form 4.1-06 (Condominium), if a condominium unit is referred to in the description of the Land;
   (b) ALTA Form 5.1-06 (Planned Unit Development);
   (c) ALTA Form 6-06 (Variable Rate Mortgage);
   (d) ALTA Form 6.2-06 (Variable Rate Mortgage - Negative Amortization); and
   (e) ALTA Form 8.1-06 (Environmental Protection Lien) subject to the statutes, if any, shown in Schedule B specifically for this endorsement.
   (f) ALTA Form 9.3-06 (Restrictions, Encroachments, Minerals).

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this policy, but only to the extent provided in the Conditions.

EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
      (i) the occupancy, use, or enjoyment of the Land;
      (ii) the character, dimensions, or location of any improvement erected on the Land;
      (iii) the subdivision of land; or

      (iv) environmental protection;
      or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not known to the Company, not recorded in the Public Records at Date of Policy, but known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing business laws of the state where the Land is situated.

5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.

6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.

8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

CONDITIONS AND STIPULATIONS
1. DEFINITION OF TERMS

The following terms when used in this policy mean:
   (a) "Advances": Disbursements of Indebtedness made after the Date of Policy as provided by the Insured Mortgage.
   (b) "Amount of Insurance": One hundred twenty-five percent (125%) of the Policy Amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b) or decreased by Section 10 of these Conditions.
   (c) "Date of Policy": The date designated as "Date of Policy" in Schedule A.
   (d) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.
   (e) "Indebtedness": The obligation secured by the Insured Mortgage including one evidenced by electronic means authorized by law, and if that obligation is the payment of a debt, the Indebtedness is the sum of
      (i) the amount of the principal disbursed as of Date of Policy;
      (ii) the amount of the principal disbursed subsequent to Date of Policy;
      (iii) the construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the Land or related to the Land that the Insured was and continued to be obligated to advance at Date of Policy and at the date of the Advance;
      (iv) interest on the loan;
      (v) the prepayment premiums, exit fees, and other similar fees or penalties allowed by law;
      (vi) the expenses of foreclosure and any other costs of enforcement;
      (vii) the amounts advanced to assure compliance with laws or to protect the lien or the priority of the lien of the Insured Mortgage before the acquisition of the estate or interest in the Title;
      (viii) the amounts to pay taxes and insurance; and
      (ix) the reasonable amounts expended to prevent deterioration of improvements; but the Indebtedness is reduced by the total of all payments and by any amount forgiven by an Insured.
   (f) "Insured": The Insured named in Schedule A.
      (i) The term "Insured" also includes
         (A) the owner of the Indebtedness and each successor in ownership of the Indebtedness, whether the owner or successor owns the Indebtedness for its own account or as a trustee or other fiduciary, except a successor who is an obligor under the provisions of Section 12(c) of these Conditions;
         (B) the person or Entity who has "control" of the "transferable record," if the Indebtedness is evidenced by a "transferable record," as these terms are defined by applicable electronic transactions law;
         (C) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;

Form No. 1495.08
ALTA Expanded Coverage Residential Loan Policy (01/01/08)
Third Generation EAGLE Loan Policy

Policy Page 3
Policy Number: 3259043

(D) successors to an Insured by its conversion to another kind of Entity;

(E) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title

(1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

(2) if the grantee wholly owns the named Insured, or

(3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity;

(F) any government agency or instrumentality that is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the Indebtedness secured by the Insured Mortgage, or any part of it, whether named as an Insured or not;

(ii) With regard to (A), (B), (C), (D) , and (E) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured, unless the successor acquired the Indebtedness as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance, or other matter insured against by this policy.

(g) "Insured Claimant": An Insured claiming loss or damage.

(h) "Insured Mortgage": The Mortgage described in paragraph 4 of Schedule A.

(i) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(j) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(k) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(l) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(m) "Title": The estate or interest described in Schedule A.

(n) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title or a prospective purchaser of the Insured Mortgage to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

**2. CONTINUATION OF INSURANCE**

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured after acquisition of the Title by an Insured or after conveyance by an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

**3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT**

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured of any claim of title or interest that is adverse to the Title or the lien of the Insured Mortgage, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title or the lien of the Insured Mortgage, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

**4. PROOF OF LOSS**

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

**5. DEFENSE AND PROSECUTION OF ACTIONS**

(a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable causes) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title or the lien of the Insured Mortgage, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

**6. DUTY OF INSURED CLAIMANT TO COOPERATE**

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title, the lien of the Insured Mortgage, or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

**7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i) To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay; or

(ii) To purchase the Indebtedness for the amount of the Indebtedness on the date of purchase, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of purchase and that the Company is obligated to pay.

When the Company purchases the Indebtedness, the Insured shall transfer, assign, and convey to the Company the Indebtedness and the Insured Mortgage, together with any collateral security.

Upon the exercise by the Company of either of the options provided for in subsections (a)(i) or (ii), all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in those subsections, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i) to pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) to pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

Form No. 1495.08
ALTA Expanded Coverage Residential Loan Policy (01/01/08)
Third Generation EAGLE Loan Policy

Policy Page 4
Policy Number: 3259043

**8. DETERMINATION AND EXTENT OF LIABILITY**
This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.
   (a) The extent of liability of the Company for loss or damage under this policy shall not exceed the least of
      (i) the Amount of Insurance,
      (ii) the Indebtedness,
      (iii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy, provided, however, that this Section 8(a)(iii) shall not apply when the defect, lien, encumbrance or other matter insured against by this policy results in a total failure of the lien of the Insured Mortgage to attach to the Title, or
      (iv) if a government agency or instrumentality is the Insured Claimant, the amount it paid in the acquisition of the Title or the Insured Mortgage in satisfaction of its insurance contract or guaranty.
   (b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured,
      (i) the Amount of Insurance shall be increased by 10%, and
      (ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.
   (c) In the event the Insured has acquired the Title in the manner described in Section 2 of these Conditions or has conveyed the Title, then the extent of liability of the Company shall continue as set forth in Section 8(a) of these Conditions.
   (d) In addition to the extent of liability under (a), (b), and (c), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

**9. LIMITATION OF LIABILITY**
   (a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, or establishes the lien of the Insured Mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.
   (b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title or to the lien of the Insured Mortgage, as insured.
   (c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

**10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**
   (a) All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment. However, any payments made prior to the acquisition of Title as provided in Section 2 of these Conditions shall not reduce the Amount of Insurance afforded under this policy except to the extent that the payments reduce the Indebtedness.
   (b) The voluntary satisfaction or release of the Insured Mortgage shall terminate all liability of the Company except as provided in Section 2 of these Conditions.

**11. PAYMENT OF LOSS**
When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

**12. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT**
   (a) The Company's Right to Recover Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title or Insured Mortgage and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.
   If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.
   (b) The Insured's Rights and Limitations
      (i) The owner of the Indebtedness may release or substitute the personal liability of any debtor or guarantor, extend or otherwise modify the terms of payment,

release a portion of the Title from the lien of the Insured Mortgage, or release any collateral security for the Indebtedness, if it does not affect the enforceability or priority of the lien of the Insured Mortgage.
      (ii) If the Insured exercises a right provided in (b)(i), but has Knowledge of any claim adverse to the Title or the lien of the Insured Mortgage insured against by this policy, the Company shall be required to pay only that part of any losses insured against by this policy that shall exceed the amount, if any, lost to the Company by reason of the impairment by the Insured Claimant of the Company's right of subrogation.
   (c) The Company's Rights Against Noninsured Obligors The Company's right of subrogation includes the Insured's rights against non-insured obligors including the rights of the Insured to indemnities, guarantees, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights. The Company's right of subrogation shall not be avoided by acquisition of the Insured Mortgage by an obligor (except an obligor described in Section 1(f)(x)(F) of these Conditions) who acquires the Insured Mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond, and the obligor will not be an Insured under this policy.

**13. ARBITRATION**
Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

**14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**
   (a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.
   (b) Any claim of loss or damage that arises out of the status of the Title or lien of the Insured Mortgage or by any action asserting such claim shall be restricted to this policy.
   (c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.
   (d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

**15. SEVERABILITY**
In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

**16. CHOICE OF LAW; FORUM**
   (a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.
      Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title or the lien of the Insured Mortgage that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.
   (b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

**17. NOTICES, WHERE SENT**
Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at 1 First American Way, Santa Ana, CA 92707.

# *POLICY OF TITLE INSURANCE*

First American Title Insurance Company

Form No. 1495.08
ALTA Expanded Coverage Residential Loan Policy (01/01/08)
Third Generation EAGLE Loan Policy

Policy Page 5
Policy Number: 3259043

# AMERICAN LAND TITLE ASSOCIATION
## EXPANDED COVERAGE RESIDENTIAL LOAN POLICY
### *FOR A ONE-TO-FOUR FAMILY RESIDENCE*

ISSUED BY
*First American Title Insurance Company*

## SCHEDULE A

Name and Address of Title Insurance Company: First American Title Insurance Company, 1 First American Way, Santa Ana, CA 92707

File No.: 4906-3259043                                Policy No.: 3259043
Loan No.: UFG07651tul

Street Address of the Land: 930 Santa Cruz Drive, Pleasant Hill, CA 94523
Policy Amount: $361,000.00                          Premium: 1,055.00
Date of Policy: April 27, 2009 at 8:00 A.M.

1.   Name of Insured:

     Urban Financial Group, its successors and assigns, as their interests may appear, as defined in the paragraph entitled "Definitions of Terms" contained in this Policy.

2.   The estate or interest in the Land that is encumbered by the Insured Mortgage is:

     A Fee.

3.   Title is vested in:

     Yolanda M. Santos, Trustee of the Yolanda Marie Santos Living Trust

4.   The Insured Mortgage, and its assignments, if any, are described as follows:

     Deed of Trust/Mortgage:
     Grantor/Trustor:       Yolanda Maria Santos, Trustee of the Yolanda Marie Santos Living Trust, dated March 25, 2009
     Trustee:               Alan E. South, Attorney at Law, South and Associates
     Grantee/Beneficiary: Urban Financial Group
     Original Amount:       $541,500.00
     Dated:                 April 20, 2009
     Recorded:              April 27, 2009
     Recording No.:         2009-91138

5.   The Land referred to in this policy is described as follows:

     Real property in the City of Pleasant Hill, County of Contra Costa, State of California, described as follows:

     LOT 142, MAP OF TRACT NO. 2285, FILED AUGUST 3, 1956, MAP BOOK 60, PAGE 10, CONTRA COSTA COUNTY RECORDS.

     APN: 127-012-019-7