**Daniel J. Hanecak, Esq. [CSB 275161]**
**Law Office of Daniel J. Hanecak**
9444 Harbour Point Drive #66
Elk Grove, Ca 95758
Phone: (717) 341-6318
Email: djhanecak@gmail.com

Attorney for Plaintiff
ISABEL SANTOS, INDIVIDUALLY AND
AS TRUSTEE AND BENEFICIARY OF THE
YOLANDA MARIA SANTOS TRUST

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ISABEL SANTOS, INDIVIDUALLY AND AS TRUSTEE AND BENEFICIARY OF THE YOLANDA MARIA SANTOS TRUST, <br><br> Plaintiff, <br><br> v. <br><br> REVERSE MORTGAGE SOLUTIONS, INC.; NDEX WEST, LLC; and DOES 1 through 20, <br><br> Defendants | Case No.: 3:12-cv-03296-LB <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c), OR, ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56** <br><br> Date:     August 17, 2012 <br> Time:    11:00 a.m. <br> Dept:    C <br> Judge:   Hon. Laurel Beeler (Mag. Judge) <br><br> Complaint Filed;  June 8, 2012 <br> Trial Date:       Not yet set |

# **Table of Contents**

## Memorandum of Points and Authorities

I.      INTRODUCTION.................................................................................................2

II.     SUMMARY OF THE ISSUES..........................................................................3

III.    BACKGROUND....................................................................................................3

    A.  THE HECM PROGRAM AND NOTICE REQUIREMENTS..............................3

         1.  Notice Requirements in the HECM Documents.................................4

         2.  Notice Requirements in the HECM Regulations...........................5

         3.  Notice Requirements in the HECM Handbook..........................8

    B.  STATEMENT OF FACTS....................................................................8

IV.     ARGUMENT.......................................................................................................12

    A.  LEGAL STANDARD........................................................................12

    B.  THE COMPLAINT STATES A CLAIM FOR DECLARATORY RELIEF.......................13

         1.  There is an Actual Controversy Between the Parties.................................13

    C.  THE COMPLAINT STATES A CLAIM FOR BREACH OF CONTRACT.......................14

         1.  The Contract Incorporates HUD's Regulations.......................................14

         2.  Defendants Incorrectly Interpret Their Notice Obligations Under the HECM Documents and California law....................................................16

         3.  The Complaint States a Claim that RMS and NEX Breached the Contract and Violated California Law by Issuing a Notice of Default that Misrepresented Plaintiff's Contractual and Legal Rights....................................................18

            a)  Defendants Breach of the Contract Renders the Notice of Default Void and Ineffective under California Law....................................................19

         4.  The Complaint States a Cause of Action for Breach of Contract for Defendants' Refusal to Allow the Santos Estate to Sell the Property to Plaintiff under the 95% Rule....................................................21

D.  IN THE ALTERNATIVE, THE COURT HAS POWER TO ALLOW LEAVE TO AMEND—PLAINTIFF REQUESTS LEAVE TO AMEND FOR CAUSE OF ACTION UNDER BUSINESS & PROFESSIONS CODE §§17200, *et seq*........................................22

V.  CONCLUSION.........................................................................................................23

## TABLE OF AUTHORITIES

### *Cases*

Amer. Intern. Specialty Lines Ins. Co. v. U.S.,
    No. CV-09-01734, 2010 WL 2635768, *5 (C.D. Cal. June 30, 2010).......................................15

Angell v. Superior Court
    73 Cal. App. 4th, 691, 699 (1999)........................................................................................20

Auer v. Robbins,
    519 U.S. 452, 461 (1997)......................................................................................................18

BayPoint Mortgage Corp. v. Crest Premium Real Estate,
    168 Cal. App. 3d 818, 831 (1985).......................................................................................20

Christensen v. Harris County,
    529 U.S. 576, 601 (2000)......................................................................................................18

Fleming v. Pickard,
    581 F.3d 922, 925 (9th Cir. 2009).................................................................................12, 13

Flora v. Home Fed'l Sav. & Loan Ass'n,
    685 F.2d 209, 211 (7th Cir. 1982).......................................................................................13

General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church,
    887 F.2d 228, 230 (9th Cir. 1989).......................................................................................13

Harris v. United States Fid. & Guar. Co., Inc.,
    655 F.2d 850, 852 (5th Cir. 1978).......................................................................................13

Johnson v. Rowley,
    569 F.3d 40, 43-44 (2nd Cir. 2009).....................................................................................12

Labrador v. Seattle Mortg. Co.,
    No. 08-2270, 2008 WL 4775239, *4 (N.D. Cal. Oct. 29, 2008).........................................22

Miller v. Cote,
    127 Cal. App. 3d 888, 894 (1982)...................................................................................19, 20

Norfolk & W. Ry. Co. v. American Train Dispatchers Ass'n,
    499 U.S. 117, 130 (1991)..................................................................14, 15

Ocean View Tower Assoc., Ltd. Partnership v. U.S.,
    88 Fed. Cl. 169, 176 (Fed. Ct. Cl. 2009)............................................14, 15

Roberts v. Cameron-Brown Co.,
    556 F.2d 356, 361 (5th Cir. 1977).........................................................14

Societe de Conditionnement on Aluminum v. Hunter Eng. Co., Inc.,
    655 F.2d 938, 943 (9th Cir. 1981).........................................................13

Stevens v. Superior Court,
    75 Cal.App.4th 594, 603-4 (1999)..........................................................22

Sweatt v. Foreclosure Co.,
    166 Cal. App. 3d 273, 278 (1985)...........................................................20

United States v. City of Redwood City,
    640 F.2d 963, 966 (9th Cir. 1981).........................................................12

Wager v. Pro,
    575 F.2d 882, 884 (D.C. Cir. 1976).........................................................13

Wright v. City of Roanoke Redev. and Hous. Auth.,
    479 U.S. 418, 431 (1987)....................................................................14

## ***Statutes and Regulations***

United States Code
    12 U.S.C. § 1715z-20...............................................................3, 13, passim

28 U.S.C. § 2201(a).................................................................................13

Code of Federal Regulations
    24 C.F.R. § 206.1 *et seq*.................................................................13, 18
    24 C.F.R. § 206.3..................................................................................6, 7
    24 C.F.R. § 206.27..............................................................................3, 6
    24 C.F.R. § 206.123..................................................................................5
    24 C.F.R. § 206.123(a)...........................................................................4, 6
    24 C.F.R. § 206.123(b).................................................................4, 6, passim
    24 C.F.R. § 206.125..............................................................................3, 7
    24 C.F.R. § 206.125(a)...............................................................................4
    24 C.F.R. § 206.125(a)(2).................................................................passim
    24 C.F.R. § 206.125(c).....................................................................passim
    24 C.F.R. § 206.125(f)...............................................................................4

Civ. Code § 2924, *et seq*............................................................................................19, 20

### *Other Authorities*

60 Fed. Reg. 42754-01.............................................................................................7, 17

HECM Handbook 4235,1 REV-1, § 1-3(c) .....................................................................3

HUD Handbook 4330.1 REV-5, § 13-33.................................................................8, 16, 17

William W. Schwarzer, et al., <u>Cal. Prac. Guide Fed. Civ. Proc. Before Trial</u>, 9:341 (2011)..................13

## I.      INTRODUCTION

Plaintiff brings this action seeking to enforce protections under the federal Home Equity Conversion Mortgage ("HECM") program that allows borrowers, upon their death, to pass on their family homes to survivors at fair market value, even if that amount is less than the full mortgage balance.   HECM law, and the HECM itself, state that the borrower or estate can sell the property for the lesser of the mortgage balance or 95 percent of its appraised value, in full satisfaction of the loan.[1] To make this possible, all HECM borrowers pay substantial premiums into a dedicated insurance fund to cover the difference.  The HECM taken by Yolanda Maria Santos and the Santos Trust ("Ms. Santos") was no different.

Instead, with a callous indifference to the law of which their product is governed by, Defendants refused, and still refuse, to let this happen.  They now ask the Court to adopt a cramped and illogical reading of the HECM contract that is totally at odds with HECM law and policy.  According to Defendants, the regulations and HUD Handbook are mere suggestions, contending that borrower's and their successors have no private right to enforce them even though they are codified and have the power of federal statutes.  Further, Defendants contend that when the HECM borrower dies, the lender need not give *any* notice to the borrower's estate and may proceed directly to foreclosure.  Now, through unnecessary and vitriolic language, Defendants attempt to cast Plaintiff as some sort of criminal trespasser, seeking a free house based on some technicality of the law.  This is simply Defendants' needless attempt at diverting the Court's attention from the real issues at hand.

The legal and common sense solution to this problem are one and the same.  Plaintiff seeks to enforce the HECM contract and HECM law, so that she may begin re-payment and continue to reside in the property that has been in her family for nearly 40 years; thus, allowing Defendants to claim their insurance under federal regulations, putting them out nothing.

.

---

[1] This exact same set of facts has caused the American Association of Retired Persons to bring a class-action lawsuit against Wells Fargo, N.A. and Fannie Mae in this very Court—entitled *Chandler v. Wells Fargo, et al*, Case No. 11-cv-03138.  In this matter, NDEX West, LLC also recorded the Notice of Default.

II. **SUMMARY OF THE ISSUES**

Whether:

    1. Plaintiff has a private right of action under 24 C.F.R. §206.1, *et seq.*

    2. Defendants breached the contract by failing to give requisite notice under:

        i. The HECM Deed of Trust and Note documents;

        ii. California non-judicial foreclosure law;

        iii. The HECM Handbook; and,

        iv. HECM Regulations.

    3. Defendants' recording of the Notice of Default constituted a slander of title on the property and is a void instrument that should be cancelled.

III. **BACKGROUND**

    **A. THE HECM PROGRAM AND NOTICE REQUIREMENTS**

The HECM is a unique mortgage product for a number of reasons, including the fact that it is a non-recourse mortgage that prohibits the lender from seeking a deficiency judgment against a borrower if the proceeds of a sale of the mortgaged property are insufficient to repay the loan. 12 U.S.C. §1715z-20(d)(7). "The borrower shall have no personal liability for the payment of the mortgage balance." 24 C.F.R. §206.27(b)(8). Because there is no personal liability, HUD determined from the outset that, "the HECM borrower (or his or her estate) will never owe more than the loan balance or the value of the property, whichever is less." HECM Handbook §4235.1 REV-1. (Plaintiff's Request for Judicial Notice ("RJN"), Ex. A, HECM Handbook Section 1-3(c)).

Because the lender can never collect more than the value of the HECM secured property, the regulations provide streamlined procedures to satisfy the mortgage:

    a. The property may be sold *at any time* for the lesser of the mortgage balance or the appraised value of the property; the mortgagee must satisfy the mortgage on these terms provided the net proceeds from the sale are paid to the mortgagee. 24 C.F.R. §206.125(c).

    b. If the mortgage is due and payable, the property may be sold for the lesser of the mortgage balance of 95% of its appraised value; the mortgagee must satisfy the mortgage on these terms provided the net proceeds from the sale are paid to the mortgagee. Id.

c.     In order to avoid delays and additional expense of foreclosure action, a mortgagee must accept a deed in lieu of foreclosure from the mortgagor.  24 C.F.R. §206.125(f).

Lenders are protected from potential losses from these non-recourse provisions through the mortgage premiums that are paid by borrowers.  HUD insures the HECM program.  The insurance premiums: (1) guarantee borrowers that neither they nor their heirs will be obliged to repay the mortgage for more than 95% of the value of the property. 24 C.F.R. §§206.123(b) & 206.125(c); and, (2) guarantee lenders that, even if the property values decrease over the term of the mortgage, they will be repaid the full mortgage balance.  24 C.F.R. §206.123(a)(3) & (4) (insurance claim if "mortgagor sells property for less than the mortgage balance," or "mortgagee acquires title by foreclosure...and sells for" less than the mortgage balance).

As administrator of the HECM program, HUD publishes a Handbook and Model HECM Notes, Deed of Trusts/Mortgages[2], and a HECM Loan Agreement to be used in all transactions.[3]  The requirements of the regulations are embodied in the mortgage documents and explained in the Handbook.

### 1.   Notice Requirements in the HECM Documents.

Lenders must notify borrowers and estates of the rights accorded them by federal law prior to initiating foreclosure.  24 C.F.R. §206.125(a)(2); 206.123(b).  This is made clear in the Deed of Trust. Paragraph 9 of the Deed of Trust requires notice when an event constituting "Grounds for Acceleration of the Debt" occurs.  First, the "Lender may require immediate payment" under certain circumstances, including the death of a borrower.[4]  Id.  While ¶9(d) initially exempts lenders from the impossibility of providing notice to a deceased borrower that the loan is due and payable, its second sentence is not so restricted.  Id.  Regardless of the event that terminates the HECM, the "Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either" correct the

---

[2] The words "deed of trust" and "mortgage" are used interchangeably herein.

[3] These documents are standardized but are adapted slightly to accommodate varying state laws and can be found in Plaintiff's RJN.

[4] Aside from the death of the borrower, these circumstances or terminating events include the sale of the property; a change of principal residence by the borrower; or, the borrower's absence from the home for health reasons for more than 12 months.  24 C.F.R. §206.27(c).

1   matter, repay the full mortgage balance, **sell the property for 95% of its appraised value**, or provide

2   the lender a deed in lieu of foreclosure.  Id.

3          Paragraph 20 of Ms. Santos' Deed of Trust also requires notice: "If Lender invokes the power

4   of sale, Lender shall execute...a written notice of the occurrence of an event of default...Lender or

5   Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to other persons

6   prescribed by applicable law."  Id., p. 6.  Paragraph 17 states, "This Security Instrument **shall be**

7   **governed by Federal law <u>and</u> the law of the jurisdiction in which the Property is located**".  Id.

8   (Emphasis added.)

9          These notice requirements are evidenced in other HECM documents as well.  The HECM Note

10  embodies the promise to repay the debt and is secured by the Deed of Trust.  Plaintiff's RJN, Ex. B.

11  The borrower is not obliged to repay until "receipt of a notice by Lender" requiring such payment.  Id.

12  at ¶4(A).  Under the HECM Loan Agreement, executed by the borrower, the lender, *and HUD*, the

13  lender is obliged to continue making loan advances until it issues a notice that the loan is due and

14  payable.  ("Lender shall have no obligation to make Loan Advances if Lender has notified Borrower

15  that immediate payment in full to Lender is required under one or more of the Loan Documents...")

16  Plaintiff's RJN, Ex. C at HECM Loan Agreement ¶4.1.

### 2.  Notice Requirements in the HECM Regulations.

17

18         As noted above, the HECM regulations explicitly state that a borrower's estate may satisfy the

19  HECM by selling the property for lesser of the mortgage balance or 95% of the appraised value:

20             Whether or not the mortgage is due and payable, the mortgagor may sell
21             the property for at least the lesser of the mortgage balance or the appraised
               value...If the mortgage is due and payable...the mortgagor may sell the
22             property for at least the lesser of the mortgage balance or 5% under the
               appraised value.  The mortgagor shall satisfy the mortgage of record...in
23             order to facilitate the sale provided...all the net proceeds from the sale are
24             paid to the mortgagee.

25  24 C.F.R. §206.125(c).  <u>The regulations specifically provide that the lender can make an insurance</u>

26  <u>claim for any amount recovered from such a sale that is less than the mortgage balance.</u>  24 C.F.R.

27  §206.123, titled, "Claim procedures in general," explains that lenders may submit claims for insurance

28  benefits if, among other situations, "[t]he mortgagor sells the property for less than the mortgage

balance[.]"

The right to sell the property on these terms is available both to the original mortgagor and to the estate of a deceased mortgagor.[5]

> (b) *Expanded definition of mortgagor*. The term *mortgagor* as used in this subpart shall have the same meaning as stated in 24 C.F.R. §206.3, except that in reference to a sale by the mortgagor, the term **shall also mean the mortgagor's estate or personal representative**.

24 C.F.R. §206.123(b) (Emphasis added).

The regulations set forth the actions lenders must take to acquire and sell terminated HECM mortgages before they can file a claim for HECM insurance coverage.

> After notifying the Secretary, and receiving approval of the Secretary when needed, the mortgagee shall notify the mortgagor that the mortgage is due and payable, unless the mortgage is due and payable by reason of the mortgagor's death. The mortgagee *shall require* the mortgagor to: (i) pay the mortgage balance, including any accrued interest and MIP, in full; (ii) sell the property for at least 95% of the appraised value...with the net proceeds of the sale to be applied towards the mortgage balance; or (iii) provide the mortgagee with a deed in lieu of foreclosure. The mortgagor shall have 30 days in which to comply with the preceding sentence, or correct the matter which resulted in the mortgage coming due and payable, before a foreclosure proceeding is begun.

24 C.F.R. §206.123(a)(2) (Emphasis added). The language of ¶9(d) of the Deed of Trust closely, if not identically tracks this regulation. As discussed above regarding ¶9(d), the first sentence of Section 205.123(a)(2), which exempts lenders from the impossibility of notifying a deceased borrower that the mortgage is due and payable, is followed by a sentence that addresses how and on what terms the mortgage may be satisfied. Whether the mortgage is terminated because of the borrower's death, a sale of the property, or other terminating event specified in 24 C.F.R. §206.27(c), it must be satisfied. To this end, Section 125(a)(2) states the mortgagee "*shall require*" the mortgagor to select one of the three options. Notice is the mechanism through which lenders "require" the mortgagor to make this choice and is a predicate to the filing of an insurance claim with HUD.

The history of Section 206.125 demonstrates that HUD has always required notice, including in the event of a mortgagor's death.[6] HUD amended 24 C.F.R. §206.125(a)(2) in 1995 to "relieve the

---

[5] As Defendants point out, the general definition of "mortgagor" in the HECM regulations is defined as "each original borrower under a mortgage." 24 C.F.R. §206.3. However, in reference to a sale by the mortgagor, the term shall also mean the mortgage's estate or personal representative. This appears through Subsection C of the regulations, including 24 C.F.R. §206.101-206.133.  24 C.F.R. §206.123(b).

1   mortgagee from notifying the *mortgagor* when the mortgage is due and payable because the mortgagor

2   is deceased." (Emphasis added). Plaintiff's RJN, Ex. E, 60 Fed. Reg. 42754-01 at 5. HUD did this for

3   a practical reason: "...the term 'mortgagor' is used in the HECM regulations as referring only to the

4   original mortgagor or mortgagors, not to their successors in interest, so that notice to the mortgagor

5   after death would be an impossibility." Id.; *see also*, 24 C.F.R. §206.3. However, because of the

6   expanded definition of "mortgagor" referred to above, this change had no effect on the established right

7   of the estate of a deceased mortgagor to satisfy the HECM by selling the property for 95% of its

8   appraised value once the mortgage becomes due and payable. "If the mortgage becomes due and

9   payable...the mortgagor [including the estate] may sell the property for at least the lesser of the

10  mortgage balance of 5 percent under the appraised value." 24 C.F.R. §§206.125(c); 206.123(b) (as

11  used in sections 206.101 – 206.133, "in reference to a sale by the mortgagor," the term "mortgagor"

12  shall also mean the mortgagor's estate or personal representative").

13          Nor, as HUD's comment makes clear, did the amendment relieve the mortgagee of the

14  obligation to provide "adequate notice to an executor or other party responsible for the property before

15  a foreclosure is commenced." Plaintiff's RJN, Ex. E, 60 Fed. Reg. 42754-01 at 5. The amended

16  Section 206.125(a)(2) still demands that "the mortgagee shall require the mortgagor" to choose one of

17  the three options to satisfy the HECM: repayment of the full mortgage balance, sale of the property for

18  95% of its value, or a deed in lieu. 24 C.F.R. §206.123(a)(2).

19          The regulations' expanded definition of "mortgagor," applicable only when referring to a sale of

20  the property by the "mortgagor," allows lenders to submit claims for payment where "[t]he *mortgagor*

21  [including a borrower or their estate] sells the property for less than the mortgage balance and the

22  mortgagee releases the mortgage of record to facilitate the sale, as provided in §206.125(c)." 24 C.F.R

23  §206.123(a)(3) (Emphasis added). This expanded definition is also consistent with the amendment to

24  _____

25  [6] While most of the HECM regulations have remained unchanged over the years since their original issuance in 1989, HUD
    made a change to Section 206.125(a) in 1995. The 1989 version of 24 C.F.R. §206.125(a) stated:

26          (2) After notifying the secretary, and receiving approval of the Secretary when needed, the mortgagee shall
            notify the mortgagor that the mortgage is due and payable. The mortgagee shall require the mortgagor to (i)

27          pay the mortgage balance, including any accrued interest and MIP, in full; (ii) sell the property for at least
            95% of the appraised value as determined under §206.125(b), with the net proceeds of the sale to be

28          applied towards the mortgage balance; or (iii) provide the mortgagee with a deed in lieu of foreclosure. The
            mortgagor shall have 30 days in which to comply with the preceding sentence, or correct the matter which
            resulted in the mortgage coming due and payable, before a foreclosure proceeding is begun.

1  Section 206.125(a)(2).  While a lender/mortgagee is exempt from providing notice to a deceased

2  borrower/"mortgagor," when it comes to matters relating to the sale of the property, the lender must

3  provide notice to the "mortgagor"/estate regarding its rights and options, including a sale under the

4  95% rule.  24 C.F.R. §§206.123(b) & 206.125(a)(2).

5  ### 3.   Notice Requirements in the HECM Handbook.

6  The HECM Handbook, HUD's interpretation of its regulations, describes the notice

7  requirements in greater detail.  It states, "For a due and payable mortgage, the mortgagee must [i]ssue a

8  Repayment Notice."  Plaintiff's RJN Ex. A, at 4330.1 REV-5, §13-33.  The notice must go to the

9  mortgagor or to the mortgagor's estate, state that the HECM is due and payable, provide the

10  outstanding balance on the loan, and give the following instructions:

11
    1.    That the debt must be paid in full; or the property must be sold for the

12  lesser of the debt, including shared appreciation, if any, or 95% of the appraised value; or good marketable title to the property must be deeded to

13  the mortgagee.

14
    2.    That the mortgagor or the mortgagor's estate may request an appraisal, at

15  his or her own expense, if an estimate of the property's current value is desired.

16

17
    3.    That if none of the actions in paragraph A. 1. above are taken in 30 Days, foreclosure will be initiated by the mortgagee within 3 months, but not

18  less than 1 month.

19  Id., Section 4330.1 REV-5, §13-33.

20  ### B.  STATEMENT OF FACTS

21  On April 20, 2009, the Yolanda Maria Santos Trust signed a reverse mortgage deed of trust and

22  note with Urban Financial Group.  The Trustor on the Deed of Trust is listed as "Yolanda Maria Santos,

23  Trustee of the Yolanda Maria Santos Trust."  Complaint ¶34, Ex. B.  The note that accompanies the

24  deed states under Section 1, "Borrower" is defined as "each person signing at the end of the Note."  The

25  signatures at the bottom of both the Note and Deed are Yolanda Maria Santos as an individual and

26  Yolanda Maria Santos, Trustee of the Yolanda Maria Santos Trust.  Complaint ¶35-37, Ex. C.

27  During the year of 2010, Plaintiff moved into the Property as her primary residence.  Shortly

28  thereafter, on February 7, 2011, Ms. Santos passed away.  At the time of her death, the HECM balance

was approximately $362,000.  The current value of the home, as estimated by the real estate website Zillow, is $288,600.  Complaint ¶43.

On March 7, 2011, Plaintiff began a string of phone calls to Reverse Mortgage Solutions, Inc. ("RMS")—the alleged owner and servicer of the HECM.  Plaintiff called to let them know her mother had passed away.  The RMS representative stated "oh yes, we know."  At the time of the call, Plaintiff had not received any communication from RMS. Complaint ¶44.

On April 5, 2011, HUD issued MORTGAGEE LETTER 2011-16, which rescinded Mortgagee Letter 2008-38 effective as of that date.  In this letter, HUD withdrew the improper changes detailed in a complaint filed by the American Association of Retired Persons against HUD[7]; these allegations stated that spouses and heirs were not being given the proper right to re-purchase properties and that the change in 2008 was contrary to public policy.  HUD also directed lenders to halt pending foreclosure actions against the plaintiffs in this matter.  Plaintiff's RJN, Ex. D.

On April 25, 2011, Plaintiff called RMS to let them know that she planned to stay in the Property and needed information about how to make re-payment arrangements.  Plaintiff was told to call back and speak to "Ms. Johnson," who had the file.  On May 16, 2011, Plaintiff called RMS and asked to speak with Ms. Charlotte Johnson, ext. 1677.  Plaintiff was transferred to her voicemail, left a message and never received a return call.  Complaint ¶46-47.

On June 6, 2011, Plaintiff attempted to contact Ms. Johnson again.  Plaintiff was able to reach her this time and conveyed that she was trying to make re-payment arrangements.  Ms. Johnson told Plaintiff that she had time to get over the death, but that her only options were either to let the Property be foreclosed or a short sale and to have someone other than Plaintiff buy the Property—re-payment was not an option.  Ms. Johnson conveyed that her request for a re-payment plan was refused.  Finally, Ms. Johnson directed Plaintiff to contact HUD.  Plaintiff subsequently contacted HUD and spoke with a representative who said, "why are you calling us? We have nothing to do with this."  Plaintiff immediately called back Ms. Johnson, got her voicemail and left a message.  Complaint ¶48.

---

[7]  On March 8, 2011, a suit was filed against HUD and alleged that hundreds, and possibly thousands, of seniors whose spouses obtained HUD-insured reverse mortgages on their homes were facing foreclosure due to improper changes in HUD's rules governing reverse mortgages. These changes conflicted with the authorizing legislation at the time that the senior homeowners took out their loans.  In addition, the suit claims that HUD completely ignored the requirements of the Administrative Procedures Act, which requires an opportunity for public comment and debate prior to changing such rules.

1    On June 16, 2011, Plaintiff again told Ms. Johnson that she was ready to make re-payment.  At

2    this point, Ms. Johnson told Plaintiff to get a buyer for the Property because they did not want payment

3    arrangements, they wanted payment in full.  Plaintiff conveyed to Ms. Johnson that she had worked for

4    Bank of America for 30 years and was aware as to how loans are serviced and insured.  Plaintiff told

5    Ms. Johnson she was aware that even a short sale would not be a true loss to RMS because of HUD's

6    insurance on the Property.  Plaintiff was again rebuffed at each re-payment attempt and told that she

7    could sell to another party or that they would just foreclose.  Complaint ¶49.

8    On July 18, 2011, Plaintiff called RMS, spoke with Ms. Johnson, and told her that she was

9    attempting to obtain financing to purchase the Property.  Ms. Johnson responded that an extension

10   would need to be requested from HUD to wait for a purchase agreement.  Complaint ¶50.

11   On August 15, 2011, Plaintiff called to see if the extension had been requested and/or approved.

12   Ms. Johnson told Plaintiff that she "should hurry, because I don't know if it will be approved."

13   Plaintiff again re-iterated that she knew this would not be a true loss to RMS and that she wanted to

14   simply begin the re-payment process.  Plaintiff offered to pay the full amount that was due on the note,

15   even though she knew it was significantly above what the market value of the Property was. Complaint

16   ¶51.

17   On October 17, 2011, Plaintiff called Ms. Johnson to notify RMS that their cooperation was

18   necessary and she was willing to put a re-payment plan into place.  Plaintiff again offered to pay the

19   full amount that was due on the note; even though she knew it was significantly above what the market

20   value of the Property was. Complaint ¶52.

21   On November 14, 2011 and December 12, 2011, Plaintiff contacted Ms. Johnson, left a message

22   and was not given a return call.  Complaint ¶53.

23   On January 9, 2012, Plaintiff again called RMS and spoke with customer service.  Plaintiff

24   explained her situation and that she was willing to begin re-payment.  The representative told her,

25   "well, we are going to foreclose."  Complaint ¶54.

26   On February 21, 2012, NDEX West, LLC ("NDEX") recorded a Notice of Default that stated

27   the amount owing was $320,750.96.   Nothing in the notice informs Plaintiff or the estate that it can sell

28   the property for 95% of its appraised value or deed in lieu.  The Notice of Default stated, "THE

1  FAILURE TO PAY THE ENTIRE UNPAID PRINCIPAL BALANCE PLUS ACCRUED INTEREST

2  THEREON WHICH BECAME IMMEDIATELY DUE AND PAYABLE WHEN BORROWER DIED

3  AND THE PROPERTY CEASED TO BE THE PRINCIPAL RESIDENCE OF ANY SURVIVING

4  BORROWER."   Complaint ¶55, Ex. H.

5          On February 27, 2012, Plaintiff received 13 Notices of Default in the mail, all certified.  The

6  next day, on February 28, 2012, Plaintiff contacted NDEX, per the Notice of Default, to try to speak to

7  the attorney serving as trustee.  NDEX refused to talk to Plaintiff unless she could prove she was the

8  heir.  Plaintiff was told to call back in two days to see if her paperwork was received.  The next day,

9  Plaintiff called RMS and was sent to Ms. Johnson's voicemail.  Plaintiff's message and call were not

10 returned.  Complaint ¶59-61.

11          On March 2, 2012, Plaintiff called NDEX again.  The NDEX representative stated that they had

12 no information to give her other than there was no sale date yet scheduled.  On March 5, 2012, Plaintiff

13 again called RMS and spoke with Ms. Johnson.  Ms. Johnson told her that time had run out and she

14 needed to move out.  RMS was moving forward with the foreclosure.  Plaintiff re-iterated that she was

15 ready and willing to enter a re-payment plan.  Ms. Johnson was not receptive and again repeated to

16 Plaintiff that she needs to move out.  On March 29, 2012, NDEX recorded a Substitution of Trustee

17 that allegedly substituted them as trustee.  Complaint ¶62-64, Ex. I.

18          On April 2, 2012, Plaintiff called RMS and asked to speak to a short sale department or the

19 legal department.  Plaintiff was told that neither existed.   On April 23, 2012, Plaintiff called and again

20 spoke with customer service and explained her situation.  Customer service told Plaintiff to "call HUD

21 again."  Plaintiff explained that she had already contacted HUD per their suggestion and was told they

22 were not involved.  The customer service representative flatly told Plaintiff that her only option was to

23 move out.   Complaint ¶65-66.

24          On May 14, 2012, Plaintiff met with Elliot Abrams, Esq. to contact RMS on her behalf.

25 Plaintiff and Mr. Abrams attempted to speak with the legal department, but were unable. Complaint

26 ¶67.  On May 17, 2012, Plaintiff had a conference call with Mr. Abrams and RMS representative

27 Andrea Victorian, ext. 7856, where she told Mr. Abrams RMS would consider a short sale to someone

28 other than Plaintiff, but nothing else.  Complaint ¶68. On May 22, 2012, a Notice of Trustee's Sale was

1 | posted on Plaintiff's door.  Complaint ¶69.  On May 25, 2012, Plaintiff's counsel sent a letter to both

2 | RMS and NDEX notifying them that serious defects in the notice procedures and chain of title existed

3 | in the foreclosure process.  Complaint ¶70, Ex. F.

4 |        On June 5, 2012, Plaintiff and counsel made multiple phone calls to HUD to find out whether

5 | the Santos Trust loan was owned by Ginnie Mae.  In the course of the run-around by HUD, Plaintiff

6 | and counsel finally were able to speak with supervisor Rafael, ext. 7026.  During this call, Rafael told

7 | Plaintiff that he is not able to pull anything up on her loan.  All HUD can pull up was that the originator

8 | was Twin Capital; that RMS is the current owner and servicer and that the reverse mortgage is insured

9 | by HUD.  Plaintiff told Rafael that she was directed to contact HUD by RMS.  Rafael told Plaintiff that

10 | "whoever told you to call HUD was blowing you off because they know we don't know anything."

11 | Complaint ¶71.

12 |        On June 6, 2012, Plaintiff's counsel sent a second notice to RMS and NDEX notifying them

13 | that they were in potential violation of HECM Regulations and that the Notice of Default and Notice of

14 | Trustee's Sale are void and should be cancelled immediately.  Complaint ¶72, Ex. K.  Plaintiff then

15 | applied for and was granted a temporary restraining order by the Hon. Judith S. Craddick of the

16 | Superior Court of Contra Costa County.  Judge Craddick then granted Plaintiff's request for

17 | preliminary injunction on June 26, 2012 and signed the order on June 28, 2012.

18 | **IV.**      **ARGUMENT**

19 |       **A.  LEGAL STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS**

20 |        A Rule 12(b)(6) and Rule 12(c) motion are virtually interchangeable, and thus, the same

21 | standard applies to both motions.  <u>Johnson v. Rowley</u>, 569 F.3d 40, 43-44 (2nd Cir. 2009) —

22 | <u>Twombly/Iqbal</u> standard applies to Rule 12(c).  A motion to dismiss claim for legal insufficiency is

23 | viewed with disfavor in the federal courts and is granted only in extraordinary cases.  <u>United States v.</u>

24 | <u>City of Redwood City</u>, 640 F.2d 963, 966 (9th Cir. 1981).  A judgment on the pleadings is only

25 | appropriate when, even if all material facts under attack are assumed true, the moving party has shown

26 | as a matter of law they are entitled to judgment.  <u>Johnson</u>, <u>supra</u>, at 43-44.

27 |        Similar to 12(b)(6) motions, the court must assume the truthfulness of all facts pleaded in the

28 | complaint.  All inferences from these facts must be construed in favor of the responding party.  <u>Fleming</u>

1   v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).  Thus, a defendant is not entitled to judgment on the

2   pleadings if the complaint raises facts that if proved true could constitute recovery; however, it is

3   immaterial whether the court believes the complaint could merit success at trial.  See, General

4   Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887

5   F.2d 228, 230 (9th Cir. 1989); Wager v. Pro, 575 F.2d 882, 884 (D.C. Cir. 1976).

6          For purposes of determining whether the moving party is entitled to judgment, factual

7   allegations that are uncontested where the opposing party had an opportunity to refute them will be

8   deemed true.  Flora v. Home Fed'l Sav. & Loan Ass'n, 685 F.2d 209, 211 (7th Cir. 1982).  Although a

9   Rule 12(c) motion does not mention leave to amend, courts do possess the discretion to allow it.

10  William W. Schwarzer, et al., Cal. Prac. Guide Fed. Civ. Proc. Before Trial, 9:341 (2011).

11                **B.  THE COMPLAINT STATES A CLAIM FOR DECLARATORY RELIEF**

12                     **1.   There is an Actual Controversy Between the Parties**

13          Defendants argue that Plaintiff is not entitled to seek a declaration relating to the parties' rights

14  and obligations under the HECM statute and regulations, 12 U.S.C. § 1715z-20 and 24 C.F.R. § 206.1

15  et seq., because those laws do not provide a private right of action entitling a plaintiff to claim directly

16  under those laws.  The contention misses the point.

17          In order to determine the parties' rights and obligations under the contract, it is necessary to

18  ascertain their rights and obligations under the HECM laws that are incorporated into the contract and

19  thus define the contractual bargain struck by the parties.  Though the declaratory relief cause of action

20  was brought under California state law, the Declaratory Judgment Act broadly provides that the Court

21  "may declare the rights and other legal relations of any interested party seeking such declaration,

22  whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The remedy promotes both

23  judicial and real-world efficiency, by allowing the parties to avoid ongoing harm by obtaining speedy

24  judicial determination of their rights than waiting and addressing claims only retrospectively.  See, e.g.,

25  Societe de Conditionnement on Aluminum v. Hunter Eng. Co., Inc., 655 F.2d 938, 943 (9th Cir. 1981).

26  It is also well-settled that the declaratory judgment need not resolve the parties' entire dispute.  See

27  Harris v. United States Fid. & Guar. Co., Inc., 655 F.2d 850, 852 (5th Cir. 1978).

28

1      Here, determination of the Defendants' obligations under the statute and regulations clearly

2 governing their conduct and incorporated into the contracts at issue will clarify the ongoing obligations

3 of Defendants to Plaintiff, and will help guide the conduct and expectations of Defendants to avoid any

4 further harm to Plaintiff.  It is thus irrelevant whether Plaintiff has a private right of action under the

5 statute or regulations directly because the Court is clearly empowered to adjudicate the legal

6 obligations underlying the contractual dispute at issue here.

7        **C.  THE COMPLAINT STATES A CLAIM FOR BREACH OF CONTRACT**

8            **1.  The Contract Incorporates HUD's Regulations.**

9      Using the above contention, Defendants claim that Plaintiff is barred from bringing *any* action

10 to protect her family home.  Defendants essentially state that no one can challenge them—this begs the

11 inquiry—why were the regulations even made in the first place?  However, the case used by

12 Defendants for the proposition that there is no private right of action is distinguishable.  The Court in

13 Roberts held that the plaintiff had no private right of action to enforce the "unpublished HUD

14 Handbook" that was the "interpretation" of a HUD regulation (24 C.F.R. § 203.9).  Roberts v.

15 Cameron-Brown Co., 556 F.2d 356, 361 (5th Cir. 1977).  "HUD had chosen not to publish the

16 Handbook, thus prohibiting it from having the force and effect of law..."  Id.  In the instant case,

17 Plaintiff does not rely solely on what is put forth in the HUD Handbook, but rather the HECM

18 documents, California law, codified HECM Regulations (24 C.F.R. § 206.1 *et seq*) as well as those in

19 the Handbook.  In addition, this case was decided ten years before the HECM program even existed.

20      The only additional authority cited by Defendants were all unpublished cases citing to another

21 unpublished case from the Northern District of Texas, contending that the regulations cannot be

22 incorporated into the Deed of Trust and Note.  This is incorrect.  First, there is no required "express

23 clause" to incorporate the regulations into the contract.  It is well settled that "[l]aws which subsist at

24 the time and place of the making of a contract…enter into and form a part of it, as fully as if they had

25 been expressly referred to or incorporated in its terms," Norfolk & W. Ry. Co. v. American Train

26 Dispatchers Ass'n, 499 U.S. 117, 130 (1991), and also perfectly clear that HUD regulations "have the

27 force of law."  Wright v. City of Roanoke Redev. and Hous. Auth., 479 U.S. 418, 431 (1987).  For

28 example, in Ocean View Tower Assoc., Ltd. Partnership v. U.S., the court ruled that HUD regulations

applicable to the contract at issue were incorporated despite the absence of any express reference to them in the language of the contract itself.  88 Fed. Cl. 169, 176 (Fed. Ct. Cl. 2009).  Thus, "although a contract lacks specific inclusion of a pertinent statute or regulation, contracting parties are nonetheless 'presumed to be aware of applicable statutes and incorporate them.'"  Id. (quoting 24 Corbin on Contracts 24:273 (1998)).  This is exactly what Ms. Santos expected when entering into a transaction to which HUD was a party.  HECMs in their very existence were created by a federal program and thus are highly regulated.  Strict regulations would not be put into place if they were to be at the whim of lenders and servicers whether they were to be followed or not.  These pertinent regulations are therefore part of the contract.

Defendants do not contest that the regulations Plaintiff claims were violated govern them and the loans at issue.  Pursuant to the rule set out in Norfolk & Western Railway, the analysis need not proceed any further; the HECM regulations are incorporated into the contract and their violation gives rise to Plaintiff's breach of contract claim.  Even without that rule, however, the contract manifests Defendants' intent to be bound by the regulations and incorporate them into the agreement even absent an express incorporation provision.  References to the HUD Secretary, the HECM statute, and HECM regulations permeate the Deed of Trust.  Complaint, Ex. B, pp. 2-6 3, 5, 7, 8, 9(f), 10, 13, 15.  Critically, the Deed of Trust also expressly refers to the exact statutory provision underlying the regulations at issue, namely section 12 U.S.C. §1715z-20 (identified in the Deed of Trust as Section 255(i)(1)(A) of the National Housing Act).  Id. ¶13(a).  The Second Deed of Trust, which the Secretary of HUD is required to hold on a HECM-insured property, includes the same references.  Complaint, Ex. B, pp. 2-6 3, 5, 7, 8, 9(f), 10, 13, 15.  Defendants' claim that the regulations are not incorporated is not only wrong as a matter of law, but disingenuous in light of the manifest intent to incorporate those relevant sections into the contract.[8]

///

///

///

---

[8] A contract may incorporate regulations either by mirroring the language of regulation, or by express reference.  Amer. Intern. Specialty Lines Ins. Co. v. U.S., No. CV-09-01734, 2010 WL 2635768, *5 (C.D. Cal. June 30, 2010).  Paragraph 9(a)-(d) of the Deed tracks the language of the HECM regulations, namely 24 C.F.R. §206.125, as it is required to do.

### 2. Defendants Incorrectly Interpret Their Notice Obligations under the HECM Documents and California law.

Defendants contend that, as parties to the HECM Deed of Trust and Note, they are entitled to unilaterally determine when the debt is due and payable, to accelerate the debt without any notice whatsoever, or give Plaintiff the opportunity to preserve the home; convey it through a deed in lieu; and that although federal regulations exist, they are not required to follow them.  Defendants misconstrue the language of Section 9(d) of the Deed of Trust and ignore the notice mandated in the mortgage documents, California law, relevant regulations and the Handbook.  Each of these separately requires that regardless of the grounds of termination of the HECM, the lender must notify the borrower or estate prior to initiating foreclosure.

Under the HECM Note, the obligation to repay the loan is triggered by "receipt of a notice by Lender." Plaintiff's RJN, Ex. B, HECM Note.  It is the lender's notification to the borrower that immediate payment is due that relieves the lender of its obligation to provide further loan advances. ("Lender shall have no obligation to make Loan Advances if Lender has notified Borrower that immediate payment in full to Lender is required under one or more of the Loan Documents...") Plaintiff's RJN, Ex. C, HECM Loan Agreement.

The Deed of Trust and applicable regulations also require notice, which is confirmed by HUD's interpretation as explained in the Handbook.  The lender is to "*require*" payment upon the occurrence of a terminating event, including the death of a borrower, after which it "shall require" the mortgagor to satisfy the HECM by choosing among three options.  See Deed of Trust ¶9(a) & (b); 24 C.F.R. §206.125(a)(2); see also, Handbook Section 4330.1 REV-5, §13-33.  How does a lender "require" payment if it need not notify the Borrower or the estate that it has decided to accelerate the debt?  In order to "require" another party to take action, communication with that party is essential.  Providing notice that foreclosure will occur unless certain actions are taken is the act of "requiring" payment. Under Defendants' interpretation, the estate of a deceased borrower would operate in an information black hole with no knowledge of the lender's determination of default or timeline for foreclosure.

Such a black hole serves no one—borrower, lender or HUD.  The HECM program's non-recourse feature was put in place to protect all parties.  Borrowers and their heirs are protected from having to repay mortgages for amounts greater than the property's value.  Ms. Santos purchased FHA

1   insurance to protect RMS from the possibility her daughter or estate may want to purchase and/or sell

2   the property for an appraised value that is less than the mortgage balance.  If HUD prices and

3   administers the insurance program correctly, it should not lose money by insuring HECMs.  This

4   system *cannot function* properly in the absence of notice to Plaintiff or the estate of their rights.  By

5   allowing parties like RMS and NDEX to avoid these regulations and unilaterally determine if they are

6   applicable or not, they are the root of the problem for what they claim Plaintiff is doing—using scarce

7   judicial resources to call the Court in to mediate what federal law has already prescribed and

8   determined.  This refusal to provide notice not only drives up costs of the program through delays and

9   the expense of foreclosures, but also necessitates that parties to turn to judicial intervention.

10       Beyond this, Defendants' reading of its notice obligations under ¶9(d) and section 206.125(a)(2)

11  is excessively narrow on its face.  While both of these sections relieve the lender of the impossibility of

12  notifying the borrower that the mortgage is due and payable, this notice was eliminated because the

13  regulations narrow definition of "mortgage"[9] to include only the original mortgagor, not their

14  successors in interest, made notice on a deceased individual impossible.  Plaintiff's RJN, Ex. E, 60 Fed.

15  Red. 42754-01 at 5.  HUD made clear that this change did not exempt the mortgagee from the

16  obligation to provide adequate notice to an executor or other party responsible before a foreclosure is

17  commenced.

18       The rest of ¶9(d) and section 206.125(a)(2), which *do not* exclude terminations based on the

19  death of a borrower, make this clear by insisting *no* foreclosure can be commenced until the

20  borrower/mortgagor[10] has had thirty days after notice to correct any default, pay the balance in full, sell

21  under the 95% rule, or provide the lender with a deed in lieu of foreclosure.  (Deed of Trust ¶9(d);

22  section 206.125(a)(2).)  The only notice provided by RMS and NDEX was a void and invalid Notice of

23  Default that claimed the full amount was due under the deed of trust and fully accelerated the payment

24

25  _____

26  [9] *See* 24 C.F.R. §206.3

27  [10] As noted above, because the second sentence of section 206.125(a)(2) discusses the possibility of a *sale* of the property,
    the expanded definition of "mortgagor" to include the estate of a deceased borrower is applicable to it.  24 C.F.R.

28  §206.123(b).  Hence, 30 days prior to commencing foreclosure, the lender "shall require" the estate to pay the mortgage
    balance, sell under the 95% rule, or provide a deed in lieu of foreclosure.  24 C.F.R. §206.125(a)(2).

1  due.  There was no notice that <u>any</u> other options were available under ¶9(d) or section 206.125(a)(2) &

2  (c)—the only option was to pay the full balance.  Complaint, Ex. H.

3       The HECM Handbook's clear requirement for a repayment notice to terminate *all* HECM

4  mortgages settles any ambiguity against Defendants' interpretation.  Among other points, this goes

5  unchallenged by the Defendants.  HUD Handbook, Section 4330.1 REV-5, § 13-33 plainly requires the

6  lender to issue a Repayment Notice that offers mortgagors *or estates* the three options.  Even if the

7  language in the contract and the HECM regulations were ambiguous, the Supreme Court has held that

8  an agency's interpretation of its own regulation—here, the Handbook—is "controlling unless 'plainly

9  erroneous or inconsistent with the regulation.'"  <u>Auer v. Robbins</u>, 519 U.S. 452, 461 (1997);

10  <u>Christensen v. Harris County</u>, 529 U.S. 576, 601 (2000) ("<u>Auer</u> deference is warranted only when the

11  language of the regulation is ambiguous.").  Despite the consistency of this section with the

12  corresponding regulation on the subject (24 C.F.R. §206.125(a)(2)), Defendants disturbingly accord no

13  deference to any of the regulations.

14       Defendants simply contend that Plaintiff has no right to make any challenge whatsoever

15  because of there being no private right of action under 24 C.F.R. §206.1 *et seq*.  However, as these

16  sections have been incorporated into the Deed of Trust and this is not a bar to enforcing the regulations,

17  Defendants cannot rely on this as their foundational defense.  Further, even if ambiguity does exist in

18  the HECM Deed of Trust, it must be resolved in the context of the HECM documents, the program's

19  regulations, the Handbook provisions discussed herein and, more broadly, in the context of the HECM

20  program itself.  Defendants' interpretation frustrates the fundamental purpose of HECM loans by

21  depriving the estates of deceased HECM borrowers of the same rights as other borrowers whose

22  mortgages are terminated.  It is plainly erroneous and against public policy of the HECM program

23  itself.  For that reason, dismissal of the contract claim cannot be granted.

24       **3.  The Complaint States a Claim that RMS and NDEX Breached the Contract and
       Violated California Law by Issuing a Notice of Default that Misrepresented
25       Plaintiff's Contractual and Legal Rights**

26       Defendants' contention that they had no contractual or other duty to provide notice to the Santos

27  estate is belied by the fact that, they did in fact, send such a notice.  On February 21, 2012, RMS,

28  through NDEX (who had not yet been substituted as trustee) then sent <u>thirteen</u> "Notices of Default and

1  Election to Sell Under the Deed of Trust," which advised Plaintiff that: (1) the mortgage is in default
2  because "you are behind on your payments"; (2) they had approximately 90 days to cure the default
3  before foreclosure; (3) to cure the default, their *only* option was to pay the full mortgage balance, then
4  $320,750.96, which would increase "until your account becomes current"; and, (4) the reason for
5  default is the failure to pay "the entire unpaid principal balance, plus accrued interest thereon which
6  became immediately due and payable when borrower died and the property ceased to be the principal
7  residence of any surviving borrower." Complaint, Ex. H. This was confirmed in a follow-up phone
8  call with Defendants' counsel on July 2, 2012. In this call, counsel required that for Plaintiff to stay in
9  the home she would have to pay the entire balance plus interest, "every penny of his attorney's fees"
10 and if this did not happen, foreclosure would be imminent. There was no mention of either the 95%
11 rule or a deed in lieu. No such requirement exists under any contractual obligation or under the federal
12 regulations that specifically govern HECMs.

13     Protestations notwithstanding, Defendants issued a defective notice of default that affirmatively
14 misrepresented that the *only way* the Estate could "cure" the default was to repay the full mortgage
15 balance. Defendants cannot dispute that this is simply *not true*. Even during the time that HUD stood
16 by ML 2008-38, the estate of a HECM borrower was entitled to satisfy the loan by selling the property
17 under the 95% Rule.[11] Yet RMS and NDEX's notice demands the full mortgage balance. The notice
18 was not merely false: it cut off the rights of the Santos Estate by misusing the power of sale to threaten
19 foreclosure unless the Estate paid the full mortgage balance. To further this end, Defendants' counsel
20 refused to acknowledge the existence of <u>any</u> other options whatsoever.

### a.  Defendants Breach of the Contract Renders the Notice of Default Void and Ineffective under California Law

23     Under Civil Code §2924, *et seq*., a lender must properly serve and record a Notice of Default
24 setting forth the borrower's breach in order to affect a foreclosure. After 90 days have elapsed, the
25 lender must thereafter properly serve and record a Notice of Sale at least 20 days prior to the actual sale
26 date. Assuming <u>proper compliance with the law</u>, the property is then auctioned to the highest bidder at
27 a foreclosure sale.

---

28 [11] ML 2008-38, however, is irrelevant to the case at bar because the property was not foreclosed upon until *after* this letter was rescinded by HUD.

1     "The procedure for foreclosing on a security by a trustee's deed sale pursuant to a deed of trust

2  is set forth in Civ. Code §2924 *et seq*.  The statutory requirements must be **strictly** complied with, and

3  **a trustee's sale based on a statutorily deficient Notice of Default is invalid**." Cal. Civ. Code §2924;

4  Miller v. Cote 127 Cal.App.3d 888, 894 (1982). (Emphasis added.)  Furthermore, defect in the

5  notice…**will void any sale**…"  Angell v. Superior Court, 73 Cal.App.4th, 691, 699 (1999). (Emphasis

6  added.)  No foreclosure sale may be held based upon a defective Notice of Default.  Miller, supra 127

7  Cal.App.3d at 894; BayPoint Mortgage Corp. v. Crest Premium Real Estate 168 Cal.App.3d 818, 831

8  (1985).  "[T]he law for obvious public policy reasons wishes to give a debtor the opportunity to avoid a

9  forfeiture.  Pursuing that policy, the courts have fashioned rules to protect the debtor, one of them being

10  that the Notice of Default will be strictly construed…"  Sweatt v. Foreclosure Co., 166 Cal. App. 3d

11  273, 278 (1985).

12     Here, it is evident from the HECM documents, Handbook and regulations that the Notice of

13  Default contained blatantly incorrect information.  Paragraph 9 of the Deed of Trust allows three

14  options for the expanded definition of the mortgagor for sale: (i) pay the balance in full; (ii) sell for

15  95% of the appraised value; or, (iii) offer a deed of lieu in foreclosure.  The Notice of Default

16  conclusively states that to avoid foreclosure there must be a payment of the "amount in full."  Nowhere

17  in the Notice of Default does it state that other options are available.  Additionally, the amount owing is

18  entirely incorrect as Plaintiff has the right under the contract to sell for 95% of the appraised value.

19  The appraised value, per Zillow, is roughly $288,600.  The difference between the amount allegedly

20  owed and 95% of the appraisal value is $46,580.96.  Thus, because the Notice of Default is strictly

21  construed and entirely incorrect by the standards of both the contract and federal regulations, it is void

22  on its face and ineffective.

23     For the reasons set out in this section, Plaintiff's claims for both slander of title and cancellation

24  of instruments (Notice of Default and Notice of Trustee's Sale) are valid and cannot be dismissed.

25  Defendants knew and had reason to know that the documents they were recording were in violation of

26  HECM documents, California law, and the Handbook and Regulations, thus, there was the requisite

27  degree of malice.  Therefore, Plaintiff has properly alleged these causes of action.

28

1
2

      **4.   The Complaint States a Cause of Action for Breach of Contract for Defendants'
Refusal to Allow the Santos Estate to Sell the Property to Plaintiff under the
95% Rule.**

3
4
5
6
7
8
9
10
11

      In addition to failing to provide accurate notice to the Santos Estate, RMS and NDEX breached
the HECM contract by refusing to allow the Estate to sell the property under the 95% Rule.
Defendants' Motion seeks to deflect attention away from this breach of the contract by using negatively
charged and unnecessary vitriolic language attempting to cast Plaintiff as an "interloper," "trespasser,"
and trying to "rob the lender of the monies advanced and then to acquire the Property for free through
an extortive abuse of the legal process through an unethical attorney." (Memo at p. 14, lines 23-25.)
However, the uncontested facts show that Plaintiff contacted RMS at least once a month in attempts to
re-pay the loan for <u>15 straight months</u>—either her calls were never returned by Ms. Johnson, she was
given the wrong party to contact or flatly told a misrepresentation of her rights.

12
13
14
15
16
17
18
19
20
21
22

      This characterization is nothing but a red herring attempting to distract the Court from the real
facts and issues of this case, none of which were refuted by Defendants. From one month after her
mother's passing, up until even just a month ago, Plaintiff regularly made phone calls to RMS and
NDEX attempting to begin a re-payment plan to stay in the house. <u>At no time has Plaintiff **ever**
attempted to say she is deserving of a free house—nor is counsel now attempting to forward that stance
in any way, shape or form.</u> It has been the contrary for over a year with Plaintiff being put in the run
around by RMS and Ms. Johnson. Plaintiff has been ready and willing to buy the property from the
Estate in her personal capacity, thus making RMS obligated to allow that sale to occur so that the Estate
could satisfy the HECM by payment of 95% of the appraised value to RMS. Instead, it denied the
Estate's right to sell to Plaintiff and proceeded with foreclosure. The Complaint is clear that the claims
arise from Defendants' refusal to allow the estate to sell the property to heirs under the 95% rule.

23
24
25
26
27
28

      Interestingly, Defendants do not specifically deny that they refused to allow the Estate to sell
the property to Plaintiff under the 95% Rule. Instead, they seek refuge in the defense that Plaintiff is
not allowed to bring a private right of action under the specific regulations—yet it is these exact
regulations that govern <u>every single</u> reverse mortgage that "Reverse Mortgage Solutions, Inc." provides
to the American public. It is simply contrary to public policy to allow an entity not to follow the
codified regulations that have been put into place regarding their product and allow them to callow

behind a possible procedural technicality.  Regardless, under the simple terms of the HECM Deed of Trust, Defendants were obliged to permit the Santos Estate to sell the property to *any willing buyer* for 95% of the property's appraised value.  The terms of the HECM Deed of Trust are not ambiguous or unclear and the implication that Defendants would somehow "lose out" if Plaintiff were given this opportunity is simply false and misleading because Ms. Santos purchased insurance to compensate for that exact situation.

### D.  IN THE ALTERNATIVE, THE COURT HAS POWER TO ALLOW LEAVE TO AMEND—PLAINTIFF REQUESTS LEAVE TO AMEND FOR CAUSE OF ACTION UNDER BUSINESS & PROFESSIONS CODE §§17200, *et seq*.

If the Court finds that a private of right action does not exist, California's unfair competition law ("UCL") provides it.[12]   The case law clearly demonstrates that in the absence of an express prohibition, privilege or immunity, the UCL allows a plaintiff to bring a claim for violation of the statute or regulation.  "The [California] Supreme Court repeatedly teaches that the UCA [UCL] allows a private plaintiff to proceed under it to seek redress for conduct which violates any predicate statute, unless the defendant is privileged, immunized by another statute, or the predicate statute expressly bars its enforcement under the UCA."  Stevens v. Superior Court, 75 Cal.App.4th 594, 603-4 (1999) (allowing UCL claim based on insurer's alleged violation of agent licensing requirement of Cal. Ins. Code § 1631).  No such prohibition, privilege or immunity applies here, and this Court has already expressly ruled that violation of HECM regulations may serve as the required predicate for a claim under the UCL.  See Labrador v. Seattle Mortg. Co., No. 08-2270, 2008 WL 4775239, *4 (N.D. Cal. Oct. 29, 2008).  Plaintiff's claim for declaratory relief would be permitted to stand under the UCL as well and this Court is granted the discretion to allow Plaintiff to amend under a Rule 12(c) motion.

///

///

///

///

///

---

[12] Plaintiff does not concede that the HECM statute or regulations do not provide a private right of action, and expressly reserves the right to contend that they do.

1

**V.      CONCLUSION**

2          For all of the foregoing reasons, as well as those set forth in the papers and supporting

3   documents submitted herewith, and in Plaintiff's verified complaint, Plaintiff prays for this Court to

4   deny Defendants' Motion for Judgment on the Pleadings.

5

6   DATED:  July 17, 2012                      LAW OFFICE DANIEL J. HANECAK

7

8                                              /s/ Daniel J. Hanecak
                                               Daniel J. Hanecak, Esq.
9                                              Attorney for Plaintiff
                                               ISABEL SANTOS, INDIVIDUALLY AND AS
10                                             BENFICIARY AND TRUSTEE OF THE
                                               YOLANDA MARIA SANTOS TRUST
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

3

4

 I, Daniel J. Hanecak, hereby certify that on July 18, 2012, a true and correct copy of

5

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c), OR, ALTERNATIVELY, MOTION FOR**

6

**SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56** was filed electronically and is available for viewing and downloading from the ECF system.

7

8

 Unless otherwise noted herein, the following parties are deemed to have consented to

9

electronic service of documents filed through the ECF system:

10

11

Defendants' Representation
Edward A. Treder (SBN 116307)

12

Thomas K. Agawa (SBN 175952)
Barrett, Daffin, Frappier, Treder & Weiss, LLP

13

20955 Pathfinder Road, Suite 300
Diamond Bar, CA 91765

14

Tel: (626) 371-7032

15

Email: ThomasA@BDFGroup.com

16

17

Executed on July 18, 2012, at Sacramento, California.

18

I declare under penalty of perjury under the laws of the United States of America that the above is true

19

and correct.

20

        /s/ Daniel J. Hanecak

21

        Daniel J. Hanecak, Esq.

22

23

24

25

26

27

28