60 FR 42754-01
RULES and REGULATIONS
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
Office of the Assistant Secretary for Housing—Federal Housing Commissioner
24 CFR Parts 203 and 206
[Docket No. FR-2958-I-01]
RIN 2502-AF32

Home Equity Conversion Mortgage Insurance Demonstration: Streamlining
the Demonstration and Allowing Use of the Direct Endorsement Program

Wednesday, August 16, 1995

**\*42754**  AGENCY: Office of the Assistant Secretary for Housing—Federal Housing Commissioner, HUD.

ACTION: Interim rule.

SUMMARY: This interim rule amends HUD's regulations in 24 CFR parts 203 and 206 to simplify the Home Equity Conversion Mortgage (HECM) Insurance Demonstration, and to expedite the processing of HECMs by permitting use of the Direct Endorsement program. The rule implements the statutory disclosure amendments in section 334 of the Cranston-Gonzalez National Affordable Housing Act. The rule also makes other changes, including technical and clarifying changes, to improve and streamline the program based on the first five years of the demonstration.
DATES: Effective Date: September 15, 1995.

Comment Due Date: October 16, 1995.

ADDRESSES: Interested persons are invited to submit comments regarding this interim rule to the Rules Docket Clerk, Office of General Counsel, Room 10276, Department of Housing and Urban Development, 451 Seventh Street, SW, Washington, DC 20410-0500. Communications should refer to the above docket number and title. Facsimile (FAX) comments are not acceptable. A copy of each communication submitted will be available for public inspection and copying between 7:30 a.m. and 5:30 p.m. weekdays at the above address.

FOR FURTHER INFORMATION CONTACT: Richard K. Manuel, Acting Director, Single Family Development Division, Office of Insured Single Family Housing, Room number 9272, Department of Housing and Urban Development, 451 Seventh Street, SW, Washington, DC 20410, telephone (202) 708-2700; TDD (202) 708-9300. (These are not toll-free telephone numbers.)

SUPPLEMENTARY INFORMATION:

**Background**
The Home Equity Conversion Mortgage (HECM) Insurance Demonstration was authorized by Section 417 of the Housing and Community Development Act of 1987 (42 U.S.C. 5301), which amended Section 255 of the National Housing Act (12 U.S.C. 1715z-20) to permit elderly homeowners to borrow against the equity in their homes. HUD published final regulations on June 9, 1989, at 54 FR 24823, issued HUD Handbook 4235.1 for the program in August 1989, and immediately began processing applications for commitments to insure. The regulations are codified at 24 CFR part 206. Revision 1 to HUD Handbook 4235.1 was issued in November 1994.

**Home Equity Conversion Mortgage Insurance Demonstration:..., 60 FR 42754-01**

This interim rule reflects ideas for improving the program regulations based on experience from the first five years of the demonstration. It also reflects HUD's implementation of section 334 of the Cranston-Gonzalez National Affordable Housing Act (NAHA) (42 U.S.C. 12701). An explanation of the interim changes follows with a list of purely technical amendments at the end of this section.

**Changes to HECM Regulations**

*Section 334 of NAHA*
Section 334 of NAHA amended subsections (d), (e), and (g)[FN1] of section 255 of the National Housing Act (NHA). Section 255(e) was amended to require additional disclosures to the mortgagor before loan closing, including projections of future loan balances and information that the mortgagor's liability is limited. Existing §206.43(a) requires the mortgagee to identify and explain to the mortgagor the principal provisions of the mortgage, which include the limitations on liability. HUD provided mortgagees with instructions on these new disclosures through Mortgagee Letter 91-1 and by making a software package available to mortgagees.

Section 154 of the Riegle Community Development and Regulatory Improvement Act of 1994 (Pub.L. 103-325, September 23, 1994) imposes a very similar disclosure requirement for all reverse mortgages. HUD has concluded that Congress does not expect HECM mortgagees to attempt to comply with the disclosure requirements of both the NAHA and the new law, and that there is no need for HECM mortgagees to be exempted from the new law. The new law will become mandatory when the Federal Reserve Board's implementing regulations, published on March 24, 1995, at 57 FR 15463, become mandatory on October 1, 1995. At that time, HECM mortgagees will be expected to comply with the Federal Reserve Board regulations instead of the current HUD instructions on disclosures. Until then, mortgagees may choose the option of compliance with the Federal Reserve Board regulations as a means of complying with HUD's instructions.

Section 255(d)(7) of the NHA was amended to permit a procedure for the mortgagor to reserve a portion of the equity in the property for the benefit of the mortgagor or the mortgagor's heirs. This interim rule does not implement section 255(d)(7).

HUD has concluded that two of the amendments to section 255 of the NHA by section 334 of NAHA that are mandatory do not require any change to the current part 206. New section 255(d)(9) of the NHA requires that an insured mortgage provide for payments under one of six payment plans selected by the mortgagor: (1) Payments based on a line of credit, (2) monthly payments over a term, (3) monthly payments over the mortgagor's tenure in the home, (4) a combination of (1) and (2), (5) a combination of (1) and (3), and (6) "or any other basis that the Secretary considers appropriate." In addition, new section 255(d)(10) of the NHA requires that an insured mortgage provide for conversion by the mortgagor from one payment plan to any other payment plan except that HUD may limit conversion for fixed rate mortgages by regulation. The payment plans designated above as (1) through (5) and the mortgagor's ability to convert from one plan to another are currently authorized by part 206. HUD has no current plans to alter this regulatory scheme.

HUD does not interpret the statutory reference to conversion by the mortgagor as barring all HUD restrictions on conversions for adjustable rate mortgages, if the restrictions do not have the effect of substantially interfering with the general right to choose payment plans. For example, the existing §206.26(b)(3) requires conversion to a line of credit with restricted draws if required post-closing repairs are not completed on schedule. Restrictions on convertability **\*42755** end with completion of the required repairs. Another specific restriction on conversion is in the existing § 206.26(d), which permits the mortgagee to charge a processing fee for changes in payment plans, not to exceed twenty dollars. HUD is not making any change to these provisions.

Section 206.26(e) of the existing regulations also generally authorizes HUD to restrict changes in payment plans including a limitation on the frequency of payment changes and a minimum notice period for a mortgagor request for change. HUD has not adopted any restrictions under this section. No change is being made to this section, although any future restrictions adopted under the section will be carefully scrutinized to ensure that they do not unduly limit the mortgagor's ability to change payment

plans in violation of the statute. HUD has no current plans to include in the regulations any limitations on convertability of fixed rate mortgages.

**Direct Endorsement**

*Sections 203.3, 203.5, and 203.255*
The interim rule makes the HECM program an eligible program for Direct Endorsement processing. In order for a mortgagee to be approved for Direct Endorsement processing of HECMs, the mortgagee will have to initially submit 5 HECMs as test cases to the Secretary for review prior to endorsement for insurance in addition to complying with the other requirements of §203.3. This requirement for 5 test cases will not apply to any mortgagee that is otherwise approved for Direct Endorsement and that has closed 50 HECMs that were insured by HUD prior to the effective date of the interim rule.

A Direct Endorsement mortgagee will have to submit the documentation and certifications listed at §203.255 as well as the certificate of counseling, the title insurance commitment, and the mortgagee's election of the assignment or shared premium options as required by §206.15. Paragraphs (c), (d) and (e) of §203.255, regarding pre- and post-endorsement review and submission for endorsement by a mortgagee other than the originating mortgagee, will apply to HECMs. Sections 203.3, 203.5 and 203.255 of the current regulations are amended and conforming amendments are made to §206.3 defining maximum claim amount, §206.7 regarding regulatory amendments, and §206.13 on ineligible programs.

*Section 206.15*
Section 206.15 of the current regulations, which pertains to the insurance application process, is revised to conform to the decision to make HECMs eligible for Direct Endorsement processing. Paragraph (a) of §206.15 is removed because it refers to the old system of reservations of insurance authority which was eliminated after the HECM demonstration was expanded by section 334 of NAHA (See final rule published on April 19, 1991, at 56 FR 16002). Paragraph (b) is removed because the concept of applying for mortgage insurance prior to execution of the mortgage is obsolete under the Direct Endorsement program. Most of paragraph (c) is retained, except references to application for insurance and conditional commitments will be replaced with the Direct Endorsement requirements. The list of documentation in §206.15(c) is amended to incorporate the Direct Endorsement certifications at §203.255. The last sentence in §206.15(c) concerning the General Insurance Fund is moved to a new §206.102 in subpart C.

**Other Program Amendments**

*Section 206.5*
Section 206.5 of the current regulations is amended to include waiver authority for subpart D regarding servicing to conform to the 1991 adoption of 24 CFR 203.685 permitting waivers of servicing requirements for other single family mortgage insurance programs.

*Section 206.19(f)*
A new paragraph (f) is added to §206.19 to clarify that loan advances cannot exceed any maximum mortgage amount stated in a mortgage. The HECM program does not require that a maximum mortgage amount be used, but some State laws require mortgages to contain a maximum amount. This change will ensure that a mortgagee could comply both with State law and its contractual obligation to make loan advances and conforms to existing provisions in the approved mortgage instruments.

*Section 206.21*
Section 206.21 is amended to make two corrections to paragraph (d). Paragraph (d) as amended, provides that post-loan disclosures for adjustments must be made 25 days before a change in the interest rate, not a change in mortgage balance, and that disclosure be made of the new interest rate rather than of the new mortgage balance. Paragraph (d), as amended, also requires disclosure of the date of the index used to calculate the new interest rate. These changes will conform the rule to actual program operations as reflected in the program handbook and mortgage instruments.

*Sections 206.25 and 206.26*

The provisions of §§206.25 and 206.26 regarding payment calculations and amounts set aside from the principal limit are revised to eliminate differences between the regulations and the HECM Loan Agreement. Section 206.25(b)(1) of the current regulation is reorganized to describe the payments calculation in a manner to better reflect the description in the Loan Agreement (§2.5 of the Loan Agreement) required by HUD Handbook 4265.1 and the operations of the HECM payments model software. Another change to §206.25(d) will more accurately reflect the size of the amount set aside for servicing charges.

Technical changes are made to the "repair set aside" provisions at §206.26(b) to clarify repair set aside procedures as was done in the Loan Agreement (§2.9 of the Loan Agreement). The mortgagee will not be required to recalculate monthly payments when the repairs are completed. Instead, excess funds in the repair set-aside will be automatically transferred to a new or existing line of credit. In this way mortgagors will only be charged a fee for changing payments if the mortgagor requested an increase to monthly payments requiring a recalculation. If the amount of funds in the repair set-aside will be insufficient to complete the repairs, monthly payments will be recalculated only if there are insufficient funds in a line of credit to cover the repair charges.

*Section 206.27(b)*

Section 206.27(b) will be amended to clarify that any lien, in addition to the tax deferral liens specified in the regulation, may be recorded so long as those liens are subordinate to the first HECM and any second HECM held by the Secretary.

*Section 206.40*

Section 206.40 of the current regulation is amended to reflect statutory changes made by section 165 of the Housing and Community Development Act of 1987 (Pub. L. 100-242, approved February 5, 1988) which requires applicants and participants in any HUD program to disclose to HUD their Social Security Numbers (SSNs) or Employer Identification Numbers (EINs). To be eligible for mortgage insurance under part 206, the mortgagor must meet the requirements for disclosure and verification of SSNs and EINs as provided by part 200, subpart U. This conforms part 206 to changes **\*42756** previously made in regulations for other mortgage insurance programs.

*Sections 206.45(a) and 206.15*

The interim rule amends §§206.45(a) and 206.15 to adjust the time frame for submission to HUD of a title insurance commitment, and to permit the mortgagee to retain its mortgagee's title insurance policy in the loan servicing file. The requirement for a title policy before endorsement has caused delay in endorsing mortgages. Section 206.45(a), as interim to be amended, would require the Direct Endorsement mortgagee to obtain a title insurance commitment before closing a loan and to obtain a title insurance policy satisfactory to the Secretary. Section 206.15 will be amended to remove the requirement to submit the title insurance policy to HUD, but mortgagees will still be expected to obtain the title insurance policy, based on the commitment obtained before closing, as soon as possible and to retain the policy in the servicing file so that it is available for inspection during HUD monitoring.

These requirements will still serve HUD's objective of ensuring that any special problems regarding validity of a HECM in the jurisdiction are known prior to insurance endorsement. HUD is particularly interested in independent assurance of the validity of title because HUD may be required to become the mortgagee upon mortgagee default and the mortgage is non-recourse. HUD concludes that it is still necessary to depart from its practice in other single family programs which do not require any title evidence prior to endorsement for mortgage insurance because of HUD's unique exposure in the event of title problems, but there is no need to delay endorsement if a title insurance commitment has been obtained by the mortgagee before loan closing.

*Section 206.45*

Three other changes are made to §206.45 by this rule. Paragraph (b) of that section, which currently requires the mortgaged property to include a dwelling designed principally as a one-family residence, is amended to permit a dwelling for such number of families as the Secretary determines. Such a determination will need to be consistent with statutory constraints. Although

current section 255(d)(3) of the NHA does not permit an HECM on a dwelling designed principally as a residence for more than one family, HUD anticipates the possibility of future statutory authority to insure an HECM secured by a dwelling designed principally as a residence for up to four families. HUD therefore has removed the unnecessary regulatory restriction that will bar the Secretary from taking immediate advantage of any liberalization in the size of dwellings eligible for the HECM program.

Paragraph (d) is amended to permit the HECM program to be used for pre-1978 dwellings with defective paint surfaces if no child less than six years of age is expected to reside in the dwelling. This change conforms to a provision of the Residential Lead-Based Paint Hazard Reduction Act of 1992 which changed the childhood age of concern for exposure to lead-based paint hazards from less than seven years of age to less than six years of age.

*Section 206.107(a)(1)*
Section 206.107(a)(1) of the current regulation is amended to conform to the operating procedure announced in Handbook 4235.1, Rev. 1, Ch. 10-2 A.1. The Handbook was issued with the intent that HUD would make this conforming rule change at the earliest opportunity and before the balances of many mortgages would reach the maximum claim amount. Under the current rule, mortgagees have expressed concern that they may be obligated to make loan advances to the mortgagor in excess of the maximum claim amount that HUD is permitted to pay to the mortgagee, while not being able to assign the mortgage to HUD until the debt reached the maximum claim amount. The rule will make clear that this was not HUD's intent by providing mortgagees with a window period for assignment. The mortgage could be assigned when the balance is equal to or greater than 98 percent of the maximum claim amount, or when the mortgagor has requested a payment that will result in the mortgage balance exceeding the maximum claim amount.

A new paragraph (a)(1)(v) is added to §206.107 which will require that the mortgage assigned to HUD under the mortgagee's assignment option be a first lien and that the underlying security have good and marketable title. The regulation incorporates §203.353 (mortgagee certification as to lien status, mortgage amount and offsets), §203.387 (definition of good and marketable title) and §203.389 (title objections which will not destroy marketability). This clarifies that HUD may refuse assignment of a mortgage on a property if some or all of the loan advances made after the mortgage was closed are not secured by a first lien under the applicable state law governing lien priority for funds advanced after closing. These changes expressly adopt policies that apply to assignments of mortgages to HUD under other authorities.

*Section 206.116*
A new §206.116 is added to codify the policy that the initial Mortgage Insurance Premium (MIP) paid for an HECM is not refundable. This policy was explained in the preamble to the HECM final rule published on June 8, 1989, at 54 FR 24823. The non-refundable MIP is a key factor in the payment model and in determination of risk under the program.

*Section 206.125*
Three paragraphs of §206.125 are amended. First, paragraph (a) will relieve the mortgagee from notifying the mortgagor when the mortgage is due and payable because the mortgagor is deceased. While HUD expects the mortgagee to attempt to provide adequate notice to an executor or other party responsible for the property before a foreclosure action is commenced, the term "mortgagor" is used in the HECM regulations as referring only to the original mortgagor or mortgagors, not to their successors in interest, so that notice to the mortgagor after death will be an impossibility.

Second, paragraph (b) is revised to require an appraisal of the property within 30 days of the date when the mortgagee is notified that the mortgage is due and payable, or within 30 days of the date the mortgagee becomes aware of the mortgagor's death, instead of permitting the mortgagee to wait until 15 days before the foreclosure sale as in the current rule. An appraisal will be needed in any event—either to support a pre-foreclosure sale or in connection with the mortgagee's bidding at foreclosure —and the early availability of an appraisal will enable the mortgagor or the mortgagor's estate to offer the property for sale at realistic terms in an attempt to avoid foreclosure. The mortgagor may request an appraisal at any time if the property is being sold. The mortgagee would no longer have to request the Secretary to make an appraisal of the property. To be consistent with

the change to Direct Endorsement processing, which involves greater reliance on mortgagees, the appraisal for this purpose would be ordered by the mortgagee.

Paragraph (b) is also revised so that the current requirement for the mortgagor to bear the expense applies only when the mortgage is not due and payable. After the mortgage has been accelerated, the mortgagor may not have funds available to pay for the appraisal or there may be a substantial period of time before costs related to the property **\*42757** can be paid by the mortgagor's estate. The revised paragraph (b) therefore provides for the mortgagee to pay for the appraisal if the mortgage is due and payable, with a right of reimbursement from any proceeds from the sale of the home. If there are insufficient sales proceeds, a related change in §206.129(d)(iv) will permit the mortgagee to include the cost of the appraisal in its claim for insurance benefits.

Third, paragraph (d) is amended to extend the time to foreclose that is allowed without specific approval by HUD. The time is extended to six months from the date of notice to the mortgagor that the mortgage is due and payable, or from the date of the mortgagor's death if applicable, or from the date that State law or Federal bankruptcy law will permit the commencement of foreclosure. Such an extension will provide additional time for the mortgagor or the mortgagor's estate to sell the property. It is foreseen that the additional time may be especially necessary where the property is being sold by the mortgagor's estate or through probate proceedings.

### Section 206.129

Several technical amendments are made to §206.129. Paragraph (d) is amended to conform the HECM claim requirements to the updated claim requirements for other insured single-family mortgages issued at 57 FR 47967, October 20, 1992. A claim payment under paragraph (d), made when a mortgagee acquires title or is an unsuccessful bidder at foreclosure, will include the items listed in paragraphs (p) and (q) of §203.402 (HUD-approved amount paid to mortgagor for a deed-in-lieu of foreclosure, and reasonable costs of evicting occupants), as well as the items currently listed in the HECM regulation. The last sentence of §206.129(d)(2)(ii) is removed because it is repetitive of §203.402(p), which will be added, as noted above. The claim also will include a certification that the property is undamaged by incorporating the certification provisions of §203.380. Section 206.129(d)(3)(ii) will incorporate the inspection and preservation requirements of §203.377.

Paragraph (e)(1) of §206.129 is amended with respect to claims made in connection with the assignment option. Claims will be calculated by starting with the mortgage balance at the time of assignment instead of the maximum claim amount. This amendment is related to the change previously discussed that will permit assignments before the mortgage balance has reached the maximum claim amount. Paragraph (e)(2) also will be amended to provide authority to reimburse mortgagees for certain costs and attorney fees incurred in connection with the assignment of mortgages to the Secretary as is currently provided for under §203.404(a)(3) for Section 203(b) mortgages.

### Section 206.203

A technical amendment is made to §206.203 to clarify that mortgagees need only send a statement of account for line of credit payments. Statements of account are not required for monthly payments. New payment plans are required when payments are recalculated.

### Section 206.207

Section 206.207 is amended to add title search costs to the list of allowable post-endorsement charges by mortgagees in the case where the mortgage was extended under §206.27(d)(10) for an additional amount of debt or additional number of years beyond the debt or term originally covered by the mortgage. Some State laws do not permit a lien to be established for an indefinite amount or for advance over an indefinite number of years, and later extension of the mortgage is necessary because of the characteristics of the HECM program. The section also is amended to permit a mortgagee to charge a mortgagor for property preservation expenses incurred by a mortgagee in connection with vacant or abandoned properties.

**Technical Amendments**

In addition to the foregoing amendments, certain minor technical amendments are made to the following sections in 24 CFR part 206.

*Section 206.9*

This section is amended to correct the heading of paragraph (b).

*Section 206.43(a)*

The section is amended to include a cross reference to §206.207(b).

*Section 206.47(a)*

This section is amended to replace the phrase "minimum property standards" with "the applicable property standards of the Secretary".

*Section 206.102*

This section is added to include language currently in §206.15, stating that insured HECMs are obligations of the General Insurance Fund.

*Section 206.113*

This section is amended to reflect a name change from the Treasury Fiscal Requirements Manual to Treasury Financial Manual.

*Section 206.121*

This section is amended to correct a cross-reference citation.

*Section 206.123(a)(4)*

This section is amended to include a cross reference to §206.127(a)(2).

*Section 206.125(g)(3)*

This section is amended to include the full text of §204.305(b) from the coinsurance regulations in lieu of incorporation by reference, because of HUD's recent rule that terminated the single family coinsurance program.

*Section 206.129(d)(2)*

This section is amended to include the full text of §204.322(l) from the coinsurance regulations. Some language from the related §204.305(a) is now included in §206.125(g)(1).

*Section 206.205(a)*

This section is amended to add the word "special" before "assessments".

**Other Matters**

*Justification for Interim Rule*

In general, the Department publishes a rule for public comment before issuing a rule for effect, in accordance with its own regulations on rulemaking, 24 CFR part 10. However, part 10 does provide for exceptions from that general rule where the Department finds good cause to omit advance notice and participation. The good cause required is satisfied when prior public procedure is "impracticable, unnecessary, or contrary to the public interest." (24 CFR 10.1) The Department finds that good cause exists to publish this interim rule for effect without first soliciting public comment in that prior public procedure is both contrary to the public interest and unnecessary.

Of the numerous changes made by the interim rule, the greatest immediate impact is expected to be the change to Direct Endorsement (DE) processing for HECM loans. DE processing permits the lender to close the loan without prior approval from the Department. It is used nearly exclusively for single family mortgage insurance programs other than the HECM program, and has proven to be an effective method of reducing the time needed for loan approval while permitting reduced HUD field office staffs to deal with other matters that cannot be assigned to mortgagees. The potential borrowers will clearly benefit by elimination of processing through the HUD offices. Lenders will no longer have a legal commitment for insurance ***42758** at the time they close the loan. However, HUD will always endorse the loan under Direct Endorsement if it has been processed by the lender in accordance with all applicable requirements. Lenders that follow all HUD requirements are under no greater risk under Direct Endorsement than if they closed a HECM loan in reliance on a HUD commitment. HUD has received numerous informal communications from lenders endorsing a conversion to Direct Endorsement processing for the HECM program as soon as possible.

The many other changes included in this interim rule fall into several general categories. Many are clarifications that reflect actual program operation during the years the HECM program has been in effect. Others are conforming changes that eliminate some unneeded and unintended small discrepancies between part 206 and comparable provisions in part 203. Another category of changes reflects changes in other laws that have occurred since the original publication of part 206. Finally, some changes are simple wording changes to remove possibility of confusion in meaning. In all of these cases, HUD has determined that there is no public benefit to a delay in effectiveness pending a public notice and comment period. There is no expansion of regulatory burden for lenders or borrowers.

**Regulatory Reinvention**
Consistent with Executive Order 12866, and President Clinton's memorandum of March 4, 1995, to all Federal Departments and Agencies on the subject of Regulatory Reinvention, the Department is reviewing all its regulations to determine whether certain regulations can be eliminated, streamlined, or consolidated with other regulations. As part of this review, this interim rule, at the final rule stage, may undergo revisions in accordance with the President's regulatory reform initiatives. In addition to comments on the substance of these regulations, the Department welcomes comments on how this interim rule may be made more understandable and less burdensome.

**Environmental Impact**
A Finding of No Significant Impact with respect to the environment has been made in accordance with HUD regulations at 24 CFR part 50, which implements section 102(2)(C) of the National Environmental Policy Act of 1969 (NEPA). This Finding of No Significant Impact is available for public inspection between 7:30 a.m. and 5:30 p.m. weekdays in the Office of the Rules Docket Clerk, Office of the General Counsel, Department of Housing and Urban Development Room 10276, 451 Seventh Street, SW, Washington, DC 20410.

**Executive Order 12866**
This interim rule was reviewed by the Office of Management and Budget (OMB) under Executive Order 12866 on Regulatory Planning and Review, issued by the President on September 30, 1993. Any changes made in this interim rule as a result of that review are clearly identified in the docket file, which is available for public inspection in the office of the Department's Rules Docket Clerk, Room 10276, 451 Seventh Street, SW, Washington, DC.

**Impact on Small Entities**
The Secretary, in accordance with the Regulatory Flexibility Act (5 U.S.C. 605(b)), has reviewed this interim rule before publication and by approving it certifies that this interim rule will not have a significant economic impact on a substantial number of small entities. The interim rule is limited to revision of the Home Equity Conversion Mortgage Demonstration. Specifically, the requirements of the interim rule are directed to making the program more efficient for participating mortgagees, mortgagors and the Department.

#### Executive Order 12612, Federalism

The General Counsel, as the Designated Official under section 6(a) of Executive Order 12612, Federalism, has determined that the policies contained in this interim rule will not have substantial direct effects on States or their political subdivisions, or the relationship between the Federal government and the States, or on the distribution of power and responsibilities among the various levels of government. As a result, the interim rule is not subject to review under the Order.

#### Executive Order 12606, the Family

The General Counsel, as the Designated Official under Executive Order 12606, The Family, has determined that this interim rule will not have potential for significant impact on family formation, maintenance, and general well-being, and, thus, is not subject to review under the order. No significant change in existing HUD policies or programs will result from promulgation of this interim rule, as those policies and programs relate to family concerns.

#### Regulatory Agenda

This interim rule was listed as sequence number 1414 in the Department's Semiannual Agenda of Regulations published on May 8, 1995 (60 FR 23368, 23383) in accordance with Executive Order 12866 and the Regulatory Flexibility Act.

#### List of Subjects

*24 CFR Part 203*

Hawaiian Natives, Home improvement, Indians—lands, Loan programs—housing and community development, Mortgage insurance, Reporting and recordkeeping requirements, Solar energy.

*24 CFR Part 206*

Aged, Condominiums, Loan programs—housing and community development, Mortgage insurance, Reporting and recordkeeping requirements.

Accordingly, 24 CFR parts 203 and 206 are amended as follows:

**PART 203—SINGLE FAMILY MORTGAGE INSURANCE**

1. The authority citation for 24 CFR part 203 is revised to read as follows:

Authority: 12 U.S.C. 1709, 1710, 1715b, and 1715u; 42 U.S.C. 3535(d). In addition, subpart C is also issued under 12 U.S.C. 1715u.

24 CFR § 203.3

2. In §203.3, paragraph (b)(4) is revised to read as follows:

24 CFR § 203.3

**§203.3 Approval of mortgagees for Direct Endorsement.**
* * * * *
(b) * * *

(4) The mortgagee must submit initially 15 mortgages processed in accordance with §§203.5 and 203.255. Separate approval is required to originate mortgages under part 206 of this chapter through the Direct Endorsement program unless at least 50 mortgages closed by the mortgagee have been insured under part 206 of this chapter prior to September 15, 1995. Other mortgagees who have not closed at least 50 mortgages under part 206 of this chapter must submit five (5) Home Equity Conversion Mortgages, processed in accordance with §§203.3 and 203.255. The documents required by §203.255 will be reviewed by the Secretary and, if acceptable, commitments will be issued prior to endorsement of the mortgages for insurance. If the underwriting and processing of these 15 mortgages (or the 5 Home Equity Conversion Mortgages) is satisfactory, then the mortgagee may be approved to close subsequent mortgages  **\*42759**  and submit them directly for endorsement for insurance

in accordance with the process set forth in § 203.255. Unsatisfactory performance by the mortgagee at this stage constitutes grounds for denial of participation in the program, or for continued pre-endorsement review of a mortgagee's submissions. If participation in the program is denied, such denial is effective immediately and may be appealed in accordance with the procedures set forth in paragraph (d)(2) of this section. Unsatisfactory performance solely with respect to mortgages under 24 CFR part 206 may, at the option of the Secretary, be grounds for denial of participation or for continued pre-endorsement review for 24 CFR part 206 mortgages without affecting the mortgagee's processing of mortgages under other parts.

\* \* \* \* \*24 CFR § 203.5

3. In §203.5, paragraph (b) is revised to read as follows:

24 CFR § 203.5

**§203.5 Direct Endorsement process.**

\* \* \* \* \*

(b) Eligible programs. All single family mortgages authorized for insurance under the National Housing Act shall be originated through the Direct Endorsement program, except mortgages authorized under sections 203(n), 203(p), 213(d), 221(h), 221(i), 225, 233, 237, 809 or 810 of the National Housing Act, or any other insurance programs announced by Federal Register notice or as provided in §203.1. The provision contained in §221.55 of this chapter regarding deferred sales to displaced families is not available in the Direct Endorsement program.

\* \* \* \* \*24 CFR § 203.255

4. Section 203.255 is amended by:

a. Revising the last sentence of paragraph (b)(11);

b. Redesignating the existing paragraph (b)(12) as paragraph (b)(13);

c. Adding a new paragraph (b)(12); and

d. Revising paragraph (c) introductory text and paragraph (c)(3), to read as follows:

24 CFR § 203.255

**§203.255 Insurance of mortgages.**

\* \* \* \* \*

(b) \* \* \*

(11) \* \* \* The certification shall incorporate each of the mortgagee certification items which apply to the mortgage loan submitted for endorsement, as set forth in the applicable handbook or similar publication that is distributed to all Direct Endorsement mortgagees;

(12) For a Home Equity Conversion Mortgage under part 206 of this chapter, the additional documents required by §206.15 of this chapter; and

\* \* \* \* \*

(c) Pre-endorsement review for Direct Endorsement. Upon submission by an approved mortgagee of the documents required by paragraph (b) of this section, the Secretary will review the documents and determine that:

\* \* \* \* \*

(3) The stated mortgage amount does not exceed the maximum mortgage amount for the area as most recently announced by the Secretary, except for mortgages under 24 CFR part 206;

\* \* \* \* \*

**PART 206—HOME EQUITY CONVERSION MORTGAGE INSURANCE**

5. The authority citation for part 206 is revised to read as follows:

Authority: 12 U.S.C. 1715b, 1715z-1720; 42 U.S.C. 3535(d).

24 CFR § 206.3

6. In §206.3, the definition of "Maximum claim amount" is revised to read as follows:

24 CFR § 206.3

**§206.3 Definitions.**

* * * * *

Maximum claim amount means the lesser of the appraised value of the property or maximum dollar amount for an area established by the Secretary for a one-family residence under section 203(b)(2) of the National Housing Act (as adjusted where applicable under section 214 of the National Housing Act). Both the appraised value and the maximum dollar amount for the area shall be as of the date the Direct Endorsement underwriter receives the appraisal report. Closing costs shall not be taken into account in determining appraised value. Appraised value shall be determined by an appraisal performed in accordance with part 267 of this chapter.

* * * * *24 CFR § 206.5

7. Section 206.5 is amended by revising the first sentence, to read as follows:

24 CFR § 206.5

**§206.5 Waivers.**

The Secretary, in an individual case, may waive any requirement of subparts B and D of this part not required by statute if the Secretary finds that application of such requirement will adversely affect achievement of the purposes of this program. * * *

24 CFR § 206.7

8. Section 206.7 is revised to read as follows:

24 CFR § 206.7

**§206.7 Effect of amendments.**

The regulations in this part may be amended by the Secretary at any time and from time to time, in whole or in part, but amendments to subparts B and C of this part shall not adversely affect the interests of a mortgagee on any mortgage to be insured for which either the Direct Endorsement mortgagee has approved the mortgagor and all terms and conditions of the mortgage or the Secretary has made a commitment to insure. Such amendments shall not adversely affect the interests of a mortgagor in the case of a default by a mortgagee where the Secretary makes payments to the mortgagor.

24 CFR § 206.9

9. In §206.9, the paragraph heading of paragraph (b), is revised to read as follows:

24 CFR § 206.9

**§206.9 Eligible mortgagees.**

* * * * *

(b) HUD approved mortgagees.

* * * * *

10. The title of subpart B is revised to read "Subpart B—Eligibility; Endorsement."

24 CFR § 206.13

**§206.13 [Removed]**

24 CFR § 206.13

11. Section 206.13 is removed.

24 CFR § 206.15

12. Section 206.15 is revised to read as follows:

24 CFR § 206.15

**§206.15** Endorsement for insurance.
Mortgages originated under this part must be endorsed through the Direct Endorsement program under §203.5 of this chapter, except as provided in §203.1 of this chapter. The mortgagee shall submit to the Secretary, within 60 days after the date of closing of the loan or such additional time as permitted by the Secretary, properly completed documentation and certifications as listed in §203.255 of this chapter and the certificate received by the mortgagor from the counseling entity that the mortgagor has received counseling as required under §206.41, a copy of the title insurance commitment satisfactory to the Secretary (or other acceptable title evidence if the Secretary has determined not to require title insurance under §206.45(a)), the mortgagee's election of either the assignment or shared premium option under §206.107, and any other documentation required by the Secretary. Sections 203.255(c), (d) and (e) of this chapter, pertaining to pre-endorsement review, submission for endorsement by purchasing mortgagee, and post-endorsement review for Direct Endorsement, apply to mortgages under this part. If the mortgagee has complied with the Direct Endorsement requirements of §§203.3, 203.5 and 203.255 of this chapter and the requirements of this part, and the mortgage is determined to be eligible, the Secretary will endorse the mortgage **\*42760** for insurance by issuance of a Mortgage Insurance Certificate.

24 CFR § 206.19
13. In §206.19, a new paragraph (f) is added to read as follows:
24 CFR § 206.19

**§206.19** Payment options.
\* \* \* \* \*

(f) Payments limited by lien amount. No payments shall be made under any of the payment options, notwithstanding anything to the contrary in this section or in §206.25, in an amount which shall cause the mortgage balance after the payment to exceed any maximum mortgage amount stated in the security instruments or to otherwise exceed the amount secured by a first lien.

24 CFR § 206.21
14. In §206.21, paragraphs (c)(2) and (d) are revised to read as follows:
24 CFR § 206.21

**§206.21** Interest rate.
\* \* \* \* \*

(c) \* \* \*

(2) Compliance with pre-loan disclosure provisions of 12 CFR part 226 (Truth in Lending) shall constitute full compliance with paragraph (c)(1) of this section.

(d) Post-loan disclosure. At least 25 days before any adjustment to the interest rate may occur, the mortgagee must advise the mortgagor of the following:

(1) The current index amount;

(2) The date of publication of the index; and

(3) The new interest rate.
\* \* \* \* \*24 CFR § 206.25
15. In §206.25, paragraph (b)(1) is revised to read as follows:
24 CFR § 206.25

**§206.25** Calculation of payments.
\* \* \* \* \*

(b) Monthly payments—term option. (1) Using factors provided by the Secretary, the mortgagee shall calculate the monthly payment so that the sum of paragraphs (b)(1)(i) or (b)(1)(ii) of this section added to paragraphs (b)(1)(iii), (b)(1)(iv), (b)(1)(v) and (b)(1)(vi) of this section shall be equal to the principal limit at the end of the payment term:

(i) An initial payment under paragraph (a) of this section plus any initial servicing charge set aside under §206.19(d); or

(ii) The mortgage balance at the time of a change in payments option in accordance with §206.26, plus any remaining servicing charge set aside under § 206.19(d); and

(iii) The portion of the principal limit set aside as a line of credit including any set asides for repairs and first year property charges under § 206.19(d); and

(iv) All monthly payments due through the payment term, including funds withheld for payment of property charges under §206.205; and

(v) All MIP, or monthly charges due to the Secretary in lieu of mortgage insurance premiums due through the payment term; and

(vi) All interest through the remainder of the payment term. The expected average mortgage interest rate shall be used for this purpose.
* * * * *24 CFR § 206.26
16. In §206.26, paragraphs (b)(1) and (b)(2) are revised to read as follows:
24 CFR § 206.26

**§206.26 Change in payment option.**
* * * * *
(b) * * *

(1) If initial repairs after closing under §206.47 are completed without using all of the funds set aside for repairs, the mortgagee shall transfer the remaining amount to a line of credit and inform the mortgagor of the sum available to be drawn.

(2) If repairs after closing under §206.47 cannot be completed with the funds set aside for repairs, the mortgagee may advance additional funds to complete repairs from an existing line of credit. If a line of credit is not sufficient to make the advance or if no line of credit exists, future monthly payments shall be recalculated for use as a line of credit in accordance with §206.25.
* * * * *24 CFR § 206.27
17. In §206.27, paragraph (b)(3) is revised to read as follows:
24 CFR § 206.27

**§206.27 Mortgage provisions.**
* * * * *
(b) * * *

(3) The mortgagor shall not participate in a real estate tax deferral program or permit any liens to be recorded against the property, unless such liens are subordinate to the insured mortgage and any second mortgage held by the Secretary.
* * * * *24 CFR § 206.40
18. A new §206.40 is added to read as follows:
24 CFR § 206.40

**§206.40 Disclosure and verification of Social Security and Employer Identification Numbers.**
The mortgagor must meet the requirements for the disclosure and verification of Social Security and Employer Identification Numbers, as provided by part 200, subpart U, of this chapter.

24 CFR § 206.43

19. In §206.43, paragraph (a) is revised, and a new paragraph (c) is added, to read as follows:

24 CFR § 206.43

**§206.43** **Information to mortgagor.**

(a) Explanation of mortgage terms. At the time the mortgagee provides the mortgagor with a loan application, the mortgagee shall provide each mortgagor with a copy of the mortgage forms. At that time the mortgagee shall identify and explain to the mortgagor the principal provisions of the mortgage, including the fact that the liability of the homeowner is limited under the mortgage to the value of the property and whether the mortgagee will collect servicing fees under §206.207(b).
* * * * *

(c) Disclosure. The mortgagee must comply with any regulations issued by the Federal Reserve Board to implement section 154 of the Riegle Community Development and Regulatory Improvement Act of 1994 (15 U.S.C. 1648).
* * * * *24 CFR § 206.45

20. In §206.45, paragraphs (a), (b), and (d) are revised to read as follows:

24 CFR § 206.45

**§206.45** **Eligible properties.**

(a) Title. A mortgage must be on real estate held in fee simple, or on a leasehold under a lease for not less than 99 years which is renewable, or under a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest mortgagor. The mortgagee shall obtain a mortgagee's title insurance policy satisfactory to the Secretary. If the Secretary determines that title insurance for reverse mortgages is not available for reasonable rates in a State, then the Secretary may specify other acceptable forms of title evidence in lieu of title insurance.

(b) Type of property. The property shall include a dwelling designed principally as a residence for one family or such additional families as the Secretary shall determine.
* * * * *

(d) Lead-based paint poisoning prevention. If the appraiser of a dwelling constructed prior to 1978 finds defective paint surfaces, §200.810(d) of this chapter shall apply unless the mortgagor certifies that no child who is less than six years of age resides or is expected to reside in the dwelling.
* * * * *24 CFR § 206.47

21. In §206.47, paragraph (a) is revised to read as follows:

24 CFR § 206.47

**§206.47** **Property standards; repair work.**

(a) Need for repairs. Properties must meet the applicable property standards of the Secretary in order to be eligible. Properties which do not meet the property standards must be repaired in order to ensure that the repaired property will serve as adequate security for the insured mortgage.
* * * * *24 CFR § 206.102

22. A new §206.102 is added under the undesignated center heading "Sale,  **\*42761**  Assignment and Pledge" to read as follows:

24 CFR § 206.102

**§206.102** **General Insurance Fund.**

Mortgages insured under this part shall be obligations of the General Insurance Fund.

24 CFR § 206.107

23. In §206.107, paragraph (a)(1) introductory text is revised and a new paragraph (a)(1)(v) is added, to read as follows:

24 CFR § 206.107

**§206.107 Mortgagee election of assignment or shared premium option.**

(a) * * *

(1) Under the assignment option, the mortgagee shall have the option of assigning the mortgage to the Secretary if the mortgage balance is equal to or greater than 98 percent of the maximum claim amount, or the mortgagor has requested a payment which exceeds the difference between the maximum claim amount and the mortgage balance and:
* * * * *

(v) The mortgage is a first lien of record and title to the property securing the mortgage is good and marketable. The provisions of §203.353 of this chapter pertaining to mortgagee certifications, §203.387 of this chapter pertaining to title evidence, and §203.389 of this chapter pertaining to waived title objections also apply.

* * * * *24 CFR § 206.113

24. In §206.113, paragraph (b) is revised to read as follows:

24 CFR § 206.113

**§206.113 Late charge and interest.**

* * * * *

(b) Interest. In addition to any late charge provided in paragraph (a) of this section, the mortgagee shall pay interest on any initial MIP remitted to the Secretary more than 30 days after closing, and interest on any monthly MIP remitted to the Secretary more than 30 days after the payment date prescribed in §206.111(b). Such interest rate shall be paid at a rate set in conformity with the Treasury Financial Manual.

* * * * *24 CFR § 206.116

25. A new §206.116 is added before the undesignated center heading "HUD RESPONSIBILITY TO MORTGAGORS", to read as follows:

24 CFR § 206.116

**§206.116 Refunds.**

No amount of the initial MIP shall be refundable.

24 CFR § 206.121

26. Section 206.121 is amended by revising the first sentence of paragraph (c), to read as follows:

24 CFR § 206.121

**§206.121 Secretary authorized to make payments.**

* * * * *

(c) Second mortgage. If the contract of insurance is terminated as provided in §206.133(c) and if a second mortgage has been recorded when required by § 206.27(d), all payments to the mortgagor by the Secretary (except late charges) will be secured by the second mortgage. * * *

24 CFR § 206.123

27. In §206.123, paragraph (a)(4) is revised to read as follows:

24 CFR § 206.123

**§206.123 Claim procedures in general.**

(a) * * *

(4) The mortgagee acquires title to the property by foreclosure or a deed in lieu of foreclosure and sells the property as provided in §206.125(g) for an amount which does not satisfy the mortgage balance or fails to sell the property as provided in §206.127(a)(2); or

* * * * *24 CFR § 206.125

Home Equity Conversion Mortgage Insurance Demonstration:..., 60 FR 42754-01

28. Section 206.125 is amended by revising the first sentence of paragraph (a)(2) and paragraphs (b), (d)(1), (d)(2), (g)(1), and (g)(3), to read as follows:

24 CFR § 206.125

**§206.125 Acquisition and sale of the property.**

(a) * * *

(2) After notifying the Secretary, and receiving approval of the Secretary when needed, the mortgagee shall notify the mortgagor that the mortgage is due and payable, unless the mortgage is due and payable by reason of the mortgagor's death. * * *
* * * * *

(b) Appraisal. The mortgagee shall obtain an appraisal of the property no later than 30 days after the mortgagor is notified that the mortgage is due and payable, or no later than 30 days after the mortgagee becomes aware of the mortgagor's death, or upon the mortgagor's request in connection with a pending sale. The property shall be appraised no later than 15 days before a foreclosure sale. The appraisal shall be at the mortgagor's expense unless the mortgage is due and payable. If the mortgage is due and payable, the appraisal shall be at the mortgagee's expense but the mortgagee shall have a right to be reimbursed out of the proceeds of any sale by the mortgagor.
* * * * *

(d) Initiation of foreclosure. (1) The mortgagee shall commence foreclosure of the mortgage within six months of giving notice to the mortgagor that the mortgage is due and payable, or six months from the date of the mortgagor's death if applicable, or within such additional time as may be approved by the Secretary.

(2) If the laws of the State in which the mortgaged property is located or if Federal bankruptcy law does not permit the commencement of the foreclosure within six months from the date of the notice to the mortgagor that the mortgage is due and payable, the mortgagee shall commence foreclosure within six months after the expiration of the time during which such foreclosure is prohibited by such laws.
* * * * *

(g) Sale of the acquired property. (1) Upon acquisition of the property by foreclosure or deed in lieu of foreclosure, the mortgagee shall take possession of, preserve and repair the property and shall make diligent efforts to sell the property within six months from the date the mortgagee acquired the property. Repairs shall not exceed those required by local law and, in cases where the sale is made with a mortgage insured by the Secretary or guaranteed by the Secretary of Veterans Affairs, those necessary to meet the objectives of the property standards required for mortgages insured by the Secretary. No other repairs shall be made without the specific advance approval of the Secretary. The mortgagee shall sell the property for an amount not less than the appraised value (as provided under paragraph (b) of this section) unless written permission is obtained from the Secretary authorizing a sale at a lower price.
* * * * *

(3) The mortgagee shall not enter into a contract for the preservation, repair or sale of the property with any officer, employee, owner of ten percent or more interest in the mortgagee or with any other person or organization having an identity of interest with the mortgagee or with any relative of such officer, employee, owner or person.
* * * * *24 CFR § 206.129

29. Section 206.129 is amended by revising paragraphs (d)(2)(i), (d)(2)(ii), (d)(2)(iv), (d)(3)(ii), (e)(1), and (e)(2), and by adding paragraphs (d)(2)(v) and (d)(2)(vi) to read as follows:

24 CFR § 206.129

**§206.129 Payment of claim.**
* * * * *

**Home Equity Conversion Mortgage Insurance Demonstration:..., 60 FR 42754-01**

(d) * * *

(2) The claim shall include the following items:

(i) Items listed in §203.402(a), (b), (c), (d), (e), (g), (j), (p) and (q) of this chapter.

(ii) Foreclosure costs or costs of acquiring the property actually paid by the mortgagee and approved by the Secretary, in an amount not in excess of two-thirds of such costs or $75.00, which ever is greater.
* * * * *

(iv) Costs of any appraisal obtained under §§206.125 or 206.127, provided that the appraisal was obtained after the mortgage became due and payable and that the mortgagee is not otherwise reimbursed for such costs.

 **\*42762**  (v) Reasonable payments made by the mortgagee for:

(A) Preservation and maintenance of the property;

(B) Repairs necessary to meet the objectives of the property standards required for mortgages insured by the Secretary, those required by local law, and such additional repairs as may be specifically approved in advance by the Commissioner; and

(C) Expenses in connection with the sale of the property including a sales commission at the rate customarily paid in the community and, if the sale to the buyer involves a mortgage insured by the Secretary or guaranteed by the Secretary of Veterans Affairs, a discount at a rate not to exceed the maximum allowable by the Commissioner, as of the date of execution of the discounted loan, on sales of properties acquired by the Commissioner pursuant to §§203.295 through 203.426 of this chapter.

(vi) A certification that the property is undamaged in accordance with §203.380 of this chapter.

(3) * * *

(ii) Any adjustment for damage or neglect to the property pursuant to §§ 203.377, 203.378, and 203.379 of this chapter.

(e) * * *

(1) When a mortgagee assigns a mortgage which is eligible for assignment under §206.107(a)(1), the amount of payment shall be computed by subtracting from the mortgage balance on the date of assignment the items set forth in § 203.404(b) of this chapter and any adjustments for damage or neglect to the property pursuant to §§203.377, 203.378 and 203.379 of this chapter.

(2) The claim shall also include:

(i) Reimbursement for such costs and attorney's fees as the Secretary finds were properly incurred in connection with the assignment of the mortgage to the Secretary, and

(ii) An amount equivalent to the interest allowance which will have been earned from the date the mortgage was assigned to the Secretary to the date the claim is paid, if the claim had been paid in debentures, except that if the mortgagee fails to meet any of the requirements of §206.127(c), or §206.131 if applicable, within the specified time and in a manner satisfactory to the Secretary (or within such further time as the secretary may approve in writing), the interest allowance in the payment of the claim shall be computed only to the date on which the particular required action should have been taken or to which it was extended. The provisions of §§203.405 through 203.411 of this chapter pertaining to debentures are incorporated by reference.
* * * * *24 CFR § 206.203
30. In §206.203, paragraph (b) is revised to read as follows:
24 CFR § 206.203

**§206.203 Providing information.**

* * * * *

(b) Line of credit and payment change statements. The mortgagee shall provide the mortgagor with a statement of the account every time it makes a line of credit payment. The mortgagee shall provide the mortgagor with a new payment plan every time it recalculates monthly payments.

* * * * *24 CFR § 206.205

31. In §206.205, paragraph (a) is revised to read as follows:

24 CFR § 206.205

**§206.205 Property charges.**

(a) General. The mortgagor shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner and shall provide evidence of payment to the mortgagee as required in the mortgage.

* * * * *24 CFR § 206.207

32. In §206.207, paragraph (a) is revised to read as follows:

24 CFR § 206.207

**§206.207 Allowable charges and fees after endorsement.**

(a) Reasonable and customary charges. The mortgagee may collect reasonable and customary charges and fees from the mortgagor after insurance endorsement by adding them to the mortgage balance, but only for: items listed in § 203.552(a)(6), (9), (11), (13) and (14) of this chapter; items authorized by the Secretary under §203.552(a)(12) of this chapter, or as provided at § 206.26(d); or charges and fees related to additional documents described in § 206.27(b)(10) and related title search costs.

* * * * *

Dated: July 13, 1995.

Jeanne K. Engel,

General Deputy, Assistant Secretary for Housing—Federal Housing Commissioner.
[FR Doc. 95-20221 Filed 8-15-95; 8:45 am]

BILLING CODE 4210-27-P

Footnotes

1  Section 255(g) was amended to raise the limit on HECM's insured under section 255 from 2,500 mortgages to 25,000 mortgages, and to permit HUD to insure mortgages through September 30, 1995 instead of September 30, 1991. In response to these changes, HUD eliminated the reservations system that had been adopted to insure nationwide allocation of the small number of mortgages that had been initially authorized (56 FR 16002, April 19, 1991.) No further rulemaking is needed to implement this amendment.

**End of Document**  © 2012 Thomson Reuters. No claim to original U.S. Government Works.