1  **Daniel J. Hanecak, Esq. [CSB 275161]**
   **Law Office of Daniel J. Hanecak**
2  9444 Harbour Point Drive #66
   Elk Grove, Ca 95758
3  Phone: (717) 341-6318
   Email: djhanecak@gmail.com
4

5

6  Attorney for Plaintiff
   ISABEL SANTOS, INDIVIDUALLY AND
7  AS TRUSTEE AND BENEFICIARY OF THE
   YOLANDA MARIA SANTOS TRUST

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10              **SAN FRANCISCO DIVISION**

11
   ISABEL SANTOS, INDIVIDUALLY AND    )   Case No.: 3:12-cv-03296-LB
12 AS TRUSTEE AND BENEFICIARY OF THE  )
   YOLANDA MARIA SANTOS TRUST,        )   **PLAINTIFF'S OPPOSITION TO**
13                                     )   **DEFENDANTS' MOTION FOR**
                                       )   **DISSOLVING, OR, ALTERNATIVELY,**
14         Plaintiff,                  )   **MODIFYING THE STATE COURT**
                                       )   **PRELIMINARY INJUNCTION**
15         v.                          )   **PURSUANT TO FED. R. CIV. P. 65 &**
                                       )   **COMMON LAW**
16                                     )
   REVERSE MORTGAGE SOLUTIONS, INC.;  )
17 NDEX WEST, LLC; and DOES 1 through 20, )  Date:    August 17, 2012
                                       )   Time:    11:00 a.m.
18         Defendants                  )   Dept:    C
                                       )   Judge:   Hon. Laurel Beeler (Mag. Judge)
19                                     )
                                       )
20 _____ )   Complaint Filed;  June 8, 2012
                                       )   Trial Date:       Not yet set
21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANTS' MOTION TO DISSOLVE PRELIMINARY INJUNCTION - 1

1

**Table of Contents**

2

<u>Memorandum of Points and Authorities</u>

3    I.     INTRODUCTION.....................................................................................................2

4    II.    SUMMARY OF THE ISSUES.............................................................................2

5    III.   BACKGROUND.....................................................................................................3

6

7          A.  THE HECM PROGRAM AND NOTICE REQUIREMENTS......................3

8               1.  Notice Requirements in the HECM Documents............................4

9               2.  Notice Requirements in the HECM Regulations..........................5

10              3.  Notice Requirements in the HECM Handbook............................7

11

12        B.  STATEMENT OF FACTS......................................................................8

13   IV.    ARGUMENT............................................................................................................12

14        A.  LEGAL STANDARD...............................................................................12

15        B.  THE COMPLAINT SHOWS A LIKELIHOOD OF SUCCESS ON THE MERITS,
          SPECIFICALLY UPON THE DECLARATION OF THE PARTIES OBLIGATIONS......13

16

17              1.  There is an Actual Controversy Between the Parties...................13

18        C.  THE COMPLAINT SHOWS A LIKELIHOOD OF SUCCESS BECAUSE THE
          CONTRACT WAS BREACHED..........................................................................13

19

20              1.  The Contract Incorporates HUD's Regulations........................13

21              2.  Defendants Incorrectly Interpret Their Notice Obligations under the HECM
22                  Documents and California law.....................................................15

23              3.  The Complaint Shows a Likelihood of Success that RMS and NDEX Breached the
24                  Contract and Violated California Law by Issuing a Notice of Default that
                    Misrepresented Plaintiff's Contractual and Legal Rights Therefore Slandering Title
25                  and Giving Rise to a Cancellation of the Instrument..................18

26                      a)  Defendants Breach of the Contract Renders the Notice of Default Void and
27                          Ineffective under California Law.......................................19

28

    4.   The Complaint Shows a Likelihood of Success for Breach of Contract for Defendants' Refusal to Allow the Santos Estate to Sell the Property to Plaintiff under the 95% Rule............................................................................20

  D.  PLAINTIFF HAS DEMONSTRATED A LIKELIHOOD OF IRREPARABLE HARM....21

  E.  THE BALANCE OF EQUITIES FAVORS PLAINTIFF........................................22

  F.  FORECLOSURE IS NOT IN THE PUBLIC INTEREST....................................22

  G.  THE INJUNCTION SHOULD NOT BE MODIFIED, ALTERNATIVELY, PLAINTIFF SHOULD ONLY BE REQUIRED TO PAY A NOMINAL BOND..................................24

V.     CONCLUSION..............................................................................................25

## TABLE OF AUTHORITIES

### *Cases*

A&M Records v. Napster, Inc.,
    284 F.3d 1091, 1098 (9th Cir. 2002).......................................................12

Amer. Intern. Specialty Lines Ins. Co. v. U.S.,
    No. CV-09-01734, 2010 WL 2635768, *5 (C.D. Cal. June 30, 2010)........................15

Amoco Prod. Co. v. Village of Gambell, Alaska,
    480 U.S. 531, 542 (1987).......................................................................12

Angell v. Superior Court
    73 Cal. App. 4th, 691, 699 (1999)...........................................................19

Auer v. Robbins,
    519 U.S. 452, 461 (1997).......................................................................17

Archibald Estate v. Matteson,
    5 Cal.App. 441 (1907)..........................................................................23

Avila v. Stearns Lending, Inc.,
    No. CV 08-0419-AG(CTx) 2008 WL 1378231, *3 (C.D. Cal. April 7, 2008)..................22

BayPoint Mortgage Corp. v. Crest Premium Real Estate,
    168 Cal. App. 3d 818, 831 (1985)............................................................19

BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, LLC,
    425 F.3d 964, 971 (11th Cir. 2005)...........................................................24

Bowman v. Bowman,
    125 Cal.App. 602 (1932).......................................................................23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>Caribbean Marine Services Co., Inc. v. Baldridge,</u>
    844 F.2d 668, 674 (9th Cir. 1988).................................................................22

<u>Christensen v. Harris County,</u>
    529 U.S. 576, 601 (2000)..................................................................................17

<u>Collum v. Edwards,</u>
    578 F.2d 110, 112 (5th Cir. 1978)....................................................................12

<u>Demarest v. Quick Loan Funding, Inc.,</u>
    No. CV 09-01687 MMM (Ssx) 2009 WL 940377, *9 (C.D. Cal April6, 2009)..........................22

<u>FoodComm Int'l v. Barry,</u>
    328 F.3d 300, 304 (7th Cir. 2003)....................................................................22

<u>GoTo.com, Inc. v. Walt Disney Co.,</u>
    202 F.3d 1199, 1211 (9th Cir. 2002)................................................................24

<u>Harris v. United States Fid. & Guar. Co., Inc.,</u>
    655 F.2d 850, 852 (5th Cir. 1978)....................................................................13

<u>Kaepa, Inc. v. Achilles Corp,</u>
    76 F.3d 624, 628 (5th Cir. 1996)......................................................................24

<u>Miller v. Cote,</u>
    127 Cal. App. 3d 888, 894 (1982)..............................................................19, 20

<u>Nichols v. Deutsche Bank Nat. Trust Co.,</u>
    Civil No. 07cv2039-L(NLS), 2007 WL 4181111, *3 (S.D. Cal. Nov. 21, 2007)......................22

<u>Norfolk & W. Ry. Co. v. American Train Dispatchers Ass'n,</u>
    499 U.S. 117, 130 (1991)............................................................................14, 15

<u>Ocean View Tower Assoc., Ltd. Partnership v. U.S.,</u>
    88 Fed. Cl. 169, 176 (Fed. Ct. Cl. 2009).........................................................14

<u>Pharmaceutical Soc. of State of New York, Inc. v. New York State Dept. of Social Services,</u>
    50 F.3d 1168, 1174-1175 (2nd Cir. 1995).......................................................24

<u>RoDa Drilling Co. v. Siegal,</u>
    552 F.3d 1203, 1215 (10th Cir. 2009)..............................................................24

<u>Ross-Simons of Warwick, Inc. v. Baccarat, Inc.,</u>
    102 F.3d 12, 18 (1st Cir. 1996)........................................................................22

Sardi's Restaurant Corp. v. Sardie,
        755 F.2d 719, 726 (9th Cir. 1985)..........................................................................22

Scotts Co. v. United Industries Corp,
        315 F.3d 264, 284 (4th Cir. 2002)..........................................................................22

Societe de Conditionnement on Aluminum v. Hunter Eng. Co., Inc.,
        655 F.2d 938, 943 (9th Cir. 1981)..........................................................................13

Sweatt v. Foreclosure Co.,
        166 Cal. App. 3d 273, 278 (1985)..........................................................................20

U.S. Phillips Corp. v. KBC Bank N.V.,
        590 F.3d 1091, 1094 (9th Cir. 2010)......................................................................12

Winter v. Natural Resources Defense Council, Inc.,
        555 U.S. 7, 18 (2008)........................................................................................12, 22

Wrobel v. S.L. Pope & Assoc.,
        No. 07CV1591 IEG (BLM) 2007 WL 2345036, *1 (S.D. Cal. June 15, 2007)........22


***Statutes and Regulations***

United States Code
        12 U.S.C. § 1715z-20...........................................................................3, 15, passim

28 U.S.C. § 2201(a)...........................................................................................................13

Code of Federal Regulations
        24 C.F.R. § 206.1 *et seq*...............................................................................13, 18
        24 C.F.R. § 206.3..................................................................................................6, 7
        24 C.F.R. § 206.27..............................................................................................3, 6
        24 C.F.R. § 206.123..................................................................................................5
        24 C.F.R. § 206.123(a)..........................................................................................4, 6
        24 C.F.R. § 206.123(b)..............................................................................4, 6, passim
        24 C.F.R. § 206.125..............................................................................................3, 7
        24 C.F.R. § 206.125(a)..............................................................................................4
        24 C.F.R. § 206.125(a)(2)................................................................................passim
        24 C.F.R. § 206.125(c)......................................................................................passim
        24 C.F.R. § 206.125(f).............................................................................................4

Civ. Code § 2924, *et seq*........................................................................................19, 20

Civ. Code § 3387...............................................................................................................22

Civil Code § 3517..............................................................................................................22

Fed. R. Civ. P. 65(c)..................................................................................................24

### *Secondary and Other Authorities*

60 Fed. Reg. 42754-01..........................................................................................7, 17

HECM Handbook 4235,1 REV-1, § 1-3(c)...............................................................3

HUD Handbook 4330.1 REV-5, § 13-33..........................................................8, 16, 17

I.      **INTRODUCTION**

Plaintiff was granted a preliminary injunction by the Hon. Judith S. Craddick of the Superior Court of Contra Costa County on June 28, 2012.[1]  Defendants herein removed this matter shortly thereafter.  Plaintiff demonstrated at the State Court level that there is a likelihood she will prevail on the merits because of the breaches made by Defendants under the Home Equity Conversion Mortgage ("HECM") contract, California law, HECM Regulations and the HECM Handbook and that imminent irreparable harm exists with the potential loss of her home.  Further, as Defendants refuse to follow the federal regulations that are promulgated specifically for their industry, Plaintiff can show a likelihood that the equities tip in her favor.  Finally, it is in the public interest for the Court to require that Defendants follow the regulations of their industry, otherwise they will be able to pick and choose— such as here—which ones they prefer to follow, completely undermining the foundation of the HECM program.

Plaintiff requests that the Court use its discretion to maintain the status quo of the underlying State Court's order and not to demand a bond for two reasons: (1) it is within the public interest exception; and, (2) the demand defendants have made would make injunctive relief ineffectual. Alternatively, Plaintiff requests that the Court use its discretion to make the bond nominal.

II.     **SUMMARY OF THE ISSUES**

Whether:

1.  Plaintiff is able to demonstrate a likelihood of success on the merits so as not to disturb the State Court issued preliminary injunction;

2.  Plaintiff can demonstrate irreparable harm resulting from the trustee's sale;

3.  The balance of the equities favors Plaintiff;

4.  The foreclosure of a Home Equity Conversion Mortgage on the successor or heir, who resides in the Property as her permanent residence, is in the public interest.

///

///

---

[1] A copy of the Order is attached as Exhibit A.

1    III.    **BACKGROUND**

2           **A.  THE HECM PROGRAM AND NOTICE REQUIREMENTS**

3           The HECM is a unique mortgage product for a number of reasons, including the fact that it is a

4    non-recourse mortgage that prohibits the lender from seeking a deficiency judgment against a borrower

5    if the proceeds of a sale of the mortgaged property are insufficient to repay the loan.  12 U.S.C.

6    §1715z-20(d)(7).  "The borrower shall have no personal liability for the payment of the mortgage

7    balance."  24 C.F.R. §206.27(b)(8).  Because there is no personal liability, HUD determined from the

8    outset that, "the HECM borrower (or his or her estate) will never owe more than the loan balance or the

9    value of the property, whichever is less."  HECM Handbook §4235.1 REV-1.  (Plaintiff's Request for

10   Judicial Notice ("RJN"), Ex. A, HECM Handbook Section 1-3(c)).

11          Because the lender can never collect more than the value of the HECM secured property, the

12   regulations provide streamlined procedures to satisfy the mortgage:

13          a.      The property may be sold *at any time* for the lesser of the mortgage balance or the
                    appraised value of the property; the mortgagee must satisfy the mortgage on these
14                  terms provided the net proceeds from the sale are paid to the mortgagee.   24
                    C.F.R. §206.125(c).
15

16          b.      If the mortgage is due and payable, the property may be sold for the lesser of the
                    mortgage balance of 95% of its appraised value; the mortgagee must satisfy the
17                  mortgage on these terms provided the net proceeds from the sale are paid to the
                    mortgagee. Id.
18

19          c.      In order to avoid delays and additional expense of foreclosure action, a mortgagee
                    must accept a deed in lieu of foreclosure from the mortgagor.   24 C.F.R.
20                  §206.125(f).

21          Lenders are protected from potential losses from these non-recourse provisions through the

22   mortgage premiums that are paid by borrowers.  HUD insures the HECM program.  The insurance

23   premiums: (1) guarantee borrowers that neither they nor their heirs will be obliged to repay the

24   mortgage for more than 95% of the value of the property. 24 C.F.R. §§206.123(b) & 206.125(c); and,

25   (2) guarantee lenders that, even if the property values decrease over the term of the mortgage, they will

26   be repaid the full mortgage balance.  24 C.F.R. §206.123(a)(3) & (4) (insurance claim if "mortgagor

27   sells property for less than the mortgage balance," or "mortgagee acquires title by foreclosure...and

28   sells for" less than the mortgage balance).

1    As administrator of the HECM program, HUD publishes a Handbook and Model HECM Notes,

2    Deed of Trusts/Mortgages[2], and a HECM Loan Agreement to be used in all transactions.[3]  The

3    requirements of the regulations are embodied in the mortgage documents and explained in the

4    Handbook.

5    **1.  Notice Requirements in the HECM Documents.**

6    Lenders must notify borrowers and estates of the rights accorded them by federal law prior to

7    initiating foreclosure.  24 C.F.R. §206.125(a)(2); 206.123(b).  This is made clear in the Deed of Trust.

8    Paragraph 9 of the Deed of Trust requires notice when an event constituting "Grounds for Acceleration

9    of the Debt" occurs.  First, the "Lender may require immediate payment" under certain circumstances,

10   including the death of a borrower.[4]  Id.  While ¶9(d) initially exempts lenders from the impossibility of

11   providing notice to a deceased borrower that the loan is due and payable, its second sentence is not so

12   restricted. Id.  Regardless of the event that terminates the HECM, the "Lender shall not have the right

13   to commence foreclosure until Borrower has had thirty (30) days after notice to either" correct the

14   matter, repay the full mortgage balance, **sell the property for 95% of its appraised value**, or provide

15   the lender a deed in lieu of foreclosure.  Id.

16   Paragraph 20 of Ms. Santos' Deed of Trust also requires notice: "If Lender invokes the power

17   of sale, Lender shall execute...a written notice of the occurrence of an event of default...Lender or

18   Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to other persons

19   prescribed by applicable law." Id., p. 6.  Paragraph 17 states, "This Security Instrument **shall be

20   governed by Federal law and the law of the jurisdiction in which the Property is located**." Id.

21   (Emphasis added.)

22   These notice requirements are evidenced in other HECM documents as well.  The HECM Note

23   embodies the promise to repay the debt and is secured by the Deed of Trust.  Plaintiff's RJN, Ex. B.

24   

25   [2] The words "deed of trust" and "mortgage" are used interchangeably herein.

26   [3] These documents are standardized but are adapted slightly to accommodate varying state laws and can be found in
27   Plaintiff's RJN.

28   [4] Aside from the death of the borrower, these circumstances or terminating events include the sale of the property; a change
     of principal residence by the borrower; or, the borrower's absence from the home for health reasons for more than 12
     months.  24 C.F.R. §206.27(c).

The borrower is not obliged to repay until "receipt of a notice by Lender" requiring such payment.  Id. at ¶4(A).  Under the HECM Loan Agreement, executed by the borrower, the lender, *and HUD*, the lender is obliged to continue making loan advances until it issues a notice that the loan is due and payable.  ("Lender shall have no obligation to make Loan Advances if Lender has notified Borrower that immediate payment in full to Lender is required under one or more of the Loan Documents...") Plaintiff's RJN, Ex. C at HECM Loan Agreement ¶4.1.

## 2.  Notice Requirements in the HECM Regulations.

As noted above, the HECM regulations explicitly state that a borrower's estate may satisfy the HECM by selling the property for lesser of the mortgage balance or 95% of the appraised value:

> Whether or not the mortgage is due and payable, the mortgagor may sell the property for at least the lesser of the mortgage balance or the appraised value...If the mortgage is due and payable...the mortgagor may sell the property for at least the lesser of the mortgage balance or 5% under the appraised value.  The mortgagor shall satisfy the mortgage of record...in order to facilitate the sale provided...all the net proceeds from the sale are paid to the mortgagee.

24 C.F.R. §206.125(c).  The regulations specifically provide that the lender can make an insurance claim for any amount recovered from such a sale that is less than the mortgage balance.  24 C.F.R. §206.123, titled, "Claim procedures in general," explains that lenders may submit claims for insurance benefits if, among other situations, "[t]he mortgagor sells the property for less than the mortgage balance[.]"

The right to sell the property on these terms is available both to the original mortgagor and to the estate of a deceased mortgagor.[5]

> (b) *Expanded definition of mortgagor*.  The term *mortgagor* as used in this subpart shall have the same meaning as stated in 24 C.F.R. §206.3, except that in reference to a sale by the mortgagor, the term **shall also mean the mortgagor's estate or personal representative**.

24 C.F.R. §206.123(b) (Emphasis added).

---

[5] As Defendants point out, the general definition of "mortgagor" in the HECM regulations is defined as "each original borrower under a mortgage." 24 C.F.R. §206.3. However, in reference to a sale by the mortgagor, the term shall also mean the mortgage's estate or personal representative. This appears through Subsection C of the regulations, including 24 C.F.R. §206.101-206.133.  24 C.F.R. §206.123(b).

1    The regulations set forth the actions lenders must take to acquire and sell terminated HECM

2  mortgages before they can file a claim for HECM insurance coverage.

3           After notifying the Secretary, and receiving approval of the Secretary when
            needed, the mortgagee shall notify the mortgagor that the mortgage is due and
4           payable, unless the mortgage is due and payable by reason of the mortgagor's
            death.   The mortgagee *shall require* the mortgagor to: (i) pay the mortgage
5           balance, including any accrued interest and MIP, in full; (ii) sell the property for
            at least 95% of the appraised value...with the net proceeds of the sale to be
6           applied towards the mortgage balance; or (iii) provide the mortgagee with a deed
            in lieu of foreclosure.   The mortgagor shall have 30 days in which to comply with
7           the preceding sentence, or correct the matter which resulted in the mortgage
            coming due and payable, before a foreclosure proceeding is begun.
8

9

10  24 C.F.R. §206.123(a)(2) (Emphasis added).  The language of ¶9(d) of the Deed of Trust closely, if not

11  identically tracks this regulation.  As discussed above regarding ¶9(d), the first sentence of Section

12  205.123(a)(2), which exempts lenders from the impossibility of notifying a deceased borrower that the

13  mortgage is due and payable, is followed by a sentence that addresses how and on what terms the

14  mortgage may be satisfied.  Whether the mortgage is terminated because of the borrower's death, a sale

15  of the property, or other terminating event specified in 24 C.F.R. §206.27(c), it must be satisfied.  To

16  this end, Section 125(a)(2) states the mortgagee "*shall require*" the mortgagor to select one of the three

17  options.  Notice is the mechanism through which lenders "require" the mortgagor to make this choice

18  and is a predicate to the filing of an insurance claim with HUD.

19          The history of Section 206.125 demonstrates that HUD has always required notice, including in

20  the event of a mortgagor's death.[6]  HUD amended 24 C.F.R. §206.125(a)(2) in 1995 to "relieve the

21  mortgagee from notifying the *mortgagor* when the mortgage is due and payable because the mortgagor

22  is deceased."  (Emphasis added). Plaintiff's RJN, Ex. E, 60 Fed. Reg. 42754-01 at 5.  HUD did this for

23  a practical reason: "...the term 'mortgagor' is used in the HECM regulations as referring only to the

24

25  [6] While most of the HECM regulations have remained unchanged over the years since their original issuance in 1989, HUD
    made a change to Section 206.125(a) in 1995.  The 1989 version of 24 C.F.R. §206.125(a) stated:
26          (2) After notifying the secretary, and receiving approval of the Secretary when needed, the mortgagee shall
            notify the mortgagor that the mortgage is due and payable. The mortgagee shall require the mortgagor to (i)
27          pay the mortgage balance, including any accrued interest and MIP, in full; (ii) sell the property for at least
            95% of the appraised value as determined under §206.125(b), with the net proceeds of the sale to be
28          applied towards the mortgage balance; or (iii) provide the mortgagee with a deed in lieu of foreclosure. The
            mortgagor shall have 30 days in which to comply with the preceding sentence, or correct the matter which
            resulted in the mortgage coming due and payable, before a foreclosure proceeding is begun.

OPPOSITION TO DEFENDANTS' MOTION TO DISSOLVE PRELIMINARY INJUNCTION - 6

1    original mortgagor or mortgagors, not to their successors in interest, so that notice to the mortgagor

2    after death would be an impossibility." Id.; *see also*, 24 C.F.R. §206.3.  However, because of the

3    expanded definition of "mortgagor" referred to above, this change had no effect on the established right

4    of the estate of a deceased mortgagor to satisfy the HECM by selling the property for 95% of its

5    appraised value once the mortgage becomes due and payable.  "If the mortgage becomes due and

6    payable...the mortgagor [including the estate] may sell the property for at least the lesser of the

7    mortgage balance of 5 percent under the appraised value." 24 C.F.R. §§206.125(c); 206.123(b) (as

8    used in sections 206.101 – 206.133, "in reference to a sale by the mortgagor," the term "mortgagor"

9    shall also mean the mortgagor's estate or personal representative").

10           Nor, as HUD's comment makes clear, did the amendment relieve the mortgagee of the

11   obligation to provide "adequate notice to an executor or other party responsible for the property before

12   a foreclosure is commenced."  Plaintiff's RJN, Ex. E, 60 Fed. Reg. 42754-01 at 5.  The amended

13   Section 206.125(a)(2) still demands that "the mortgagee shall require the mortgagor" to choose one of

14   the three options to satisfy the HECM: repayment of the full mortgage balance, sale of the property for

15   95% of its value, or a deed in lieu. 24 C.F.R. §206.123(a)(2).

16           The regulations' expanded definition of "mortgagor," applicable only when referring to a sale

17   of the property by the "mortgagor," allows lenders to submit claims for payment where "[t]he *mortgagor*

18   [including a borrower or their estate] sells the property for less than the mortgage balance and the

19   mortgagee releases the mortgage of record to facilitate the sale, as provided in §206.125(c)."  24 C.F.R.

20   §206.123(a)(3) (Emphasis added).  This expanded definition is also consistent with the amendment to

21   Section 206.125(a)(2).  While a lender/mortgagee is exempt from providing notice to a deceased

22   borrower/"mortgagor," when it comes to matters relating to the sale of the property, the lender must

23   provide notice to the "mortgagor"/estate regarding its rights and options, including a sale under the

24   95% rule.  24 C.F.R. §§206.123(b) & 206.125(a)(2).

### 3.  Notice Requirements in the HECM Handbook.

25           The HECM Handbook, HUD's interpretation of its regulations, describes the notice

26   requirements in greater detail.  It states, "For a due and payable mortgage, the mortgagee must [i]ssue a

27   Repayment Notice."  Plaintiff's RJN Ex. A, at 4330.1 REV-5, §13-33.  The notice must go to the

mortgagor or to the mortgagor's estate, state that the HECM is due and payable, provide the outstanding balance on the loan, and give the following instructions:

1.     That the debt must be paid in full; or the property must be sold for the lesser of the debt, including shared appreciation, if any, or 95% of the appraised value; or good marketable title to the property must be deeded to the mortgagee.

2.     That the mortgagor or the mortgagor's estate may request an appraisal, at his or her own expense, if an estimate of the property's current value is desired.

3.     That if none of the actions in paragraph A. 1. above are taken in 30 Days, foreclosure will be initiated by the mortgagee within 3 months, but not less than 1 month.

Id., Section 4330.1 REV-5, §13-33.

## B.  STATEMENT OF FACTS

On April 20, 2009, the Yolanda Maria Santos Trust signed a reverse mortgage deed of trust and note with Urban Financial Group.  The Trustor on the Deed of Trust is listed as "Yolanda Maria Santos, Trustee of the Yolanda Maria Santos Trust."  Complaint ¶34, Ex. B.  The note that accompanies the deed states under Section 1, "Borrower" is defined as "each person signing at the end of the Note."  The signatures at the bottom of both the Note and Deed are Yolanda Maria Santos as an individual and Yolanda Maria Santos, Trustee of the Yolanda Maria Santos Trust.  Complaint ¶35-37, Ex. C.

During the year of 2010, Plaintiff moved into the Property as her primary residence.  Shortly thereafter, on February 7, 2011, Ms. Santos passed away.  At the time of her death, the HECM balance was approximately $362,000.  The current value of the home, as estimated by the real estate website Zillow, is $288,600.  Complaint ¶43.

On March 7, 2011, Plaintiff began a string of phone calls to Reverse Mortgage Solutions, Inc. ("RMS")—the alleged owner and servicer of the HECM.  Plaintiff called to let them know her mother had passed away.  The RMS representative stated "oh yes, we know."  At the time of the call, Plaintiff had not received any communication from RMS. Complaint ¶44.

On April 5, 2011, HUD issued MORTGAGEE LETTER 2011-16, which rescinded Mortgagee Letter 2008-38 effective as of that date.  In this letter, HUD withdrew the improper changes detailed in

a complaint filed by the American Association of Retired Persons against HUD[7]; these allegations stated that spouses and heirs were not being given the proper right to re-purchase properties and that the change in 2008 was contrary to public policy.  HUD also directed lenders to halt pending foreclosure actions against the plaintiffs in this matter.  Plaintiff's RJN, Ex. D.

On April 25, 2011, Plaintiff called RMS to let them know that she planned to stay in the Property and needed information about how to make re-payment arrangements.  Plaintiff was told to call back and speak to "Ms. Johnson," who had the file.  On May 16, 2011, Plaintiff called RMS and asked to speak with Ms. Charlotte Johnson, ext. 1677.  Plaintiff was transferred to her voicemail, left a message and never received a return call.  Complaint ¶46-47.

On June 6, 2011, Plaintiff attempted to contact Ms. Johnson again.  Plaintiff was able to reach her this time and conveyed that she was trying to make re-payment arrangements.  Ms. Johnson told Plaintiff that she had time to get over the death, but that her only options were either to let the Property be foreclosed or a short sale and to have someone other than Plaintiff buy the Property—re-payment was not an option.  Ms. Johnson conveyed that her request for a re-payment plan was refused.  Finally, Ms. Johnson directed Plaintiff to contact HUD.  Plaintiff subsequently contacted HUD and spoke with a representative who said, "why are you calling us? We have nothing to do with this."  Plaintiff immediately called back Ms. Johnson, got her voicemail and left a message.  Complaint ¶48.

On June 16, 2011, Plaintiff again told Ms. Johnson that she was ready to make re-payment.  At this point, Ms. Johnson told Plaintiff to get a buyer for the Property because they did not want payment arrangements, they wanted payment in full.  Plaintiff conveyed to Ms. Johnson that she had worked for Bank of America for 30 years and was aware as to how loans are serviced and insured.  Plaintiff told Ms. Johnson she was aware that even a short sale would not be a true loss to RMS because of HUD's insurance on the Property.  Plaintiff was again rebuffed at each re-payment attempt and told that she could sell to another party or that they would just foreclose.  Complaint ¶49.

---

[7]  On March 8, 2011, a suit was filed against HUD and alleged that hundreds, and possibly thousands, of seniors whose spouses obtained HUD-insured reverse mortgages on their homes were facing foreclosure due to improper changes in HUD's rules governing reverse mortgages. These changes conflicted with the authorizing legislation at the time that the senior homeowners took out their loans.  In addition, the suit claims that HUD completely ignored the requirements of the Administrative Procedures Act, which requires an opportunity for public comment and debate prior to changing such rules.

1    On July 18, 2011, Plaintiff called RMS, spoke with Ms. Johnson, and told her that she was

2    attempting to obtain financing to purchase the Property.  Ms. Johnson responded that an extension

3    would need to be requested from HUD to wait for a purchase agreement.  Complaint ¶50.

4    On August 15, 2011, Plaintiff called to see if the extension had been requested and/or approved.

5    Ms. Johnson told Plaintiff that she "should hurry, because I don't know if it will be approved."

6    Plaintiff again re-iterated that she knew this would not be a true loss to RMS and that she wanted to

7    simply begin the re-payment process.  Plaintiff offered to pay the full amount that was due on the note,

8    even though she knew it was significantly above what the market value of the Property was. Complaint

9    ¶51.

10    On October 17, 2011, Plaintiff called Ms. Johnson to notify RMS that their cooperation was

11    necessary and she was willing to put a re-payment plan into place.  Plaintiff again offered to pay the

12    full amount that was due on the note; even though she knew it was significantly above what the market

13    value of the Property was. Complaint ¶52.

14    On November 14, 2011 and December 12, 2011, Plaintiff contacted Ms. Johnson, left a message

15    and was not given a return call.  Complaint ¶53.

16    On January 9, 2012, Plaintiff again called RMS and spoke with customer service.  Plaintiff

17    explained her situation and that she was willing to begin re-payment.  The representative told her,

18    "well, we are going to foreclose."  Complaint ¶54.

19    On February 21, 2012, NDEX West, LLC ("NDEX") recorded a Notice of Default that stated

20    the amount owing was $320,750.96.   Nothing in the notice informs Plaintiff or the estate that it can sell

21    the property for 95% of its appraised value or deed in lieu.  The Notice of Default stated, "THE

22    FAILURE TO PAY THE ENTIRE UNPAID PRINCIPAL BALANCE PLUS ACCRUED INTEREST

23    THEREON WHICH BECAME IMMEDIATELY DUE AND PAYABLE WHEN BORROWER DIED

24    AND THE PROPERTY CEASED TO BE THE PRINCIPAL RESIDENCE OF ANY SURVIVING

25    BORROWER."   Complaint ¶55, Ex. H.

26    On February 27, 2012, Plaintiff received 13 Notices of Default in the mail, all certified.  The

27    next day, on February 28, 2012, Plaintiff contacted NDEX, per the Notice of Default, to try to speak to

28    the attorney serving as trustee.  NDEX refused to talk to Plaintiff unless she could prove she was the

1   heir.  Plaintiff was told to call back in two days to see if her paperwork was received.  The next day,

2   Plaintiff called RMS and was sent to Ms. Johnson's voicemail.  Plaintiff's message and call were not

3   returned.  Complaint ¶59-61.

4        On March 2, 2012, Plaintiff called NDEX again.  The NDEX representative stated that they had

5   no information to give her other than there was no sale date yet scheduled.  On March 5, 2012, Plaintiff

6   again called RMS and spoke with Ms. Johnson.  Ms. Johnson told her that time had run out and she

7   needed to move out.  RMS was moving forward with the foreclosure.  Plaintiff re-iterated that she was

8   ready and willing to enter a re-payment plan.  Ms. Johnson was not receptive and again repeated to

9   Plaintiff that she needs to move out.  On March 29, 2012, NDEX recorded a Substitution of Trustee

10  that allegedly substituted them as trustee.  Complaint ¶62-64, Ex. I.

11       On April 2, 2012, Plaintiff called RMS and asked to speak to a short sale department or the

12  legal department.  Plaintiff was told that neither existed.   On April 23, 2012, Plaintiff called and again

13  spoke with customer service and explained her situation.  Customer service told Plaintiff to "call HUD

14  again."  Plaintiff explained that she had already contacted HUD per their suggestion and was told they

15  were not involved.  The customer service representative flatly told Plaintiff that her only option was to

16  move out.   Complaint ¶65-66.

17       On May 14, 2012, Plaintiff met with Elliot Abrams, Esq. to contact RMS on her behalf.

18  Plaintiff and Mr. Abrams attempted to speak with the legal department, but were unable. Complaint

19  ¶67.  On May 17, 2012, Plaintiff had a conference call with Mr. Abrams and RMS representative

20  Andrea Victorian, ext. 7856, where she told Mr. Abrams RMS would consider a short sale to someone

21  other than Plaintiff, but nothing else.  Complaint ¶68.  On May 22, 2012, a Notice of Trustee's Sale was

22  posted on Plaintiff's door.  Complaint ¶69.  On May 25, 2012, Plaintiff's counsel sent a letter to both

23  RMS and NDEX notifying them that serious defects in the notice procedures and chain of title existed

24  in the foreclosure process.  Complaint ¶70, Ex. F.

25       On June 5, 2012, Plaintiff and counsel made multiple phone calls to HUD to find out whether

26  the Santos Trust loan was owned by Ginnie Mae.  In the course of the run-around by HUD, Plaintiff

27  and counsel finally were able to speak with supervisor Rafael, ext. 7026.  During this call, Rafael told

28  Plaintiff that he is not able to pull anything up on her loan.  All HUD can pull up was that the originator

1  was Twin Capital; that RMS is the current owner and servicer and that the reverse mortgage is insured

2  by HUD.  Plaintiff told Rafael that she was directed to contact HUD by RMS.  Rafael told Plaintiff that

3  "whoever told you to call HUD was blowing you off because they know we don't know anything."

4  Complaint ¶71.

5       On June 6, 2012, Plaintiff's counsel sent a second notice to RMS and NDEX notifying them

6  that they were in potential violation of HECM Regulations and that the Notice of Default and Notice of

7  Trustee's Sale are void and should be cancelled immediately.  Complaint ¶72, Ex. K.  Plaintiff then

8  applied for and was granted a temporary restraining order by the Hon. Judith S. Craddick of the

9  Superior Court of Contra Costa County.  Judge Craddick then granted Plaintiff's request for

10  preliminary injunction on June 26, 2012 and signed the order on June 28, 2012.

11  **IV.    ARGUMENT**

12       **A.  LEGAL STANDARD FOR MOTION FOR PRELIMINARY INJUNCTION**

13       A plaintiff who seeks a preliminary injunction must establish that: (1) he is likely to succeed on

14  the merits; (2) there is a likelihood of irreparable harm in the absence of preliminary relief; (3) the

15  balance of equities tips in his favor; and, (4) an injunction is in the public interest.  Winter v. Natural

16  Resources Defense Council, Inc., 555 U.S. 7, 18 (2008).  An injunction is never issued as a matter of

17  course, as the court must balance the competing claims of injury and consider the effect on both parties.

18  Amoco Prod. Co. v. Village of Gambell, Alaska, 480 U.S. 531, 542 (1987).

19       Although a preliminary injunction is a final order for appeal purposes, the court is still given the

20  power to modify or dissolve the injunction on consideration of new facts.  Collum v. Edwards, 578

21  F.2d 110, 112 (5th Cir. 1978); A&M Records v. Napster, Inc., 284 F.3d 1091, 1098 (9th Cir. 2002).  A

22  limitation does exist however: the district court may not modify a preliminary injunction *nunc pro tunc*

23  retroactively to expand or vitiate rights parties have already accrued under the injunction.  U.S. Phillips

24  Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010).

25  ///

26  ///

27  ///

28  ///

**B. THE COMPLAINT SHOWS A LIKELIHOOD OF SUCCESS ON THE MERITS, SPECIFICALLY UPON THE DECLARATION OF THE PARTIES OBLIGATIONS**

**1. There is an Actual Controversy Between the Parties**

Defendants argue that Plaintiff is not entitled to seek a declaration relating to the parties' rights and obligations under the HECM statute and regulations, 12 U.S.C. § 1715z-20 and 24 C.F.R. § 206.1 *et seq*., because those laws do not provide a private right of action entitling a plaintiff to claim directly under those laws. The contention misses the point.

In order to determine the parties' rights and obligations under the contract, it is necessary to ascertain their rights and obligations under the HECM laws that are incorporated into the contract and thus define the *contractual* bargain struck by the parties. Though the declaratory relief cause of action was brought under California state law, the Declaratory Judgment Act broadly provides that the Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The remedy promotes both judicial and real-world efficiency, by allowing the parties to avoid ongoing harm by obtaining speedy judicial determination of their rights than waiting and addressing claims only retrospectively. See, e.g., Societe de Conditionnement on Aluminum v. Hunter Eng. Co., Inc., 655 F.2d 938, 943 (9th Cir. 1981). It is also well-settled that the declaratory judgment need not resolve the parties' entire dispute. See Harris v. United States Fid. & Guar. Co., Inc., 655 F.2d 850, 852 (5th Cir. 1978).

Here, determination of the Defendants' obligations under the statute and regulations clearly governing their conduct and incorporated into the contracts at issue will clarify the ongoing obligations of Defendants to Plaintiff, and will help guide the conduct and expectations of Defendants to avoid any further harm to Plaintiff. It is thus irrelevant whether Plaintiff has a private right of action under the statute or regulations directly because the Court is clearly empowered to adjudicate the legal obligations underlying the contractual dispute at issue here.

**C. THE COMPLAINT SHOWS A LIKELIHOOD OF SUCCESS BECAUSE THE CONTRACT WAS BREACHED**

**1. The Contract Incorporates HUD's Regulations.**

Using the above contention, Defendants claim that Plaintiff is barred from bringing *any* action to protect her family home. Defendants essentially state that no one can challenge them—this begs the

1  inquiry—why were the regulations even made in the first place?  However, the case used by

2  Defendants for the proposition that there is no private right of action is distinguishable.  The Court in

3  <u>Roberts</u> held that the plaintiff had no private right of action to enforce the "<u>unpublished HUD</u>

4  <u>Handbook</u>" that was the "interpretation" of a HUD regulation (24 C.F.R. § 203.9).  <u>Roberts v.</u>

5  <u>Cameron-Brown Co.</u>, 556 F.2d 356, 361 (5th Cir. 1977).  "HUD had chosen not to publish the

6  Handbook, thus prohibiting it from having the force and effect of law..."  <u>Id.</u>  In the instant case,

7  Plaintiff does not rely solely on what is put forth in the HUD Handbook, but rather the HECM

8  documents, California law, codified HECM Regulations (24 C.F.R. § 206.1 *et seq*) as well as those in

9  the Handbook.  In addition, this case was decided ten years before the HECM program even existed.

10       The only additional authority cited by Defendants were all unpublished cases citing to another

11  unpublished case from the Northern District of Texas, contending that the regulations cannot be

12  incorporated into the Deed of Trust and Note.  This is incorrect.  First, there is no required "express

13  clause" to incorporate the regulations into the contract.  It is well settled that "[l]aws which subsist at

14  the time and place of the making of a contract…enter into and form a part of it, as fully as if they had

15  been expressly referred to or incorporated in its terms," <u>Norfolk & W. Ry. Co. v. American Train</u>

16  <u>Dispatchers Ass'n</u>, 499 U.S. 117, 130 (1991), and also perfectly clear that HUD regulations "have the

17  force of law."  <u>Wright v. City of Roanoke Redev. and Hous. Auth.</u>, 479 U.S. 418, 431 (1987).  For

18  example, in <u>Ocean View Tower Assoc., Ltd. Partnership v. U.S.</u>, the court ruled that HUD regulations

19  applicable to the contract at issue were incorporated despite the absence of any express reference to

20  them in the language of the contract itself.  88 Fed. Cl. 169, 176 (Fed. Ct. Cl. 2009).  Thus, "although a

21  contract lacks specific inclusion of a pertinent statute or regulation, contracting parties are nonetheless

22  'presumed to be aware of applicable statutes and incorporate them.'" <u>Id.</u> (quoting 24 Corbin on

23  Contracts 24:273 (1998)).  This is exactly what Ms. Santos expected when entering into a transaction to

24  which HUD was a party.  HECMs in their very existence were created by a federal program and thus

25  are highly regulated.  Strict regulations would not be put into place if they were to be at the whim of

26  lenders and servicers whether they were to be followed or not.  These pertinent regulations are therefore

27  part of the contract.

28

Defendants do not contest that the regulations Plaintiff claims were violated govern them and the loans at issue.  Pursuant to the rule set out in <u>Norfolk & Western Railway</u>, the analysis need not proceed any further; the HECM regulations are incorporated into the contract and their violation gives rise to Plaintiff's breach of contract claim.  Even without that rule, however, the contract manifests Defendants' intent to be bound by the regulations and incorporate them into the agreement even absent an express incorporation provision.  References to the HUD Secretary, the HECM statute, and HECM regulations permeate the Deed of Trust.  Complaint, Ex. B, pp. 2-6 3, 5, 7, 8, 9(f), 10, 13, 15.  Critically, the Deed of Trust also expressly refers to the exact statutory provision underlying the regulations at issue, namely section 12 U.S.C. §1715z-20 (identified in the Deed of Trust as Section 255(i)(1)(A) of the National Housing Act).  <u>Id.</u> ¶13(a).  The Second Deed of Trust, which the Secretary of HUD is required to hold on a HECM-insured property, includes the same references.  Complaint, Ex. B, pp. 2-6 3, 5, 7, 8, 9(f), 10, 13, 15.  Defendants' claim that the regulations are not incorporated is not only wrong as a matter of law, but disingenuous in light of the manifest intent to incorporate those relevant sections into the contract.[8]

### 2. Defendants Incorrectly Interpret Their Notice Obligations under the HECM Documents and California law.

Defendants contend that, as parties to the HECM Deed of Trust and Note, they are entitled to unilaterally determine when the debt is due and payable, to accelerate the debt without any notice whatsoever, or give Plaintiff the opportunity to preserve the home; convey it through a deed in lieu; and that although federal regulations exist, they are not required to follow them.  Defendants misconstrue the language of Section 9(d) of the Deed of Trust and ignore the notice mandated in the mortgage documents, California law, relevant regulations and the Handbook.  Each of these separately requires that regardless of the grounds of termination of the HECM, the lender must notify the borrower or estate prior to initiating foreclosure.

Under the HECM Note, the obligation to repay the loan is triggered by "receipt of a notice by Lender."  Plaintiff's RJN, Ex. B, HECM Note.  It is the lender's notification to the borrower that

---

[8] A contract may incorporate regulations either by mirroring the language of regulation, or by express reference.  <u>Amer. Intern. Specialty Lines Ins. Co. v. U.S.</u>, No. CV-09-01734, 2010 WL 2635768, *5 (C.D. Cal. June 30, 2010).  Paragraph 9(a)-(d) of the Deed tracks the language of the HECM regulations, namely 24 C.F.R. §206.125, *as it is required to do*.

1    immediate payment is due that relieves the lender of its obligation to provide further loan advances.

2    ("Lender shall have no obligation to make Loan Advances if Lender has notified Borrower that

3    immediate payment in full to Lender is required under one or more of the Loan Documents...")

4    Plaintiff's RJN, Ex. C, HECM Loan Agreement.

5         The Deed of Trust and applicable regulations also require notice, which is confirmed by HUD's

6    interpretation as explained in the Handbook.  The lender is to "*require*" payment upon the occurrence

7    of a terminating event, including the death of a borrower, after which it "shall require" the mortgagor to

8    satisfy the HECM by choosing among three options.  <u>See</u> Deed of Trust ¶9(a) & (b); 24 C.F.R.

9    §206.125(a)(2); <u>see also</u>, Handbook Section 4330.1 REV-5, §13-33.  How does a lender "require"

10   payment if it need not notify the Borrower or the estate that it has decided to accelerate the debt?  In

11   order to "require" another party to take action, communication with that party is essential.  Providing

12   notice that foreclosure will occur unless certain actions are taken is the act of "requiring" payment.

13   Under Defendants' interpretation, the estate of a deceased borrower would operate in an information

14   black hole with no knowledge of the lender's determination of default or timeline for foreclosure.

15        Such a black hole serves no one—borrower, lender or HUD.  The HECM program's non-

16   recourse feature was put in place to protect all parties.  Borrowers and their heirs are protected from

17   having to repay mortgages for amounts greater than the property's value.  Ms. Santos purchased FHA

18   insurance to protect RMS from the possibility her daughter or estate may want to purchase and/or sell

19   the property for an appraised value that is less than the mortgage balance.  If HUD prices and

20   administers the insurance program correctly, it should not lose money by insuring HECMs.  This

21   system *cannot function* properly in the absence of notice to Plaintiff or the estate of their rights.  By

22   allowing parties like RMS and NDEX to avoid these regulations and unilaterally determine if they are

23   applicable or not, they are the root of the problem for what they claim Plaintiff is doing—using scarce

24   judicial resources to call the Court in to mediate what federal law has already prescribed and

25   determined.  This refusal to provide notice not only drives up costs of the program through delays and

26   the expense of foreclosures, but also necessitates that parties to turn to judicial intervention.

27        Beyond this, Defendants' reading of its notice obligations under ¶9(d) and section 206.125(a)(2)

28   is excessively narrow on its face.  While both of these sections relieve the lender of the impossibility of

1  notifying the borrower that the mortgage is due and payable, this notice was eliminated because the

2  regulations narrow definition of "mortgage"[9] to include only the original mortgagor, not their

3  successors in interest, made notice on a deceased individual impossible.  Plaintiff's RJN, Ex. E, 60 Fed.

4  Red. 42754-01 at 5.  HUD made clear that this change did not exempt the mortgagee from the

5  obligation to provide adequate notice to an executor or other party responsible before a foreclosure is

6  commenced.

7       The rest of ¶9(d) and section 206.125(a)(2), which *do not* exclude terminations based on the

8  death of a borrower, make this clear by insisting *no* foreclosure can be commenced until the

9  borrower/mortgagor[10] has had thirty days after notice to correct any default, pay the balance in full, sell

10 under the 95% rule, or provide the lender with a deed in lieu of foreclosure.  (Deed of Trust ¶9(d);

11 section 206.125(a)(2).)  The only notice provided by RMS and NDEX was a void and invalid Notice of

12 Default that claimed the full amount was due under the deed of trust and fully accelerated the payment

13 due.  There was no notice that any other options were available under ¶9(d) or section 206.125(a)(2) &

14 (c)—the only option was to pay the full balance.  Complaint, Ex. H.

15      The HECM Handbook's clear requirement for a repayment notice to terminate *all* HECM

16 mortgages settles any ambiguity against Defendants' interpretation.  Among other points, this goes

17 unchallenged by the Defendants.  HUD Handbook, Section 4330.1 REV-5, § 13-33 plainly requires the

18 lender to issue a Repayment Notice that offers mortgagors *or estates* the three options.  Even if the

19 language in the contract and the HECM regulations were ambiguous, the Supreme Court has held that

20 an agency's interpretation of its own regulation—here, the Handbook—is "controlling unless 'plainly

21 erroneous or inconsistent with the regulation.'"  Auer v. Robbins, 519 U.S. 452, 461 (1997);

22 Christensen v. Harris County, 529 U.S. 576, 601 (2000) ("Auer deference is warranted only when the

23 language of the regulation is ambiguous.").  Despite the consistency of this section with the

24

25

26 ─────────────────────

   [9] *See* 24 C.F.R. §206.3

27
   [10] As noted above, because the second sentence of section 206.125(a)(2) discusses the possibility of a *sale* of the property,
28 the expanded definition of "mortgagor" to include the estate of a deceased borrower is applicable to it.  24 C.F.R.
   §206.123(b).  Hence, 30 days prior to commencing foreclosure, the lender "shall require" the estate to pay the mortgage
   balance, sell under the 95% rule, or provide a deed in lieu of foreclosure.  24 C.F.R. §206.125(a)(2).

1   corresponding regulation on the subject (24 C.F.R. §206.125(a)(2)), Defendants disturbingly accord no

2   deference to any of the regulations.

3       Defendants simply contend that Plaintiff has no right to make any challenge whatsoever

4   because of there being no private right of action under 24 C.F.R. §206.1 *et seq*.  However, as these

5   sections have been incorporated into the Deed of Trust and this is not a bar to enforcing the regulations,

6   Defendants cannot rely on this as their foundational defense.  Further, even if ambiguity does exist in

7   the HECM Deed of Trust, it must be resolved in the context of the HECM documents, the program's

8   regulations, the Handbook provisions discussed herein and, more broadly, in the context of the HECM

9   program itself.  Defendants' interpretation frustrates the fundamental purpose of HECM loans by

10  depriving the estates of deceased HECM borrowers of the same rights as other borrowers whose

11  mortgages are terminated.  It is plainly erroneous and against public policy of the HECM program

12  itself.  For that reason, dismissal of the contract claim cannot be granted.

13          **3.   The Complaint Shows a Likelihood of Success that RMS and NDEX Breached
               the Contract and Violated California Law by Issuing a Notice of Default that**
14             **Misrepresented Plaintiff's Contractual and Legal Rights Therefore Slandering
               Title and Giving Rise to a Cancellation of the Instrument.**
15

16      Defendants' contention that they had no contractual or other duty to provide notice to the Santos

17  estate is belied by the fact that, they did in fact, send such a notice.  On February 21, 2012, RMS,

18  through NDEX (who had not yet been substituted as trustee) then sent <u>thirteen</u> "Notices of Default and

19  Election to Sell Under the Deed of Trust," which advised Plaintiff that: (1) the mortgage is in default

20  because "you are behind on your payments"; (2) they had approximately 90 days to cure the default

21  before foreclosure; (3) to cure the default, their *only* option was to pay the full mortgage balance, then

22  $320,750.96, which would increase "until your account becomes current"; and, (4) the reason for

23  default is the failure to pay "the entire unpaid principal balance, plus accrued interest thereon which

24  became immediately due and payable when borrower died and the property ceased to be the principal

25  residence of any surviving borrower."  Complaint, Ex. H.  This was confirmed in a follow-up phone

26  call with Defendants' counsel on July 2, 2012.  In this call, counsel required that for Plaintiff to stay in

27  the home she would have to pay the entire balance plus interest, "every penny of his attorney's fees"

28  and if this did not happen, foreclosure would be imminent.  There was no mention of either the 95%

rule or a deed in lieu.  No such requirement exists under any contractual obligation or under the federal regulations that specifically govern HECMs.

Protestations notwithstanding, Defendants issued a defective notice of default that affirmatively misrepresented that the *only way* the Estate could "cure" the default was to repay the full mortgage balance.  Defendants cannot dispute that this is simply *not true*.  Even during the time that HUD stood by ML 2008-38, the estate of a HECM borrower was entitled to satisfy the loan by selling the property under the 95% Rule.[11]  Yet RMS and NDEX's notice demands the full mortgage balance.  The notice was not merely false: it cut off the rights of the Santos Estate by misusing the power of sale to threaten foreclosure unless the Estate paid the full mortgage balance.  To further this end, Defendants' counsel refused to acknowledge the existence of any other options whatsoever.

### a. Defendants Breach of the Contract Renders the Notice of Default Void and Ineffective under California Law

Under Civil Code §2924, *et seq*., a lender must properly serve and record a Notice of Default setting forth the borrower's breach in order to affect a foreclosure.  After 90 days have elapsed, the lender must thereafter properly serve and record a Notice of Sale at least 20 days prior to the actual sale date.  Assuming proper compliance with the law, the property is then auctioned to the highest bidder at a foreclosure sale.

"The procedure for foreclosing on a security by a trustee's deed sale pursuant to a deed of trust is set forth in Civ. Code §2924 *et seq*.  The statutory requirements must be **strictly** complied with, and **a trustee's sale based on a statutorily deficient Notice of Default is invalid**." Cal. Civ. Code §2924; Miller v. Cote 127 Cal.App.3d 888, 894 (1982). (Emphasis added.)  Furthermore, defect in the notice…**will void any sale**…"  Angell v. Superior Court, 73 Cal.App.4th, 691, 699 (1999). (Emphasis added.)  No foreclosure sale may be held based upon a defective Notice of Default.  Miller, supra 127 Cal.App.3d at 894; BayPoint Mortgage Corp. v. Crest Premium Real Estate 168 Cal.App.3d 818, 831 (1985).  "[T]he law for obvious public policy reasons wishes to give a debtor the opportunity to avoid a forfeiture.  Pursuing that policy, the courts have fashioned rules to protect the debtor, one of them being

---

[11] ML 2008-38, however, is irrelevant to the case at bar because the property was not foreclosed upon until *after* this letter was rescinded by HUD.

1   that the Notice of Default will be strictly construed…" <u>Sweatt v. Foreclosure Co.</u>, 166 Cal. App. 3d

2   273, 278 (1985).

3          Here, it is evident from the HECM documents, Handbook and regulations that the Notice of

4   Default contained blatantly incorrect information. Paragraph 9 of the Deed of Trust allows three

5   options for the expanded definition of the mortgagor for sale: (i) pay the balance in full; (ii) sell for

6   95% of the appraised value; or, (iii) offer a deed of lieu in foreclosure. The Notice of Default

7   conclusively states that to avoid foreclosure there must be a payment of the "amount in full." Nowhere

8   in the Notice of Default does it state that other options are available. Additionally, the amount owing is

9   entirely incorrect as Plaintiff has the right <u>under the contract</u> to sell for 95% of the appraised value.

10  The appraised value, per Zillow, is roughly $288,600. The difference between the amount allegedly

11  owed and 95% of the appraisal value is $46,580.96. Thus, because the Notice of Default is strictly

12  construed and entirely incorrect by the standards of both the contract and federal regulations, it is void

13  on its face and ineffective.

14         For the reasons set out in this section, Plaintiff's claims for both slander of title and cancellation

15  of instruments (Notice of Default and Notice of Trustee's Sale) are valid and cannot be dismissed.

16  Defendants knew and had reason to know that the documents they were recording were in violation of

17  HECM documents, California law, and the Handbook and Regulations, thus, there was the requisite

18  degree of malice. Therefore, Plaintiff has properly alleged these causes of action.

19             **4.  The Complaint Shows a Likelihood of Success for Breach of Contract for**
                   **Defendants' Refusal to Allow the Santos Estate to Sell the Property to Plaintiff**
20                 **under the 95% Rule.**

21         In addition to failing to provide accurate notice to the Santos Estate, RMS and NDEX breached

22  the HECM contract by refusing to allow the Estate to sell the property under the 95% Rule.

23  Defendants' Motion seeks to deflect attention away from this breach of the contract by using negatively

24  charged and unnecessary vitriolic language attempting to cast Plaintiff as an "interloper," "trespasser,"

25  and trying to "rob the lender of the monies advanced and then to acquire the Property for free through

26  an extortive abuse of the legal process through an unethical attorney." (Memo at p. 14, lines 23-25.)

27  However, the uncontested facts show that Plaintiff contacted RMS at least once a month in attempts to

28

1  re-pay the loan for <u>15 straight months</u>—either her calls were never returned by Ms. Johnson, she was
2  given the wrong party to contact or flatly told a misrepresentation of her rights.

3        This characterization is nothing but a red herring attempting to distract the Court from the real
4  facts and issues of this case, none of which were refuted by Defendants.  From one month after her
5  mother's passing, up until even just a month ago, Plaintiff regularly made phone calls to RMS and
6  NDEX attempting to begin a re-payment plan to stay in the house.  <u>At no time has Plaintiff **ever**</u>
7  <u>attempted to say she is deserving of a free house—nor is counsel now attempting to forward that stance</u>
8  <u>in any way, shape or form</u>.  It has been the contrary for over a year with Plaintiff being put in the run
9  around by RMS and Ms. Johnson.   Plaintiff has been ready and willing to buy the property from the
10  Estate in her personal capacity, thus making RMS obligated to allow that sale to occur so that the Estate
11  could satisfy the HECM by payment of 95% of the appraised value to RMS.  Instead, it denied the
12  Estate's right to sell to Plaintiff and proceeded with foreclosure.  The Complaint is clear that the claims
13  arise from Defendants' refusal to allow the estate to sell the property to heirs under the 95% rule.

14        Interestingly, Defendants do not specifically deny that they refused to allow the Estate to sell
15  the property to Plaintiff under the 95% Rule.  Instead, they seek refuge in the defense that Plaintiff is
16  not allowed to bring a private right of action under the specific regulations—yet it is these exact
17  regulations that govern <u>every single</u> reverse mortgage that "Reverse Mortgage Solutions, Inc." provides
18  to the American public.  It is simply contrary to public policy to allow an entity not to follow the
19  codified regulations that have been put into place regarding their product and allow them to callow
20  behind a possible procedural technicality.  Regardless, under the simple terms of the HECM Deed of
21  Trust, Defendants were obliged to permit the Santos Estate to sell the property to *any willing buyer* for
22  95% of the property's appraised value.  The terms of the HECM Deed of Trust are not ambiguous or
23  unclear and the implication that Defendants would somehow "lose out" if Plaintiff were given this
24  opportunity is simply false and misleading because Ms. Santos purchased insurance to compensate for
25  that exact situation.

26        **D.  PLAINTIFF HAS DEMONSTRATED A LIKELIHOOD OF IRREPARABLE HARM**
27        The potential loss of Plaintiff's home, which has been in her family for nearly 40 years, through
28  a trustee's sale currently scheduled for August 3, 2012, constitutes irreparable and imminent harm.

1  Plaintiff must demonstrate that there is "immediate threatened harm." <u>Caribbean Marine Services Co.,</u>

2  <u>Inc. v. Baldridge</u>, 844 F.2d 668, 674 (9th Cir. 1988).  Where a plaintiff suffers "substantial injury that is

3  not accurately measurable or adequately compensable by money damages, irreparable harm is a natural

4  sequel." <u>Ross-Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 18 (1st Cir. 1996).  Damages, as

5  a legal remedy, need not be wholly ineffectual; rather, it must be "seriously deficient as compared to

6  the harm suffered." <u>FoodComm Int'l v. Barry</u>, 328 F.3d 300, 304 (7th Cir. 2003).

7      The loss of one's personal residence due to foreclosure constitutes irreparable injury. <u>See</u>,

8  <u>Demarest v. Quick Loan Funding, Inc.</u>, No. CV 09-01687 MMM (Ssx) 2009 WL 940377, *9 (C.D. Cal

9  April6, 2009) <u>citing</u>, <u>Avila v. Stearns Lending, Inc.</u>,  No. CV 08-0419-AG(CTx) 2008 WL 1378231, *3

10 (C.D. Cal. April 7, 2008); <u>Wrobel v. S.L. Pope & Assoc.</u>, No. 07CV1591 IEG (BLM) 2007 WL

11 2345036, *1 (S.D. Cal. June 15, 2007); <u>Nichols v. Deutsche Bank Nat. Trust Co.</u>, Civil No. 07cv2039-

12 L(NLS), 2007 WL 4181111, *3 (S.D. Cal. Nov. 21, 2007).  In this respect, the Court is reminded of

13 Civ. Code §3387, which presumes a person's property is so unique that monetary damages cannot

14 adequately compensate for its loss.

15     Here, Plaintiff faces the imminent loss of her personal residence that has been in her family for

16 40 years.  The HECM program was not designed to take homes away from families once the HECM

17 borrower passed away.  Contrary to Defendants baseless assertions of Plaintiff trying to get a "free

18 house," she has made <u>repeated</u> attempts to work something out with RMS, but has been stonewalled at

19 every attempt.  Plaintiff now faces the imminent loss of unique property, which constitutes the

20 likelihood of irreparable harm.

21     **E.  THE BALANCE OF EQUITIES FAVORS PLAINTIFF**

22     The Court must take into consideration the harm to each party if the injunction is improperly

23 granted or denied. <u>Scotts Co. v. United Industries Corp</u>, 315 F.3d 264, 284 (4th Cir. 2002); <u>see also</u>,

24 <u>Winter</u>, <u>supra</u>.  In making this assessment, the court may consider the size and strength of each party.

25 <u>Sardi's Restaurant Corp. v. Sardie</u>, 755 F.2d 719, 726 (9th Cir. 1985).  One of the principles of equity,

26 as directly stated in the Maxims of Jurisprudence, is California Civil Code §3517**.**  Section 3517

27 mandates, "No one can take advantage of his own wrong."  Equity does not allow one to take

28 advantage of his own wrong nor will it assist in perpetration of fraud on another or the public.

Bowman v. Bowman, 125 Cal.App. 602 (1932).  A party cannot take advantage of his own fault or wrong. Archibald Estate v. Matteson, 5 Cal.App. 441 (1907).

Here, Defendants attempt to use both their overwhelming size and their own wrong to their advantage—and then turn around and say that Plaintiff cannot challenge them.  The HECM documents, Regulations and Handbook were all put into place—and codified—for a reason.  Plaintiff has attempted for 15 straight months to work out repaying the Defendants.  The harm to Plaintiff if the injunction is not maintained far exceeds any damage that would be done to the Defendants.

### F.  FORECLOSURE IS NOT IN THE PUBLIC INTEREST

Defendants entirely mischaracterize the "public interest" in this situation.  It can hardly be argued that misrepresenting rights under the HECM documents and California law to successors and heirs is in the public interest.  Further, to then turn and say that Plaintiff is seeking a free lunch when she has repeatedly attempted to make payments to Defendants for 15 months is simply contrary to any public policy or reasonable thought.  The general purpose of the HECM program is "to meet the special needs of elderly homeowners by reducing the effect of the economic hardship caused by the increasing costs of meeting health, housing and subsistence needs at a time of reduced income." Complaint, ¶18; 12 U.S.C. § 1715z-20(a).  HECM's are non-recourse to protect both the borrower and their heirs from displacement and loss.  See e.g., 12 U.S.C. § 1715z-20(d)(7); Handbook § 4235.1 REV-1; Plaintiff's RJN, Ex. D.

In response to the misdeeds of large financial institutions in regards to home loans, our State legislature summarily passed the Homeowner's Bill of Rights that was signed into law by Gov. Jerry Brown.  Defendants seem to think that by misrepresenting the rights of successors and heirs under federal and state law, claiming they cannot be challenged and then proceeding to kick them out on the street somehow furthers the public interest.  This could not be further from the truth.  In addition, as stated above and in the Complaint, Ms. Santos purchased insurance at a substantial sum when she took out the HECM loan and HUD ultimately bears the risk, **not the lender or homeowner**.  See e.g., Complaint, ¶20-22; Plaintiff's RJN, Ex. D; 24 C.F.R. § 206.125(c); 24 C.F.R. § 206.123(b).  Defendants will be compensated any difference between the sale price and the mortgage balance due because Ms. Santos purchased insurance for that exact event.  It is entirely within the public interest to not allow Defendants to summarily dismiss their obligations under the HECM documents, California

law, HECM Regulations and the HECM Handbook and require them to follow the law that has been put in place.

### G. THE INJUNCTION SHOULD NOT BE MODIFIED, ALTERNATIVELY, PLAINTIFF SHOULD ONLY BE REQUIRED TO PAY A NOMINAL BOND

For the court to issue a temporary restraining order or preliminary injunction there must be a security posted "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, courts have interpreted Rule 65(c)'s language "in an amount that the court considers proper" as making the bond requirement entirely discretionary, and permitting it to be waived by the court. Kaepa, Inc. v. Achilles Corp, 76 F.3d 624, 628 (5th Cir. 1996); BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, LLC, 425 F.3d 964, 971 (11th Cir. 2005); RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1215 (10th Cir. 2009).   Where the enforcement of the "public interest" is involved, an exception to the bond requirement can be found.  See, Pharmaceutical Soc. of State of New York, Inc. v. New York State Dept. of Social Services, 50 F.3d 1168, 1174-1175 (2nd Cir. 1995) (suit to ensure State complied with federal Medicare Act).  The amount of the bond is also within the court's discretion.  GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1211 (9th Cir. 2002) (court ordered nominal bond where higher amount demanded would effectively preclude injunctive relief).

As stated above, Plaintiff has shown that it is not in the public interest to allow Defendants to summarily determine their duties under the regulations promulgated for their industry.  The Hon. Judith S. Craddick of the Superior Court of Contra Costa County has already granted a preliminary injunction in favor of Plaintiff showing a likelihood of success on the merits.  Alternatively, if the Court finds that the issuance of a bond is necessitated, Plaintiff requests that it be nominal so as to not preclude the effect of injunctive relief.

///
///
///
///
///

1    **V.      CONCLUSION**

2           For all of the foregoing reasons, as well as those set forth in the papers and supporting

3    documents submitted herewith, and in Plaintiff's verified complaint, Plaintiff prays for this Court to

4    deny Defendants' Motion to Dissolve the State Court Ordered Preliminary Injunction, or,

5    Alternatively, Modifying the State Court Preliminary Injunction Pursuant to Fed. R. Civ. P. 65 &

6    Common Law and require that no bond be issued, or, alternatively, that it be nominal.

7

8

9    DATED:  July 18, 2012                          LAW OFFICE DANIEL J. HANECAK

10

11                                                  /s/ Daniel J. Hanecak
                                                    Daniel J. Hanecak, Esq.
12                                                  Attorney for Plaintiff
                                                    ISABEL SANTOS, INDIVIDUALLY AND AS
13                                                  BENFICIARY AND TRUSTEE OF THE
                                                    YOLANDA MARIA SANTOS TRUST
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

3

4

     I, Daniel J. Hanecak, hereby certify that on July 18, 2012, a true and correct copy of

5

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR DISSOLVING, OR,
ALTERNATIVELY, MODIFYING THE STATE COURT PRELIMINARY INJUNCTION**

6

**PURSUANT TO FED. R. CIV. P. 65 & COMMON LAW** was filed electronically and is available
for viewing and downloading from the ECF system.

7

8

     Unless otherwise noted herein, the following parties are deemed to have consented to

9

electronic service of documents filed through the ECF system:

10

11

Defendants' Representation
Edward A. Treder (SBN 116307)

12

Thomas K. Agawa (SBN 175952)
Barrett, Daffin, Frappier, Treder & Weiss, LLP

13

20955 Pathfinder Road, Suite 300
Diamond Bar, CA 91765

14

Tel:    (626) 371-7032
Email: ThomasA@BDFGroup.com

15

16

17

Executed on July 18, 2012, at Sacramento, California.

18

I declare under penalty of perjury under the laws of the United States of America that the above is true

19

and correct.

20

                         /s/ Daniel J. Hanecak

21

                         Daniel J. Hanecak, Esq.

22

23

24

25

26

27

28

# Exhibit A

1   **Daniel J. Hanecak, Esq. [CSB 275161]**
    **Law Office of Daniel J. Hanecak**
2   9444 Harbour Point Drive #66
    Elk Grove, Ca 95758
3   Phone: (717) 341-6318
    Email: djhanecak@gmail.com
4

FILED

2012 JUN 28  A 10: 23

K. TORRE, CLERK OF THE SUPERIOR COURT
COUNTY OF CONTRA COSTA, CALIF.
by_____
       T. Woods, Deputy Clerk

5

6   Attorneys for Plaintiff
    ISABEL SANTOS, INDIVIDUALLY AND
    AS TRUSTEE AND BENEFICIARY OF THE
7   YOLANDA MARIA SANTOS TRUST

8               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **COUNTY OF CONTRA COSTA**

10

11  ISABEL SANTOS, INDIVIDUALLY AND    )   Case No.: C1201362
    AS TRUSTEE AND BENEFICIARY OF THE  )
12  YOLANDA MARIA SANTOS TRUST,        )   **[PROPOSED] ORDER GRANTING**
                                       )   **PLAINTIFFS' REQUEST FOR**
13          Plaintiffs,                )   **PRELIMINARY INJUNCTION**
                                       )
14                                     )
        v.                             )   Date:   June 26, 2012
15                                     )   Time:   9:00 a.m.
                                       )   Dept:   9
16  REVERSE MORTGAGE SOLUTIONS, INC.;  )   Judge:  Hon. Judith S. Craddick
    NDEX WEST, LLC; and DOES 1 through 20, )
17                                     )
                                       )
18      Defendants                     )
                                       )
                                       )   Complaint Filed;  June 8, 2012
19  _____ )   Trial Date:      Not yet set

20

21          The motion of plaintiff ISABEL SANTOS, INDIVIDUALLY AND AS TRUSTEE AND

    BENEFICIARY OF THE YOLANDA MARIA SANTOS TRUST for a preliminary injunction was set
22
    for hearing on June 26, 2012 at 9:00 a.m. in Dept. 9 before the Hon. Judith S. Craddick.  On June 25,
23
    2012, the Hon. Judge Craddick issued a tentative ruling stating that plaintiff's motion was unopposed
24
    and granted.  The motion was submitted on behalf of plaintiff by Daniel J. Hanecak, Esq. of the Law
25
    Office of Daniel J. Hanecak.  Oral argument was not requested.  Having read the motion, the
26
    memoranda and the declarations on file, and satisfactory evidence being presented,
27
            **IT IS ORDERED THAT** plaintiff's motion is **GRANTED.  Defendants and their**
28
    **employees, agents, and persons acting with them or on their behalf are enjoined and restrained**

                [PROPOSED] ORDER GRANTING PLAINTIFFS' PRELIMINARY INJUNCTION - 1

1  from selling, transferring any ownership interest in or further encumbering the property located

2  at 930 Santa Cruz Drive, Pleasant Hill, California, 94523, APN: 127-012-019-7 pending the trial

3  of this action or further order of this court.

4       The Court has found that based on the motion and arguments submitted that plaintiff has met

5  the burden of the likelihood of success on the merits and losing the real property in this trustee's sale

6  constitutes irreparable harm.

7       IT IS FURTHER ORDERED THAT there is no bond requirement pending trial of this action.

8       The Court reserves jurisdiction to modify or dissolve the injunction as may be required by the

9  interests of justice.

10

11

12  Dated:  6/28/12

13            8

      JUDITH S. CRADDICK
      _____
      Hon. Judith S. Craddick

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



This document is a correct copy
of the original on file in this office.
ATTEST:  JUN 2 8 2012
K. TORRE, CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA
By:_____
          Deputy Clerk

[PROPOSED] ORDER GRANTING PLAINTIFFS' PRELIMINARY INJUNCTION - 2