4235.1 REV-1
                                          APPENDIX 7
_____

FHA Case No.

                   HOME EQUITY CONVERSION LOAN AGREEMENT

     THIS AGREEMENT is made this day of                        , 19    ,
among                                              ("Borrower"),
         ("Lender") and the Secretary of Housing and Urban Development
("Secretary").

                         Article 1 - Definitions

1.1.  Expected Average Mortgage Interest Rate means the amount indicated on
the attached payment plan (Exhibit 1).  It is a constant interest rate used
to calculate monthly payments to the Borrower throughout the life of the
loan.

1.2.  Loan Advances means all funds advanced from or charged to Borrower's
account under conditions set forth in this Loan Agreement, whether or not
actually paid to Borrower.

1.3.  Loan Documents means the Note, Second Note, Security Instrument and
Second Security Instrument.

1.4.  Maximum Claim Amount means the lesser of the appraised value of the
Property or the maximum dollar amount for an area established by the
Secretary for a one-family residence under section 203(b)(2) of the
National Housing Act (as adjusted where applicable under section 214 of the
National Housing Act).  Both the appraised value and the maximum dollar
amount for the area shall be as of the date the conditional commitment is
issued.  Closing costs shall not be taken into account in determining
appraised value.

1.5.  Note means the promissory note signed by Borrower together with this
Loan Agreement and given to Lender to evidence Borrower's promise to repay,
with interest, Loan Advances by Lender or Lender's assignees.

1.6.  Principal or Principal Balance means the sum of all Loan Advances
made as of a particular date, including interest and mortgage insurance
premiums.

1.7.  Principal Limit means the amount indicated on the attached payment
plan (Exhibit 1) when this Loan Agreement is executed, and increases each
month for the life of the loan at a rate equal to one-twelfth of the sum of
the Expected Average Mortgage Interest Rate and one-half of one percent.
The Principal Limit is calculated by multiplying the Maximum Claim Amount
by a factor supplied by the Secretary, which is based on the age of the
youngest Borrower and the Expected Average Mortgage Interest Rate.

_____

1-1

          4235.1 REV-1

---

1.8.  Principal Residence means the dwelling where the Borrower maintains his or her permanent place of abode, and typically spends the majority of the calendar year.  A person may have only one principal residence at any one time.  The Property shall be considered to be the Principal Residence of any Borrower who is temporarily or permanently in a health care institution as long as the Property is the Principal Residence of at least one other Borrower who is not in a health care institution.

1.9.  Property means Borrower's property identified in the Security Instrument.

1.10.  Second Note means the promissory note signed by Borrower together with this Loan Agreement and given to the Secretary to evidence Borrower's promise to repay, with interest, Loan Advances by the Secretary secured by the Second Security Instrument

1.11.  Second Security Instrument means the mortgage, deed of trust, security deed or other security instrument which is signed by Borrower together with this Loan Agreement and which secures the Second Note.

1.12.  Security Instrument means the mortgage, deed of trust, security deed or other security instrument which is signed by Borrower together with this Loan Agreement and which secures the Note.

                    Article 2 - Loan Advances

2.1.  General.  Lender agrees to make Loan Advances under the conditions set forth in this Loan Agreement in consideration of the Note and Security Instrument given by Borrower on the same date as this Loan Agreement.

2.2.  Initial Advances.

    2.2.1.  Loan Advances shall be used by Lender to pay, or reimburse Borrower for, closing costs listed in the Schedule of Closing Costs (Exhibit 2) attached to and made a part of this Loan Agreement, except that Loan Advances will only be used to pay origination fees in an amount not exceeding $1,800.

    2.2.2.  Loan Advances shall be used by Lender to discharge the liens on the Property listed in the Schedule of Liens (Exhibit 2) attached to and made a part of this Loan Agreement.

    2.2.3.  Lender shall pay an initial Loan Advance to Borrower in the amount indicated on the attached payment plan (Exhibit 1).

    2.2.4.  Initial advances required by this Section 2.2. shall be made as soon as such advances are permitted by the applicable provisions of 12 CFR Part 226 (Truth in Lending) governing Borrower's right of rescission, but not before that time.

2.3.  Set Asides.

    2.3.1.  Amounts set aside from the Principal Limit shall be considered Loan Advances to the extent actually disbursed or

earned by Lender.

    2.3.2.  Lender shall initially set aside from the Principal Limit the amount indicated on the attached payment plan (Exhibit 1) for repairs to be made in accordance with a Repair Rider attached to and made a part of this Loan Agreement (Exhibit 3).

___

1-2

4235.1 REV-1

___

    2.3.3.  Lender shall initially set aside from the Principal Limit the amount indicated on the attached payment plan (Exhibit 1) to be applied to payments due for first year property charges consisting of taxes, hazard insurance, ground rents and assessments.

    2.3.4.  Lender shall initially set aside from the Principal Limit the amount indicated on the attached payment plan (Exhibit 1) to be applied to payment due for a fixed monthly charge for servicing activities of Lender or its servicer.  Such servicing activities are necessary to protect Lender's interest in the Property.  A servicing fee set aside, if any, is not available to the Borrower for any purpose, except to pay for loan servicing.

2.4.  Charges and Fees.  Borrower shall pay to Lender reasonable and customary charges and fees as permitted under 24 CFR 206.207 (a).  Such amounts shall be considered Loan Advances when actually disbursed by Lender.

2.5.  Monthly Payments.

    2.5.1.  Loan Advances paid directly to Borrower shall be made in equal monthly payments if requested by Borrower.

    2.5.2.  Monthly payments shall be calculated for either the term payment plan or the tenure payment plan, as requested by Borrower.

    2.5.3.  Monthly payments under the term payment plan are made only during a term chosen by Borrower and shall be calculated so that the sum of (i) or (ii) added to (iii), (iv), (v) and (vi) shall be equal to or less than the Principal Limit at the end of the term:

        (i)  Initial Advances under Section 2.2., plus any initial servicing fee set aside under Subsection 2.3.4., or

        (ii)  The Principal Balance at the time of a change in payments under Sections 2.8. and 2.9. plus any remaining servicing fee set aside under Subsection 2.3.4., and

        (iii)  The portion of the Principal Limit set aside as a

line of credit under Section 2.7., including any set asides for repairs (Subsection 2.3.2.) and first year property charges (Subsection 2.3.3.), and

        (iv)  All monthly payments due through the payment term, including funds withheld for payment of property charges under Section 2.10., and

        (v)  All mortgage insurance premiums, or monthly charges due to the Secretary in lieu of mortgage insurance premiums, which are due through the payment term (Subsection 2.13.), and

        (vi)  All interest through the payment term.  The Expected Average Mortgage Interest Rate shall be used for this purpose.

_____

1-3

    4235.1 REV-1

_____

    2.5.4.  Monthly payments under the tenure payment plan shall be calculated as in Subsection 2.5.3. as if there were a payment term with the number of months in the term equal to the sum of 100 minus the age of the youngest Borrower multiplied by 12, but payments shall continue until the loan becomes due and payable as provided in the Loan Documents.

    2.5.5.  Monthly payments shall be paid to Borrower on the first business day of a month.

    2.5.6.  If Borrower has requested monthly payments, payments shall be indicated on the attached payment plan (Exhibit 1).  The payment plan may be changed by Borrower as provided in Sections 2.8. and 2.9.

2.6.  Line of Credit without Monthly Payments.

    2.6.1.  Borrower can request Loan Advances under a line of credit payment plan in amounts and at times determined by Borrower, if the Principal Balance of the loan after the Loan Advance is made is less than or equal to the applicable Principal Limit, excluding any portion of the Principal Limit set aside under Sections 2.3.2. or 2.3.4.

    2.6.2.  Line of credit payments shall be paid to Borrower within five business days after Lender has received a written request for payment by Borrower.

    2.6.3.  Lender may specify a form for line of credit payment requests.

    2.6.4.  Lender shall provide Borrower with a statement of the

account every time a line of credit payment is made.  The
statement shall include the current interest rate, the previous
Principal Balance, the amount of the current Loan Advance, the
current Principal Balance after the Loan Advance, and the current
Principal Limit.

2.7.  Line of Credit with Monthly Payments.

    2.7.1.  Borrower may receive monthly payments under either a term
or tenure payment plan combined with a line of credit, as
indicated on the attached payment plan (Exhibit 1).

    2.7.2.  Subsections 2.6.2., 2.6.3. and 2.6.4. apply to a line of
credit combined with term or tenure payments.

    2.7.3.  If Borrower combines a line of credit with a term or
tenure payment plan, the Principal Limit is divided into:  (a) an
amount for the line of credit payments, including repair and
property charge set asides, (b) an amount for monthly payments
which shall be calculated under Subsection 2.5.3. or 2.5.4. and
(c) an amount for a servicing fee set aside, if required by
Lender under Subsection 2.3.4.  Amounts designated for line of
credit payments and monthly payments increase independently at
the same rate as the total Principal Limit increases under
Section 1.7.  Borrower can request Loan Advances in amounts and
at times determined by Borrower, if the requested amount is less
than or equal to the difference between (a) the Principal Limit
applicable to the line of credit set aside and (b) the portion of
the outstanding Principal Balance attributable to draws on the
line of credit, including accrued interest and mortgage insurance
premium or monthly charge due to the Secretary, but excluding any
portion of the Principal Limit set aside under Subsections 2.3.2.
and 2.3.4.

_____

1-4

4235.1 REV-1

_____

    2.7.4.  A Borrower receiving monthly payments in combination with
a line of credit may prepay the outstanding mortgage balance in
accordance with the terms of the Note.

2.8.  Change in Payments Generally.

    2.8.1.  Whenever the Principal Balance of the loan is less than
the Principal Limit, Borrower may change from any payment plan
allowable under this Loan Agreement to another.

    2.8.2.  If Borrower requests that monthly payments be made after
a change in payment plan, Lender shall recalculate future monthly
payments in accordance with Subsections 2.5.3. or 2.5.4.

    2.8.3.  Lender may charge a fee not to exceed twenty dollars,

whenever payments are recalculated and in any other circumstances in which Borrower is required to sign a form acknowledging a change in payment plan as provided in Subsection 2.8.5.

       2.8.4.  Loan Advances under a new payment plan shall be paid to Borrower in the same manner and within the time period required under Sections 2.5., 2.6. or 2.7.

       2.8.5.  Changes in the payment plan must be acknowledged by Borrower by signing a form containing the same information as the attached payment plan (Exhibit 1).  Lender shall provide a copy of the completed form to Borrower.

2.9.  Change in Payments Due to Initial Repairs.

       2.9.1.  If initial repairs after closing, made in accordance with the Repair Rider, are completed without using all of the repair set aside, Lender shall inform Borrower of the completion and the amount then available to the Borrower to be drawn under a line of credit.

       2.9.2.  If initial repairs after closing, made in accordance with the Repair Rider, cannot be fully funded from the repair set aside, any additional Loan Advances needed to complete repairs shall be made in the manner provided under Section 2.16.

       2.9.3.  If initial repairs are not completed when required by the Repair Rider, Borrower shall not request and Lender shall not make any further payments, except as needed to pay for repairs required by the Repair Rider and mandatory Loan Advances under Section 4.5.  In order to complete the required repairs, Loan Advances shall be made first from the repair set aside, and then in the manner provided under Section 2.16.

2.10. Payment of Property Charges.

       2.10.1  Borrower has elected to require Lender to use Loan Advances to pay property charges consisting of taxes, hazard insurance premiums, ground rents and special assessments if indicated on the attached payment plan (Exhibit 1).  Borrower may change this election by notifying Lender and at that time Lender shall pay to Borrower any amounts withheld from the Loan Advances to pay property charges.

___

1-5

    4235.1 REV-1

___

       2.10.2.  If Borrower has made the election under Subsection 2.10.1. and Borrower is receiving monthly payments, Lender shall withhold amounts from each monthly payment and use the amounts withheld to make timely payments of property charges.  The amounts withheld shall be calculated as provided in Subsection

2.10.3.  Amounts withheld from monthly payments shall not be treated as Loan Advances and shall not bear interest except to the extent actually disbursed by Lender.

    2.10.3.  Lender shall withhold from each monthly payment an amount to pay (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for fire, flood and other hazard insurance required by the Security Instrument.  Each monthly withholding for items (a), (b) and (c) shall equal one-twelfth of the annual amounts, as reasonably estimated by Lender.  The full annual amount for each item shall be paid by Lender before an item would become delinquent.  Lender shall add the amounts for items (a), (b) and (c) to the Principal Balance when paid.  If at any time the withholding for item (a), (b), or (c) exceeds the amount of actual property charges, Lender shall pay the excess withholding to Borrower and add it to the Principal Balance.  If the total of the withholding for item (a), (b), or (c) is insufficient to pay the item when due, the amount necessary to make up the deficiency on or before the date the item becomes due shall be paid as a Loan Advance in the manner provided under Section 2.16.

    2.10.4.  If Borrower has made the election under Subsection 2.10.1. and Borrower is not receiving monthly payments, Lender shall make Loan Advances under the line of credit payment plan as needed to make timely payments of property charges, provided that no such Loan Advance shall exceed the amount permitted by Section 2.6.1.

    2.10.5.  If Borrower fails to pay the property charges in a timely manner, and has not elected to have Lender make the payments, Lender shall pay the property charges as a Loan Advance as required under Section 2.16.  If a pattern of missed payments occurs, Lender may establish procedures to pay the property charges from Borrower's funds as if Borrower elected to have Lender pay the property charges.

    2.10.6.  Lender shall immediately notify any Borrower who has made the election under Subsection 2.10.1. whenever Lender determines that amounts available from monthly payments or line of credit payments will be insufficient to pay property charges.

2.11.  Insurance and Condemnation Proceeds.  If insurance or condemnation proceeds are paid to Lender, the Principal Balance shall be reduced by the amount of the proceeds not applied to restoration or repair of the damaged Property and the available loan funds shall be recalculated.  At the same time, the Principal Limit also shall be reduced by the amount of the proceeds applied to reduce the Principal Balance.

2.12.  Interest

    2.12.1.  Interest shall be calculated as provided in the Loan Documents.

    2.12.2.  Interest shall accrue daily and be added to the Principal Balance as a Loan Advance at the end of each month.

_____

1-6

4235.1 REV-1

_____

2.13.   Mortgage Insurance Premium (MIP); Monthly Charge.

      2.13.1.   Monthly MIP shall be calculated as provided in 24 CFR Part 206.  If the Security Instrument is held by the Secretary or if the Secretary makes Loan Advances secured by the Second Security Instrument, a monthly charge shall be due to the Secretary and shall be calculated in the same manner as MIP.

      2.13.2.   The full amount of monthly MIP or monthly charge, including any portion of the MIP retained by a Lender under 24 C.F.R. 206.109, shall be considered to be a Loan Advance to Borrower on the later of the first day of the month or the day Lender pays the MIP to the Secretary, if any MIP is due to the Secretary.  In the event that the Note becomes due and payable or the Note is prepaid in full after the first day of the month, Lender may add the accrued MIP to the Principal Balance or the Secretary may add the accrued monthly charge to the Principal Balance.

2.14.   Manner of Payment For purposes of this Section "Borrower" shall not include any person who signed this Loan Agreement but who has a Principal Residence different from the Property.  Only a Borrower has a right to receive Loan Advances.  Borrowers shall choose to receive Loan Advances by either electronic funds transfer to a bank account designated by all Borrowers or by check mailed to an address designated by all Borrowers, except where all Borrowers agree that payment should be made directly to a third party for the benefit of the Borrowers.  Borrowers may change the manner of payment by notifying Lender.

2.15.   Protection of Property.

      2.15.1.   If Borrower vacates or abandons the Property, or if Borrower is in default under the Security Instrument, then Lender may make reasonable expenditures to protect and preserve the Property and these expenditures will be considered Loan Advances as required under Section 2.16.

      2.15.2.   If Borrower fails to pay governmental or municipal charges, fines or impositions that are not Included in Section 2.10. or if there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property.  These expenditures will be considered Loan Advances as required under Section 2.16.

2.16.   Unscheduled Payments.  Loan Advances made pursuant to Sections 2.4.,

2.9.2., 2.9.3., 2.10.3., 2.10.5., and 2.15. shall be made from a line of credit under Section 2.6. or 2.7. to the extent possible.  If no line of credit sufficient to make the Loan Advances exists, any future monthly payments must be recalculated in accordance with Subsection 2.5.3. or 2.5.4. to create a line of credit sufficient to make the Loan Advances.

Article 3 - Late Charge

3.1.  Amount Due.  Lender shall pay a late charge to Borrower for any late payment.  If Lender does not mail or electronically transfer a scheduled monthly payment to Borrower on the first business day of the month or mail or electronically transfer a line of credit payment to Borrower within 5 business days of the date Lender received the request, the late charge shall be 10 percent of the entire amount that should have been paid to the Borrower for that month or as a result of that request.  For each additional day that Lender fails to make payment, Lender shall pay interest on the late payment at the interest rate stated in

_____

1-7

   4235.1 REV-1

_____

the Loan Documents.  If the Loan Documents provide for an adjustable interest rate, the rate in effect when the late charge first accrues shall be used.  In no event shall the total late charge and interest exceed five hundred dollars.  Any late charge shall be paid from Lender's funds and shall not be added to the unpaid Principal Balance.

3.2.  Waiver.  The Secretary may waive a late charge where the Secretary determines that the late payment resulted from circumstances beyond Lender's control and that no act or omission of Lender contributed to the late payment.  At the time Lender requests a waiver, Lender shall inform Borrower that a waiver of late charge has been requested from the Secretary and that the late charge will be sent to Borrower if the waiver is denied.  If the Secretary denies the waiver, Lender shall pay to Borrower the late charge and interest that accrued from the date the payment was late until the date the waiver was requested.

Article 4 - Termination of Lender's Obligation<br>to Make Loan Advances

4.1.  Loan Due and Payable.  Lender shall have no obligation to make Loan Advances if Lender has notified Borrower that immediate payment in full to Lender is required under one or more of the Loan Documents unless and until the notice is rescinded by Lender.

4.2.  Loan Advances by Secretary.  If the Security Instrument has been assigned to the Secretary or the Secretary notifies Lender and Borrower that Loan Advances are secured by the Second Security Instrument, Lender shall have no further obligation to make Loan Advances under this Loan Agreement, unless the Secretary accepts later reimbursement by the Lender for all Loan Advances made, earned or disbursed by the Secretary.  The Secretary may establish procedures for handling requests for payments and

changes in payment plans during the interval between Lender's notification of intent to assign the Security Instrument to the Secretary and completion of the assignment.  Borrower shall be informed of such procedures by Lender and/or the Secretary, and Borrower shall comply with such procedures.

4.3.  Lien Status Jeopardized.  Lender shall have no obligation to make further Loan Advances if the Lender or the Secretary determines that the lien status of the Security Instrument or the Second Security Instrument is jeopardized under State laws as described in Paragraph 12(a) of the Security Instrument or Second Security Instrument and the lien status is not extended in accordance with Paragraph 12(a).

4.4.  Bankruptcy.  Lender shall have no obligation to make further Loan Advances on or following the date that a petition for bankruptcy of Borrower is filed.

4.5.  Mandatory Loan Advances.  Notwithstanding anything in Sections 4.1. through 4.4., all Loan Advances under Sections 2.10 (property charges), 2.12. (interest), 2.13. (MIP or monthly charge), 2.15. (protection of Property) or 2.3.4. (servicing fee) shall be considered mandatory Loan Advances by Lender.

4.6.  Prepayment in Full.  Lender shall not make Loan Advances if Borrower has paid the Note in full (or the Second Note, if the Secretary has assumed the Lender's rights and obligations under Article 5).

## Article 5 - HUD Obligation

If the Lender has no further obligation to make payments to Borrower because of Section 4.2., the Secretary shall assume the rights and obligations of Lender under this Loan Agreement, except the Secretary shall not assume any obligation of paying flood, fire and other hazard insurance from Loan Advances.  If the Secretary makes Loan Advances to Borrower under the Second Security Instrument, the

___

1-8

4235.1 REV-1

___

portion of the Principal Limit available for Loan Advances shall be the difference between the current Principal Limit and the combined Principal Balances on the Security Instrument less accrued interest and the Second Security Instrument.

## Article 6 - Miscellaneous

6.1.  Forbearance Not a Waiver.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

6.2.  Successors and Assigns Bounds; Joint and Several Liability; Co-Signers.  The covenants and agreements of this Loan Agreement shall bind and benefit the successors and assigns of Lender.  An assignment made in

accordance with the regulations of the Secretary shall fully relieve the Lender of its obligations under this Loan Agreement.  Borrower may not assign any rights or obligations under this Loan Agreement.  Borrower's covenants and agreements shall be joint and several.

6.3.  Notices.  Any notice to Borrower provided for in this Loan Agreement shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the property address shown in the Security Instrument or any other address all Borrowers jointly designate.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.  Any notice to the Secretary shall be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other place designated by the Secretary.  Any notice provided for in this Loan Agreement shall be deemed to have been given to Borrower, Lender or the Secretary when given as provided in this Section.

6.4.  Governing Law; Severability.  This Loan Agreement shall be governed by Federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Loan Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Loan Agreement which can be given effect without the conflicting provision.  To this end the provisions of this Loan Agreement are declared to be severable.

6.5.  Copies.  Lender, Borrower and the Secretary shall each receive one original executed copy of this Loan Agreement when signed by the Secretary.

6.6.  When Agreement Becomes Binding.  This Loan Agreement shall bind Lender and Borrower when both Lender and Borrower have signed, whether or not the Secretary signs this Loan Agreement.  This Loan Agreement shall bind the Secretary only when and if the Secretary has signed and a Mortgage Insurance Certificate is issued for the Security Instrument.

     BY SIGNING BELOW the parties accept and agree to the terms contained in this Loan Agreement and the exhibits.

                                              _____ (SEAL)
                                                  Borrower

                                            _____ (SEAL)
                                                  Borrower

_____

1-9

    4235.1 REV-1

_____

                                            _____
                                                (Name of Lender)

                                            By:_____ (SEAL)
                                            Secretary of Housing and Urban

```
                              Development

                              By:_____ (SEAL)
```

___

Exhibit 1
[Payment Plan is Appendix 11]

___

Exhibit 2
Schedule of Closing Costs

Item                                               Amount

Schedule of Liens

Item                                               Amount
___

Exhibit 3

[Repair Rider is Appendix 10]
___

1-10