IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISABEL SANTOS, individually and as trustee and beneficiary of the Yolanda Maria Santos Trust,<br><br>    Plaintiff,<br><br>  v.<br><br>REVERSE MORTGAGE SOLUTIONS, INC.; NDEX WEST, LLC; and DOES 1 through 20,<br><br>    Defendants. | Case No. 12-3296-SC<br><br>ORDER DENYING DEFENDANTS' MOTIONS (1) FOR JUDGMENT ON THE PLEADINGS AND (2) TO DISSOLVE OR MODIFY <u>PRELIMINARY INJUNCTION</u> |

## I.  INTRODUCTION

On June 8, 2012, Plaintiff Isabel Santos ("Plaintiff") filed a complaint against Defendants NDEX West, LLC ("NDEX") and Reverse Mortgage Solutions, Inc. ("RMS") (collectively, "Defendants") in the California Superior Court in and for the County of Contra Costa.  ECF No. 1 (notice of removal ("NOR")) Ex. A ("Compl."). The complaint challenges Defendants' right to foreclose on a home equity conversion mortgage ("HECM"), or so-called "reverse" mortgage, that Plaintiff's mother had taken out on her Pleasant Hill residence.  <u>Id.</u>  The Superior Court entered a preliminary injunction against Defendants, halting the foreclosure process. ECF No. 18-5 ("Prelim. Inj'n Order").  On June 26, 2012, Defendants removed to this Court.  After removal, Defendants filed the two

motions now pending: (1) a motion for judgment on the pleadings or, in the alternative, summary judgment, and (2) a motion to dissolve the preliminary injunction or, in the alternative, to modify it by requiring Plaintiff to post a bond equal to the amount of arrearages, which Defendants say is $320,750.96, plus an additional $200,000 in estimated future attorney fees.  ECF Nos. 8 ("MJP"), 12 ("Mot. to Dissolve").  Both motions are fully briefed and suitable for decision without oral argument.  ECF Nos. 17 ("Opp'n to MJP"), 19 ("Opp'n to Mot. to Dissolve"), 22 ("Reply ISO MJP"), 23 ("Reply ISO Mot. to Dissolve").[1]  For the reasons set forth below, the Court DENIES both motions.

## II. BACKGROUND

### A. The HECM Program

The Court takes its account of the facts from Plaintiff's state-court complaint and construes them in the light most favorable to her.  <u>Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church</u>, 887 F.2d 228, 230 (9th Cir. 1989).  In 2009, Plaintiff's mother, the late Yolanda Maria Santos, took out a federally insured HECM.  Compl. ¶ 15.  HECMs are "reverse" mortgages. Unlike a typical mortgage, where a borrower receives loan proceeds as a lump sum, uses the proceeds to buy a home, and then pays back the loan gradually, a "reverse" mortgage borrower already owns a home and takes out a loan against

---

[1] The parties filed requests for judicial notice with their moving papers.  ECF Nos. 9 ("RJN ISO MJP"), 13 ("RJN ISO Mot. to Dissolve"), 18 ("RJN ISO Opp'n to MJP"), 20 ("RJN ISO Opp'n to Mot. to Dissolve").  The requests are all unopposed and the documents to which they refer are judicially noticeable public records.  The Court therefore GRANTS the parties' requests for judicial notice.

2

its equity. In the reverse of a typical mortgage, an HECM borrower generally receives the loan proceeds in gradual payments and pays back the loan in a lump sum. Repayment is triggered by certain qualifying events, for example, sale of the property.

The HECM at issue in this case was insured through a program of the U.S. Department of Housing and Urban Development ("HUD"). See generally 12 U.S.C. § 1715z-20 (organic statute), 24 C.F.R. § 206.1 et seq. (implementing regulations). The program does not provide mortgages directly; rather, it insures lenders who extend qualifying HECMs to "elderly" borrowers over the age of 62. 12 U.S.C. § 1715z-20(b)(1); 24 C.F.R. § 206.33. The program is designed to make lending to these homeowners more attractive by insulating lenders from risk. See 12 U.S.C. § 1715z-20(a).

HUD regulations implementing the program define the qualifying events that trigger repayment of the insured HECMs. 24 C.F.R. § 206.27(c). One such event is the death of the borrower. Id. In such circumstances, the regulations provide:

> The mortgagee [lender] shall require the mortgagor [borrower] to (i) pay the mortgage balance, including any accrued interest and MIP [mortgage insurance premium], in full; (ii) sell the property for at least 95% of the appraised value . . . , with the net proceeds of the sale to be applied towards the mortgage balance; or (iii) provide the mortgagee with a deed in lieu of foreclosure.

Id. § 206.125(a)(2) (brackets added). The regulations also give borrowers a way to satisfy the mortgage regardless of whether a qualifying event has occurred:

> Whether or not the mortgage is due and payable, the mortgagor may sell the property for at least the lesser of the mortgage balance or the appraised value . . . . If the mortgage is due and payable at the time the contract for sale

> is executed, the mortgagor may sell the property for at least the lesser of the mortgage balance or five percent under the appraised value. The mortgagee shall satisfy the mortgage of record . . . in order to facilitate the sale, provided that there are no junior liens . . . and all the net proceeds from the sale are paid to the mortgagee.

Id. § 206.125(c).

In short, the regulations contemplate the possibility of HECM mortgagors satisfying their mortgages either before or after the borrower's death by, first, selling the mortgaged property, then either paying the mortgage in full or, if the property is not worth as much as the mortgage balance, paying at least 95 percent of the appraised value of the property (the so-called "95 percent rule").[2] For purposes of such sales, the regulations' definition of "mortgagor" includes "the mortgagor's estate or personal representative." Id. § 206.123(b).

In the event that a mortgagor sells the property but the sale proceeds fall short of the amount needed to satisfy the mortgage, the program prohibits HECM lenders from seeking a deficiency judgment against the mortgagor. See id. § 206.27(b)(8). The program also protects HECM lenders by insuring them for the amount of the shortfall. Id. § 206.123(a). Though lenders pay the premium for this mortgage insurance directly to HUD, the regulations permit lenders to pass on at least some of the cost of the premium to borrowers. See id. §§ 206.27(b)(7), 206.109.

### B. The HECM at Issue

On April 20, 2009, Plaintiff's mother, Yolanda Maria Santos, conveyed the subject property to the Yolanda Maria Santos Trust

---

[2] HUD regulations provide an appraisal procedure. 24 C.F.R. § 206.125(b). Plaintiff does not allege that the subject property has been appraised through this procedure. See Compl. ¶ 43.

4

("Santos Trust"), of which she was trustee. Compl. ¶ 33; RJN ISO MJP at 39-41 ("Grant Deed"). On the same day, Plaintiff's mother took out the HECM at issue in this case. Compl. ¶¶ 35-40; RJN ISO MJP at 28-38 ("HECM Deed").[3] The HECM Deed identifies the borrower as "Yolanda Maria Santos, Trustee of the Yolanda Marie [sic] Santos Living Trust." HECM Deed at 1. The HECM Deed's borrower section was signed twice, once by Yolanda Maria Santos as an individual and once by her as trustee of the Santos Trust. Id. at 10.

Paragraph 9(a)(i) of the HECM Deed provides: "Lender may require immediate payment-in-full of all sums secured by this Security Instrument if . . . [a] Borrower dies and the Property is not the principal residence of at least one surviving Borrower." Id. at 4. Paragraph 9(e) provides: "A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9." Id. at 4-5.

On or around February 7, 2011, Yolanda Maria Santos died. Compl. ¶ 43. At the time of her death, the balance on the HECM was approximately $360,000. Id. Plaintiff estimates the value of the subject property at the time of her mother's death as $288,000. Id. Plaintiff also alleges that she is the sole beneficiary of the Santos Trust, as well as its trustee. Id. ¶¶ 34, 60. She alleges the existence of a will establishing that she was her mother's heir. See id. ¶ 60. She further alleges that she has personally resided in the subject property since 2010. Id. ¶ 32.

Plaintiff alleges that, following her mother's death, she continually attempted to enter into a payment plan that would pay off the HECM loan and allow her to purchase the subject property,

---

[3] Later citations to the HECM Deed cite its internal page numbers.

5

but that RMS refused to permit her to purchase it and instead insisted that the property either be foreclosed or sold to some third party. See generally id. ¶¶ 43-72. NDEX began foreclosure proceedings in February 2012. Id. ¶¶ 56-64. Plaintiff alleges that RMS has insisted that only a full payoff of the mortgage amount will satisfy the mortgage, as compared to the 95 percent figure mentioned in the HUD regulations. Id. ¶¶ 15, 78. Plaintiff further alleges that the notice of default failed to provide her with required notices, namely, that she could satisfy the HECM by buying the property herself at 95 percent of its appraised value, and that foreclosure is prohibited before she receives those notices. Id. ¶ 78.

On June 8, 2012, Plaintiff filed a complaint in California state court, asserting four causes of action: (1) breach of contract, (2) declaratory relief,[4] (3) slander of title, and (4) cancellation of written instruments pursuant to California Civil Code § 3412. Id. ¶¶ 73-103. On June 26, 2012, the state court orally entered a preliminary injunction against Defendants, prohibiting them from proceeding with the planned foreclosure sale

---

[4] Under federal law, declaratory relief is a remedy, not a claim. E.g., Rosenfeld v. JPMorgan Chase Bank, N.A., 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010). However, Plaintiff originally filed her complaint in California state court, which permits the pleading of an independent cause of action for declaratory relief. See Cal. Civ. Proc. Code § 1060. Since Plaintiff's declaratory relief "claim" rests on federal statutes and regulations and not solely on California's declaratory relief cause of action, the Court construes it as a claim arising under the federal authorities cited therein. Plaintiff asks for a declaration concerning her right to receive notice of her right to sell the subject property, as well as of her right to repurchase the subject property for 95 percent of its appraised value, and addressing whether, by failing to provide such notice, Defendants "have violate[d] 12 U.S.C. § 1715z-20, 24 C.F.R. [§] 206.1 et seq., and the standard HECM loan contract." Compl. ¶ 85.

6

1  until trial or further order.[5]  That same day, NDEX, with the
2  consent of RMS, removed to this Court.  NOR ¶¶ 13-14.

### III. DISCUSSION

#### A. Motion for Judgment on the Pleadings

"After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989). When a Rule 12(c) motion attacks a complaint, it is subject to the same standard of review as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted; thus, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Johnson v. Rowley, 569 F.3d 40, 44 (2d Cir. 2009); see also Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 n.4 (9th Cir. 2011) (citing Johnson with approval).  A claim is plausible on its face when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

---

[5] The order was reduced to writing and signed on June 28, 2012. Prelim. Inj'n Order.

"[D]ismissal on the pleadings is proper only if the moving party is clearly entitled to prevail." Kruse v. State of Hawai'i, 857 F. Supp. 741, 749 (D. Haw. 1994) aff'd 68 F.3d 331 (9th Cir. 1995). Federal courts may decline to enter judgment on the pleadings when they perceive that "hasty or imprudent use of this summary procedure" would impede the strong policy in favor of deciding cases on their merits. See Carrasco v. Fiore Enters., 985 F. Supp. 931, 934 (D. Ariz. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Prac. & Proc., Civil 2d § 1368 (1990)).

As a preliminary matter, the Court addresses the question of who bears the burden of persuasion on the instant motion. Defendants aver that it is Plaintiff. MJP Reply at 4. Defendants are wrong. It is black-letter law that, on a Rule 12(c) motion, the moving party -- here, Defendants -- bears the burden. Hal Roach Studios, 896 F.2d at 1550; Kruse, 857 F. Supp. at 749. The burden does not, as Defendants appear to suggest, shift to the non-moving party after the opposition brief is filed.[6]

Defendants put forward a variety of theories as to why the pleadings entitle them to judgment. For the reasons set forth below, the Court cannot conclude on the state of the arguments submitted that any of Defendants' theories have merit and therefore

---

[6] Defendants seem to rest their novel burden-shifting theory in part on a challenge to Plaintiff's Article III standing. See MJP Reply at 6-7. But Defendants' constitutional standing challenge is procedurally improper for two reasons. First, the proper procedure for challenging Article III standing is a Rule 12(b)(1) motion to dismiss, not a Rule 12(c) motion. See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). Second, while it is true that Plaintiff bears the burden of establishing her constitutional standing, Defendants raised the standing issue for the first time in their reply brief. Because Plaintiff has not had a chance to respond, basic fairness prevents the Court from considering Defendants' Article III standing challenge at this time.

the Court declines to enter judgment in favor of Defendants. The Court's denial of Defendants' motion is without prejudice and does not bar either party from later seeking judgment on grounds raised here.[7]

### 1. Declaratory Relief

Defendants focus their motion on Plaintiff's claim for declaratory relief, which the Court construes as a claim arising under the federal authorities cited therein. Supra note 4. Defendants' primary argument is that they are entitled to judgment on that claim because Plaintiff is suing under federal regulations which confer no private right of action. However, none of the authority Defendants cite stands for this proposition. The regulations at issue here were promulgated under 12 U.S.C. § 1715z-20, which was added to the National Housing Act ("NHA") in 1988. See Pub. L. 100-242, , § 417(a), 101 Stat. 1815, 1908-12 (1988). Nearly all of the cases relied on by Defendants were decided before this law was enacted and thus are inapposite. The later-decided cases cited by Defendants are inapposite, too, in that they address

---

[7] Frankly, this is because the arguments submitted by both parties frequently are either (1) unclear or (2) mistaken as to fundamental points of law, such as the identity of the party that bears the burden of persuasion on a Rule 12(c) motion, see MJP Reply at 4, or the fact that federal standards rather than state law standards apply to claims seeking declaratory relief, see MJP Opp'n at 13-14. The Court believes that the parties have not yet joined the issues that will decide this case. One aim of this Order is to focus the issues so that any further motions will come closer to the heart of the matter. The Court also pauses to note defense counsel's troubling tendency to forgo legal argument in favor of irrelevant, inflammatory personal rhetoric. The Court will not tolerate truculence in the papers any more than it would in open court. The Court reminds defense counsel of their ethical obligation to practice before this Court with the level of "decorum required for the fair and efficient administration of justice." Civ. L.R. 11-4(a)(4). Further violations of this rule by either party may result in sanctions.

9

sections of the NHA not at issue here.  Defendants provide no reason why holdings interpreting other sections of the NHA should apply to the section relied on by Plaintiffs.  Further, a number of the cases cited by Defendants stand only for the notion that no private cause of action exists to enforce terms of the HUD Handbook.  E.g., Roberts v. Cameron-Brown Co., 556 F.2d 356, 357-58 (5th Cir. 1977).  That may be so, but, as Plaintiff points out, Opp'n at 14-15, Plaintiff seeks declaratory relief on the basis of authorities other than the HUD Handbook, such as federal regulations.  Defendants do not say why holdings applicable to the HUD Handbook -- which share a common premise in that they focus on the Handbook's being unpublished -- would apply to rules published in the Code of Federal Regulations.  In short, Defendants' authorities do not support the conclusion Defendants seek.

    The Court's primary concern, however, is Defendants' failure to acknowledge the distinction between express and implied rights of action.  Defendants' theory is that they are entitled to judgment on Plaintiff's declaratory relief claim because the underlying authorities provide Plaintiff with no private right of action.  Private rights of action may be express or implied -- a distinction that is mentioned throughout the cases Defendants cite, but which Defendants themselves never discuss.  To prevail on their theory, Defendants would need to show that neither type of right of action exists, which necessarily would entail an analysis under Cort v. Ash, 422 U.S. 66 (1975), and its progeny.  Defendants do not attempt this analysis and, because they do not, they cannot and do not carry their burden of showing that Plaintiff has no private right of action here.

Defendants also challenge Plaintiff's standing to seek declaratory relief. This challenge concerns Plaintiff's standing under the HECM Deed, as compared to her constitutional standing. See supra note 6. Defendants' first challenge is that Plaintiff is not a real party in interest because she is not one of the original borrowers under the HECM Deed or the notes it secures. This argument fails because it does not account for the fact that Yolanda Maria Santos allegedly signed both the HECM Deed and the notes in both her capacity as trustee of the Santos Trust as well as her personal capacity, and that Plaintiff alleges that she now is trustee of the Santos Trust. Plaintiff's theory, in short, hinges on the notion that the borrower is the Santos Trust. Defendants argue that the Santos Trust cannot be the borrower under the HECM Deed or the notes because the notes limit the definition of "borrower" to "each person signing at the end of this Note."

Defendants' argument is unavailing. First, Defendants do not account for the fact that, while the notes indeed define "borrower" in this way, the HECM Deed lists the borrower as Yolanda Maria Santos in her capacity as trustee for the Santos Trust. Second, Defendants apparently interpret the notes' definition of borrower to include only natural persons acting in their individual capacities. The Court is unconvinced that this narrow reading is the correct one. On the contrary, the HECM Deed specifically contemplates transfer of a borrower's interest in the property to or from a separate trust, HECM Deed ¶ 9(e), which suggests that trusts can hold the rights of borrowers under the HECM Deed, as

well as their obligations under the notes. Defendants cite no contrary authority.[8]

Defendants' second challenge to Plaintiff's standing under the HECM Deed is that Plaintiff cannot sue under the HUD regulations because those regulations define "mortgagor" in a way that excludes Plaintiff. The HUD regulation cited by Defendants includes original borrowers, which Defendants say Plaintiff is not, but exclude an original borrower's successors or assigns. See 24 C.F.R. § 206.3. Defendants take the position that Plaintiff therefore is not a "mortgagor" under the regulations and thus lacks a mortgagor's standing to enforce the HECM Deed. The Court is not persuaded. First, Defendants have not established that Plaintiff, in her capacity as trustee, is not an original borrower. Second, although Defendants correctly cite the text of the regulations' general definition of "mortgagor," they ignore a different provision which expands that definition in the case of sales to include "the mortgagor's estate or personal representative." Id. § 206.123(b). Here, Plaintiff alleges the existence of a will that makes her the original mortgagor's sole heir. It is unclear why this status alone does not entitle her to exercise the mortgagor's right to sell the property under the 95 percent rule. Defendants, having failed to cite the applicable regulation, do not address the point.

---

[8] Defendants do cite a California state case for the uncontroversial proposition that a trust "is not a person but rather a fiduciary relationship with respect to property." MJP at 11 (quoting Ziegler v. Nickel, 64 Cal. App. 4th 545, 548 (1998)). However, trusts must act through persons. Indeed, as the very next sentence of Ziegler states, "an ordinary express trust is not an entity separate from its trustees." Id. Defendants cite this language, but do not say how it undermines Plaintiff's position that the borrower for purposes of the HECM is the Santos Trust.

For all these reasons, Defendants fail to carry their burden of showing on that the pleadings entitle them to judgment on Plaintiff's claim for declaratory relief.

### 2. Other Claims

Defendants challenge Plaintiff's other three claims -- breach of contract, slander of title, and cancellation of written instruments -- solely on the ground that they are derivative of the declaratory relief claim. Taking the argument on its own terms, Defendants' challenge to these three claims would fail because their challenge to the declaratory relief claim fails.

Looking past the terms of Defendants' argument, however, the Court observes that their position misapprehends the logical and legal structure of Plaintiff's remaining claims. The breach of contract claim is at least partly premised on the idea that the HUD regulations are incorporated into the HECM Deed by being repeated there nearly verbatim, and thus have legal force not only as federal laws, but as independent contractual terms. Likewise, Plaintiff's claims for slander of title and cancellation of written instruments are predicated on California state law, not federal law. It is unclear to the Court how any of Plaintiff's claims are derivative of her declaratory relief claim, legally or logically.

Because Defendants have not met their burden of showing that the pleadings clearly entitle them to relief, their Rule 12(c) motion is DENIED. Defendants also moved for summary judgment in the alternative. However, Defendants never explain why summary judgment procedures are needed or warranted here, address the standard for summary judgment or how it would apply in this case, or cite evidence. Accordingly, to the extent that Defendants'

motion is construed as one for summary judgment, that motion, too, is DENIED.

### B. Motion to Dissolve Preliminary Injunction

Defendants have moved to dissolve the preliminary injunction already entered by the state court or, in the alternative, to modify that injunction by requiring Plaintiffs to post a bond. Defendants request a bond in the amount of $520,750.96 -- that is, the purported amount of arrearages, $320,750.96, plus estimated future attorney fees of $200,000. Reply ISO Mot. to Dissolve at 13. Defendants provide no evidence in support of their attorney fee estimate.

In a civil action removed from state court, as this one was, "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. Essentially, "[a]fter removal, the federal court takes the case up where the State court left it off." Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 887 (9th Cir. 2010) (quoting Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty., 415 U.S. 423, 436 (1974)). "The federal court treats everything that occurred in the state court as if it had taken place in federal court." Id. (quoting Butner v. Neustadter, 324 F.2d 783, 785 (9th Cir. 1963) (ellipses omitted)). "Consequently, an order entered by a state court should be treated as though it had been validly rendered in the federal proceeding." Id. (internal quotation marks omitted). "[F]ederal rather than state law governs the future course of proceedings." Granny Goose Foods, 415 U.S. at 437.

1     In this case, the state court entered a preliminary injunction
2 on June 26, 2012.  That injunction prohibits Defendants and any
3 person acting on their behalf from selling, transferring, or
4 encumbering the subject property, and it does not expire until
5 conclusion of trial or modification or dissolution by some further
6 order.  See Prelim. Inj'n Order at 2.  What Defendants seek, then,
7 is a "further order" issued pursuant to this Court's broad
8 discretion to modify or dissolve preliminary injunctions in the
9 face of changed law or circumstance.  See Mariscal-Sandoval v.
10 Ashcroft, 370 F.3d 851, 859 (9th Cir. 2004).  Defendants must show,
11 then, some change in law or circumstance.  They have not done so.
12 The only thing that has changed since entry of the preliminary
13 injunction is the venue of this action, which has shifted from
14 state to federal court.  That change, however, is immaterial,
15 Carvalho, 629 F.3d at 887, and Defendants do not mention any other.
16     The thrust of Defendants' argument is that Plaintiff is
17 unlikely to succeed on the merits of her claim.  See Winter v.
18 Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  Leaving
19 aside the fact that the state court already ruled on this issue
20 when entering the preliminary injunction, Defendants' attacks on
21 the merits of Plaintiff's claim consist of arguments the Court
22 rejected in Section III.A supra.  Indeed, the briefs filed by both
23 sides in connection with the motion to dissolve are obvious copies
24 of the briefs they filed in connection with the motion for judgment
25 on the pleadings.  The Court finds Defendants' arguments unavailing
26 in this context, too.
27     By failing to identify any relevant change in law or
28 circumstance, Defendants fail to persuade the Court that it should

15

reconsider the state court's earlier entry of a preliminary injunction, including the state court's decision to do so without requiring a bond. Accordingly, Defendants' motion to dissolve or, in the alternative, to modify the preliminary injunction by requiring a bond of $520,750.96, is DENIED WITHOUT PREJUDICE. Any further attempt to dissolve or modify the preliminary injunction shall be consistent with the guidance provided in this Order.

**IV. CONCLUSION**

For the foregoing reasons, the motion for judgment on the pleadings or, in the alternative, summary judgment, brought by Defendants NDEX West, LLC and Reverse Mortgage Solutions, Inc. against Plaintiff Isabel Santos, is DENIED WITHOUT PREJUDICE.

Defendants' motion to dissolve or modify the preliminary injunction originally entered on June 26, 2012 is DENIED WITHOUT PREJUDICE. The preliminary injunction remains undisturbed. Defendants and their employees, agents, and persons acting with them or on their behalf are enjoined and restrained from selling, transferring any ownership interest in or further encumbering the property located at 930 Santa Cruz Drive, Pleasant Hill, California, 94523, APN: 127-012-019-7, pending the trial of this action or further order of this Court.

IT IS SO ORDERED.

Dated: October 12, 2012

UNITED STATES DISTRICT JUDGE