IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISABEL SANTOS, individually and as trustee and beneficiary of the Yolanda Maria Santos Trust,<br><br>   Plaintiff,<br><br> v.<br><br>REVERSE MORTGAGE SOLUTIONS, INC.; NDEX WEST, LLC; and DOES 1 through 20,<br><br>   Defendants. | Case No. 12-3296-SC<br><br>ORDER RE: CROSS MOTIONS FOR <u>SUMMARY JUDGMENT</u> |

## I. INTRODUCTION

Plaintiff Isabel Santos ("Plaintiff") challenges Defendants NDEX West, LLC ("NDEX") and Reverse Mortgage Solutions, Inc.'s ("RMS") (collectively, "Defendants") right to foreclose on a home equity conversion mortgage ("HECM"), or so-called "reverse" mortgage, that Plaintiff's mother had taken out on her Pleasant Hill residence (the "Property"). Plaintiff has filed a motion for summary judgment. ECF No. 56 ("Pl.'s MSJ"). Defendant has not opposed Plaintiff's motion, but has filed a cross-motion for

summary judgment which addresses many of Plaintiff's arguments.[1] ECF No. 58 ("Defs.' MSJ"). The matter is appropriate for resolution without oral argument per Civil Local Rule 7-1(b). For the reasons set forth below, Plaintiff's motion is DENIED and Defendants' motion is GRANTED in part and DENIED in part.

**II. BACKGROUND**

    **A. The HECM Program**

In 2009, Plaintiff's mother, the late Yolanda Maria Santos, took out a federally insured HECM. Compl. ¶ 15. HECMs are "reverse" mortgages. Unlike a typical mortgage, through which a borrower receives loan proceeds as a lump sum, uses the proceeds to buy a home, and then pays back the loan gradually, a "reverse" mortgage borrower already owns a home and takes out a loan against its equity. In the reverse of a typical mortgage, an HECM borrower generally receives the loan proceeds in gradual payments and pays back the loan in a lump sum. Repayment is triggered by certain qualifying events, for example, the sale of the property or the death of the borrower.

The HECM at issue in this case was insured through a program of the U.S. Department of Housing and Urban Development ("HUD"). See generally 12 U.S.C. § 1715z-20 (organic statute), 24 C.F.R. § 206.1 et seq. (implementing regulations). The program does not provide mortgages directly; rather, it insures lenders who extend qualifying HECMs to "elderly" borrowers over the age of 62. 12 U.S.C. § 1715z-20(b)(1); 24 C.F.R. § 206.33. The program is

---

[1] Plaintiff filed an opposition to Defendants' motion for summary judgment. ECF No. 60 ("Opp'n to Defs.' MSJ"). Neither party has filed a reply brief.

designed to make lending to these homeowners more attractive by insulating lenders from risk. See 12 U.S.C. § 1715z-20(a).

HUD regulations implementing the program define the qualifying events that trigger repayment of the insured HECMs. 24 C.F.R. § 206.27(c). One such event is the death of the borrower. Id. In such circumstances, the regulations provide:

> The mortgagee [lender] shall require the mortgagor [borrower] to (i) pay the mortgage balance, including any accrued interest and MIP [mortgage insurance premium], in full; (ii) sell the property for at least 95% of the appraised value . . . , with the net proceeds of the sale to be applied towards the mortgage balance; or (iii) provide the mortgagee with a deed in lieu of foreclosure.

Id. § 206.125(a)(2) (brackets added). The regulations also give borrowers a way to satisfy the mortgage regardless of whether a qualifying event has occurred:

> Whether or not the mortgage is due and payable, the mortgagor may sell the property for at least the lesser of the mortgage balance or the appraised value . . . . If the mortgage is due and payable at the time the contract for sale is executed, the mortgagor may sell the property for at least the lesser of the mortgage balance or five percent under the appraised value. The mortgagee shall satisfy the mortgage of record . . . in order to facilitate the sale, provided that there are no junior liens . . . and all the net proceeds from the sale are paid to the mortgagee.

Id. § 206.125(c).

In short, the regulations contemplate the possibility of HECM mortgagors satisfying their mortgages either before or after the borrower's death by selling the mortgaged property, then either paying the mortgage in full or, if the property is not worth as much as the mortgage balance, paying at least 95 percent of the

appraised value of the property (the so-called "95 percent rule"). For purposes of such sales, the regulations' definition of "mortgagor" includes "the mortgagor's estate or personal representative." Id. § 206.123(b).

In the event that a mortgagor sells the property, but the sale proceeds fall short of the amount needed to satisfy the mortgage, the program prohibits HECM lenders from seeking a deficiency judgment against the mortgagor. See id. § 206.27(b)(8). The program also protects HECM lenders by insuring them for the amount of the shortfall. Id. § 206.123(a). Though lenders pay the premium for this mortgage insurance directly to HUD, the regulations permit lenders to pass on at least some of the cost of the premium to borrowers. See id. §§ 206.27(b)(7), 206.109.

### B. The HECM at Issue

Plaintiff and her mother, Yolanda Maria Santos, looked into the possibility of a reverse mortgage loan when Yolanda Maria Santos's health began to rapidly deteriorate. ECF No. 64 ("Supp. Pl.'s Decl.") ¶¶ 4, 7. By that time, the prior mortgage on the property had been paid off and Yolanda Maria Santos needed consistent onsite care that was not covered by insurance. Id. ¶ 4.

Yolanda Maria Santos entered into the HECM at issue in this case on April 20, 2009. Pl.'s MSJ Ex. C ("HECM Deed"). On the same day, Yolanda Maria Santos conveyed the Property to the Yolanda Maria Santos Trust (the "Santos Trust"), of which she was trustee. The HECM Deed's borrower section was signed twice, once by Yolanda Maria Santos as an individual and once by her as trustee of the Santos Trust. Id. at 10. Because Yolanda Maria Santos was not proficient in English, Plaintiff helped her with this process.

4

Pl.'s Supp. Decl. ¶ 11. Plaintiff also alleges that she is the sole beneficiary of the Santos Trust, and is now its trustee. Id. ¶ 5.

Paragraph 9 of the HECM Deed pertains to grounds for acceleration of the debt. Id. at 4. Paragraph 9(a) provides that the Lender may require immediate payment in full of all sums secured by the deed if: "(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or (ii) All of a Borrower's title in the Property . . . is sold . . . ." Id. Paragraph 9(b) provides conditions under which the debt may become due and payable with the approval of the Secretary of HUD. Id. Paragraph 9(d) requires that the Lender provide notice to Secretary of HUD and the Borrower under certain conditions:

> Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9(a)(ii) and (b). Lender shall not have the right to commence foreclosure until Borrower has had 30 days after notice to either:
>
> (i) Correct the matter which resulted in the Security Instrument coming due and payable; or
>
> (ii) Pay the balance in full; or
>
> (iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or
>
> (iv) Provide the Lender with a deed-in-lieu of foreclosure.

Id. Paragraph 9(e) provides: "A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9." Id. at 4-5.

///

### C. Plaintiff's Attempts to Pay off the Loan

Plaintiff moved into the Property in 2010, and shortly thereafter, on or around February 7, 2011, Yolanda Maria Santos died. On March 2, 2011, RMS informed Plaintiff that the amount required to payoff the loan balance was $308,306.18. ECF No. 65 Ex. A. Plaintiff estimates that, at the time of her mother's passing, the value of the Property was only $255,000 to $260,0000. Pl.'s Supp. Decl. ¶ 17.

Plaintiff initially informed Defendants that she planned to sell the property and repay the loan. Id. ¶ 14. Sometime in April 2011, Plaintiff changed her mind and decided to stay in the house. Id. ¶ 20. Plaintiff never listed the Property for sale. ECF No. 65 Ex. A ("Pl.'s Dep.") at 34. Plaintiff claims that she found a party who was interested in purchasing the Property and leasing it back to her, but the deal fell through. Pl.'s Decl. ¶ 24.

Between May 2011 and August 2011, Plaintiff spoke with five or six lenders about refinancing. Pl.'s Supp. Decl. ¶ 21. Plaintiff claims that these lenders refused to help her because the outstanding balance on the mortgage was worth more than the Property. Id. It is unclear exactly what kind of financing Plaintiff was looking for, but Plaintiff claims that she never pursued personal financing options because Defendants led her to believe that she was required to sell the Property to a third party. Id. ¶ 45. Plaintiff claims that she tried to work out some arrangement whereby a third party would purchase the Property and she would then rent the premises from the third party. Id.

In or around early 2012, Plaintiff asked RMS about various options that might allow her to remain in the Property. Pls.'

1  Decl. ¶ 25. Plaintiff has testified that she had exhausted her
2  savings to help her mother and that she did not have any other
3  financial resources on hand. Pl's Dep. at 109-11. However,
4  Plaintiff indicated to RMS that she was willing to enter into some
5  form of repayment plan. Pls.' Decl. ¶ 27. At her deposition,
6  Plaintiff clarified that she wanted RMS to either re-write the
7  loan, provide a loan modification, or refinance the loan. Pl.'s
8  Dep. at 63-74. RMS rejected these proposals.
9      On February 21, 2012, NDEX recorded a Notice of Default
10 against the Property. Pl.'s Decl. ¶ 22, Ex. E. Plaintiff claims
11 that, under the HECM, the notice should have stated that she could
12 sell or re-purchase the property for 95 percent of its appraised
13 value. Id. ¶ 22.
14     In June 2012, Plaintiff filed the instant action. Later that
15 month, Plaintiff and her attorney held a conference call with
16 Defendants' counsel. Pl.'s Dep. at 125. Plaintiff claims that, on
17 that call, her counsel indicated that Plaintiff wanted to purchase
18 the Property for 95 percent of its appraised value. Id. at 125-26.
19 Defense counsel purportedly rejected the offer, insisting on
20 payment in full. Id. at 125-26.
21     **D.   Procedural History**
22     On June 8, 2012, Plaintiff filed this action in California
23 state court, asserting causes of action for: (1) breach of
24 contract, (2) declaratory relief, (3) slander of title, and (4)
25 cancellation of written instruments pursuant to California Civil
26 Code § 3412. ECF No. 1 Ex. A ("Compl.") ¶¶ 73-103. In her claim
27 for declaratory relief, Plaintiff asserts that Defendants violated
28 12 U.S.C. § 1715z-20 and 24 C.F.R. § 206.1 et seq., by failing to

1  provide Plaintiff notice of "the right to sell," and the
2  opportunity to re-purchase the Property for 95 percent of its
3  appraised value.  Id. ¶ 85.  On June 26, 2012, the state court
4  orally entered a preliminary injunction against Defendants,
5  prohibiting them from proceeding with the planned foreclosure sale
6  until trial or further order.  That same day, NDEX, with the
7  consent of RMS, removed to this Court.
8      After removal, Defendants moved for judgment on the pleadings
9  and for a dissolution of the state court's preliminary injunction.
10 ECF Nos. 8, 12.  Both motions were denied in an Order dated October
11 12, 2012.  ECF No. 25 ("Oct. 12 Order").  Among other things, the
12 Court rejected Defendants' argument that Plaintiff was not a real
13 party in interest because she was not one of the original borrowers
14 under the HECM Deed and because HUD regulations define "mortgagor"
15 in a way that excluded Plaintiff.  Id. at 11-12.  On August 2,
16 2013, Plaintiff and Defendants moved for summary judgment.

**III. LEGAL STANDARD**

    Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment should be granted if the evidence would require a directed verdict for the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).  The moving party bears the initial burdens of production and persuasion.  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

    "In order to carry its burden of production, the moving party

must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." Id. A genuine issue for trial exists if the nonmoving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson, 477 U.S. at 248-49.

**IV. DISCUSSION**

Plaintiff's claims are predicated on three theories: (1) the reverse mortgage did not become due and payable upon Yolanda Maria Santos's death because the Santos Trust never died, (2) Defendants failed to provide Plaintiff with adequate notice of the 95 percent rule, (3) Defendants violated the 95 percent rule by demanding that Plaintiff either vacate the property or repay the entire balance due on the HECM loan.[2]

**A. The Reverse Mortgage is Due and Payable**

Plaintiff suggests that Defendants' attempts to foreclose on the Property were improper because the reverse mortgage never became due and payable. Her reasoning is that Yolanda Maria Santos signed the HECM deed in her capacity as trustee for the Santos

---

[2] Plaintiff also pleads that Defendants recorded an assignment of the deed of trust that was never properly physically delivered, accepted, and negotiated. Plaintiff has yet to explain what was improper about Defendants' actions in this regard. She also yet to present any evidence on this issue.

9

1  Trust and the Santos Trust never died.  Defendants move for summary
2  adjudication on this issue, arguing that the loan became due and
3  payable when Yolanda Maria Santos died.  Plaintiff contends that
4  the Court rejected this argument in its October 12 Order.  The
5  Court disagrees.  In the October 12 Order, the Court merely
6  concluded that Plaintiff had standing to seek declaratory relief
7  because the HECM Deed names the Santos Trust as borrower.  Oct. 12
8  Order at 12.  Moreover, the HECM Deed does not support Plaintiff's
9  position.  The deed provides that the lender may require immediate
10 payment of the reverse mortgage upon the death of the borrower.
11 HECM Deed ¶ 9(a)(i).  If the Santos Trust can constitute a borrower
12 for the purposes of this provision, then the reverse mortgage may
13 never become due and payable since a trust cannot die.  Thus,
14 Plaintiff's interpretation could transform the reverse mortgage
15 from a loan to a gift.  That was clearly not the intent of the
16 parties, and it clearly runs contrary to the HUD guidelines cited
17 by Plaintiff.  Accordingly, the Court finds that the reverse
18 mortgage became due and payable upon the death of Yolanda Maria
19 Santos.

**B.   Notice Requirements**

21 Plaintiff contends that Defendants were required to provide
22 her with notice that she could sell or re-purchase the Property for
23 95 percent of its appraised valued before initiating foreclosure
24 proceedings.  The Court finds that neither the HECM Deed nor HUD
25 regulations support this contention.
26 The HECM Deed provides that the lender must provide notice to
27 the borrower "whenever the loan becomes due and payable under
28 Paragraph 9(a)(ii) and (b)," neither of which pertain to the death

10

1  of a borrower. HECM Deed ¶ 9(d). Paragraph 9(a)(ii) provides that
2  the mortgage becomes due and payable when the borrower's title in
3  the property is sold or transferred, and Paragraph 9(b) provides
4  the mortgage becomes payable with the approval of HUD when, among
5  other things, the property ceases to be the principal residence of
6  the borrower. The circumstances contemplated by Paragraphs
7  9(a)(ii) and 9(b) are simply not present here.

8      Nor do HUD regulations expressly require that a lender provide
9  notice to the borrower's estate upon the death of the borrower. In
10 fact, the regulations carve out an exclusion for the notice
11 requirements under such circumstances. Specifically, 24 C.F.R. §
12 206.125(a)(2) provides that "the mortgagee shall notify the
13 mortgagor that the mortgage is due and payable, unless the mortgage
14 is due and payable by reason of the mortgagor's death." Plaintiff
15 argues that HUD merely drafted the regulation in this way because
16 it is impossible to provide notice to a dead person, and that HUD
17 has stated that it "expects the mortgagee to attempt to provide
18 adequate notice to an executor or other party responsible for the
19 property before a foreclosure action is commenced." See 60 Fed.
20 Reg. 42754-01, 52756. But the expectation of a federal agency is
21 hardly a requirement.

22     Plaintiff's argument that HUD defines "mortgagor" in a manner
23 that somehow required Defendants to provide notice is also
24 unconvincing. The HECM regulations define "mortgagor" to mean
25 "each original borrower under a mortgage. The term does not include
26 successors or assigns of a borrower." 24 C.F.R. § 206.3. As
27 Plaintiff points out, 24 C.F.R. § 206.123(b) sets forth an
28 "expanded" definition of mortgagor, which includes "the mortgagor's

11

estate or personal representative." But that expanded definition only applies to § 206.123, which has nothing to do with the notice requirements referenced by Plaintiff. Even if § 206.123's expanded definition could be applied more broadly, Plaintiff has not explained why the Court should ignore the plain language of § 206.125(a)(2), which carves out an express exception for notice when a reverse mortgage becomes due and payable because of the death of the mortgagor.

The only authority that provides any possible support for Plaintiff's interpretation of the notice requirements is Chapter 5 of the HUD HECM Handbook.[3] Section 13-3 of the Handbook suggests that a lender must provide notice to either a mortgagor or the mortgagor's estate:

> For a due and payable mortgage, the mortgagee must:
>
> A.  Issue A Repayment Notice. The mortgagor or the mortgagor's estate must be issued a repayment notice stating that the mortgage is due and payable. The notice must also provide the amount of the outstanding balance and the following instructions:
>
> 1.  That the debt must be paid in full; or the property must be sold for the lesser of the debt, including shared appreciation, if any, or 95% of the appraised value; or good marketable title to the property must be deeded to the mortgagee. . . .

However, the Handbook does not prohibit a lender from proceeding with foreclosure absent notice or otherwise set forth penalties for non-compliance.

---

[3] Plaintiff mistakenly filed Chapter 1 of the HUD HECM Handbook with the Court, rather than Chapter 5. The excerpts discussed above are available at http://www.nrmlaonline.org/App_Assets/public/8aaebceb-25db-4032-bb51-d17fd1527b1f/4330.1%20Chapter%2013.pdf.

12

Moreover, the Handbook does not create a private right of action. See Roberts v. Cameron-Brown Co., 556 F.2d 356, 360 (5th Cir. 1977) (finding that a HUD handbook did not create a private right of action). Under Cort v. Ash, 422 U.S. 66, 78 (1975), a Court may imply a private right of action from a federal statute where (1) the plaintiff is one of the class for whose benefit the statute was enacted, (2) there is an indication of legislative intent to create or deny a remedy, (3) implying a remedy for the plaintiff is consistent with the underlying purposes of the legislative scheme, or (4) the cause of action is not traditionally relegated to state law. Here, the handbook is not a statute and, in any event, HUD designed the handbook for HUD-approved mortgagees in servicing HUD-insured HECM mortgages. Additionally, HUD has not promulgated any regulations which would require the notice demanded by Plaintiff, indicating that it did not intend to create a private right of action for failure to provide notice. Several other courts have held that there is no private right of action for violations of the National Housing Act, see Wells Fargo Bank, N.A. v. Favino, 1:10 CV 571, 2011 WL 1256771 (N.D. Ohio Mar. 31, 2011), and the Court declines to create one for violations of a HUD Handbook created pursuant to the Act.

Accordingly, the Court finds that Defendant was not required to provide notice to Plaintiff of her rights under the 95 percent rule.

### C. The 95 Percent Rule

Plaintiff asserts that Defendants violated the 95 percent rule by: (1) "telling Plaintiff that repayment of the full mortgage balance is the only way can stop foreclosure"; (2) "[d]enying the

right to transfer the proper to heirs or relatives for 95 percent of the appraised value"; and (3) "[rejecting] Plaintiff's consistent offer to tender the repayment." Pl.'s MSJ at 17. Defendants respond that Plaintiff has never provided any proof that she has a ready, willing, and able buyer for the Property, that she has been approved for refinancing or that she has another source of funds to satisfy the loan, either by repaying the entire unpaid balance or at least 95 percent of the Property's value.

    The Court agrees with Defendants that they were not required to provide Plaintiff with refinancing or postpone foreclosure proceedings until Plaintiff could find refinancing from a third party. However, Defendants have yet to address Plaintiff's argument they violated the 95 percent rule by insisting on repayment of the entire balance due on the HECM loan. Under the terms of the HECM Deed, the estate of Yolanda Maria Santos could satisfy the reverse mortgage by selling the property for 95 percent of its appraised value to either Plaintiff or to a third party. Plaintiff claims that she offered to purchase the property for 95 percent of its appraised value, but that Defendants' attorney insisted on "full payment." Pl.'s Supp. Dec. ¶ 32. She also claims that Defendants insisted on a sale to a third party.[4] Id. ¶ 30. If these claims are true, then Plaintiff may be able to prove her claims.

///

---

[4] Moreover, Plaintiff's failure to obtain financing may be due to Defendants' alleged insistence that the estate pay off the full balance due on the reverse mortgage, which is much more than value of the Property. Plaintiff may have been able to obtain financing if Defendants had allowed the estate to satisfy the mortgage by paying 95 percent of the appraised value of the Property.

14

Accordingly, the Court finds that there are triable issues of fact as to whether Defendants violated the 95 percent rule.

V.  **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED and Defendants' motion for summary judgment is GRANTED in part and DENIED in part.  The Court finds that there are triable issues of fact as to whether Defendants insisted on repayment of the full balance of the reverse mortgage and required Plaintiff to sell the Property to a third party, thereby violating the 95 percent rule.  As discussed above, the Court also finds that the mortgage became due and payable upon Yolanda Santos's death and that Defendant were not required to provide Plaintiff with notice of the 95 percent rule.

IT IS SO ORDERED.

Dated: October 9, 2013

UNITED STATES DISTRICT JUDGE